```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES OF AMERICA,                           :
                                                    :
                Plaintiff,                          :       90 Civ. 5722 (CSH)
                                                    :
        -against-                                   :
                                                    :       MEMORANDUM
                                                    :       OPINION AND ORDER
                                                    :
DISTRICT COUNCIL OF NEW YORK CITY AND               :
VICINITY OF THE UNITED BROTHERHOOD OF               :
CARPENTERS AND JOINERS OF AMERICA, et. al,          :
                                                    :
                Defendants.                         :
------------------------------------------------------------------------X
```
HAIGHT, Senior District Judge:

Presently before me is the government's motion to extend the term of Independent Investigator ("I.I.") Walter Mack. In my prior Summary Memorandum and Order in this case, dated April 22, 2005, I denied the government's motion and enforced the District Council's notice of termination of Mr. Mack's services as I.I. Due to the exigencies of time, I stated that a full Opinion giving my reasons in more detail would be filed at a later date. This is that opinion.

## I. BACKGROUND

The captioned case has a long history and has generated numerous opinions by this Court. Familiarity with them all is assumed. Facts particularly pertinent to this motion can be found in 2002 WL 31873460, at *4 - *6 (S.D.N.Y. Dec. 24, 2002), 2004 WL 48885, at *5 - *6 (S.D.N.Y. Jan. 9, 2004), and generally at 2004 WL 154258 (S.D.N.Y. July 9, 2004).

This case has its origins in a civil RICO action commenced by the government against the District Council and certain of its former officers. A bench trial began but was early terminated by the entry of a Consent Decree, dated March 4, 1994. The Consent Decree instituted a number of

1

reforms, including permanently enjoining any District Council officer, employee, or member from engaging in racketeering activity or knowingly associating with any organized crime member, as well as appointing an Investigations and Review Officer ("IRO"). The Consent Decree also instituted a system of job referral rules, promulgated to "maintain and administer a processing system for referral of members to employment in a fair and equitable manner, and to establish records and procedures which will be adequate to disclose fully the basis on which each referral is made," to quote the language of the Job Referral Rules.

In July 2001, Eugene Clarke, a carpenter from Local Union 608, filed a complaint with the District Council Executive Committee alleging persistent violations of this job referral system. When the District Council rejected Clarke's complaint, he filed a lawsuit before this Court in January 2002. That lawsuit is still ongoing. However, Clarke's allegations led the government to enter into further discussions with the District Council about further remedial steps to be taken with respect to the job referral system. Those discussions ultimately culminated in the adoption of a Stipulation and Order, entered by the Court on December 18, 2002 (the "Stipulation and Order" or "Stipulation"). The Stipulation and Order modified the job referral rules to make it more difficult for shop stewards to manipulate skills in order to get referrals, and also appointed Mr. Mack for a two-year term as Independent Investigator.

Pursuant to the Stipulation, at paragraph 6(a), Mr. Mack had, *inter alia*, authority for the following:

> [T]o investigate allegations of wrongdoing concerning the operation of the job referral system and/or corruption or violations of federal, state, or local law by District Council representatives, including without limitation officers, employees, delegates, business managers, business agents, and shop stewards (hereinafter, "District Council Representatives"), concerning the operation of the job referral

> system.... The Independent Investigator shall operate the toll-free 'hotline' telephone service (formerly operated by Barry Security) in order to solicit and receive allegations of wrongdoing or corruption by any person in connection with the operations of the District Council, whether or not such allegations relate to the job referral system.

Paragraph 7 of the Stipulation, setting the Independent Investigator's compensation, states in relevant part:

> The compensation and expenses of the Independent Investigator, and of all persons hired under his or her authority, shall be paid by the District Council. The Independent Investigator shall receive an initial start-up payment of $15,000 to be paid within seven (7) days of entry of this Stipulation and Order. Thereafter, the Independent Investigator shall provide the District Council an itemized statement of his expenses and compensation each month. The District Council agrees to pay the Independent Investigator on a timely basis, and no later than thirty (30) days after receipt of each monthly bill. For the first three months of the Independent Investigator's term, the District Council shall pay no more than $20,000 per month. After the initial three-month period, the parties will confer regarding an appropriate monthly limit going forward. In the event the parties are unable to agree, the Independent Investigator may make an application to the Court for a determination of the appropriate monthly limit.

Paragraph 9 of the Stipulation governs the term of office of the Independent Investigator. It reads, in relevant part, as follows:

> The Independent Investigator shall serve for no less than twenty-four (24) months from the date of his appointment. The District Council may terminate the Independent Investigator within this twenty-four month period only for just cause, provided that the District Council has (a) provided sixty-day notice, and (b) obtained the approval of the Government or the Court. Request for approval from the Court shall be on notice to the Government. In the event the Independent Investigator is terminated for just cause, the Government and District Council agree to work promptly to agree upon a suitable replacement to complete the Independent Investigator's term. After the Independent Investigator has completed his initial 24-month term, the District Council may issue a sixty-day notice of termination, or may continue to retain the Independent Investigator's services. If requested by the Independent Investigator, the District Council shall allow the Independent Investigator to continue working for an additional two (2) months, at the District Council's expense, to allow the Independent Investigator to complete any investigations or disciplinary matters initiated before the notice of termination.

Finally, paragraph 12 of the Stipulation notes:

> The entry of this Stipulation and Order does not supersede or affect the Consent Decree or the rights and obligations of the parties under the Consent Decree, except to the extent the job referral rules are amended in accordance with the terms described in paragraph 1, supra.

In December 2004, as Mr. Mack's 24-month term of office was nearing its end, Mr. Mack received a letter from Brian O'Dwyer, Esq., counsel to the District Council, issuing a sixty day notice of termination. The letter also indicated that the District Council would be issuing requests for proposals ("RFP's") in search of a substitute future I.I.. That letter was an opening salvo in a battle which would eventually lead to the government's present motion to extend Mr. Mack's term as well as, most recently, an evidentiary hearing held on the issue. Specifically, the government now requests that the Court extend Mr. Mack's tenure as I.I. "for a period of eighteen months, with leave to renew that term if necessary." Government's Memorandum at 42. The District Council opposes that application and insists upon its right to terminate Mr. Mack. In the meantime, Mr. Mack has requested to continue working for an additional two months following the sixty day notice of termination deadline to complete his investigations, as was within his rights in the Stipulation. Adding these extensions, Mr. Mack was scheduled to end his term on April 30, 2004.

## II. ANALYSIS

On its face, the terms of the Stipulation seem clear enough. Pursuant to paragraph 9, the District Council may terminate the I.I. within the 24 month period of his appointment only for "just cause." Beyond 24 months, the Stipulation gave the District Council the right to terminate Mr. Mack without cause of any kind.

The District Council has made clear its position that it does not oppose the continuation of

4

the office of *an* Independent Investigator (although the position of the District Council with respect to any rights, obligations, and term limits of a future I.I. has not yet been clarified). It only objects to the continuation of Walter Mack in this position. Indeed, the District Council has already taken steps necessary to continue the office of I.I. should Mr. Mack be directed to leave.

Meanwhile, the government opposes removal of Mr. Mack from office. Despite the explicit language of the Stipulation, the government contends that I have two distinct powers to extend Mr. Mack's term: (1) to issue orders necessary to enforce the terms of the Consent Decree, and (2) to modify the terms of the Consent Decree and the Stipulation in order to ensure that their objectives are met. I shall consider each of these arguments in turn.

A. *Compliance with the Consent Decree*

The government first argues that this Court has inherent authority to issue reasonable orders necessary to enforce compliance with the terms and conditions of the *Consent Decree*. I emphasize the latter phrase because the terms of Mr. Mack's employment as I.I. are not found in the Consent Decree at all, but in the Stipulation and Order. Indeed, the Stipulation and Order itself was precisely an order designed to enforce compliance with the Consent Decree. Following the logic of the government's argument, the Court should issue what is in essence a second Stipulation and Order, granting Mr. Mack an extension of his term. It should do so, argues the government, for the very same reason that the present Stipulation and Order was issued in the first place, to ensure proper compliance of the Consent Decree's Job Referral System. What would distinguish such a conceptual second Stipulation from the first one was that while the first Stipulation was agreed to and bargained for by the government and District Council, the second would be issued over the objection of the District Council. The government views this distinction as legally irrelevant.

According to the Second Circuit, "Where equitable remedies which exceed the confines of the consent judgment are reasonably imposed in order to secure compliance of the parties, the court has not overstepped its bounds, and its orders must be obeyed." *EEOC v. Local 580, Int'l Ass'n of Ironworkers*, 925 F.2d 588, 593 (2d Cir. 1991). *See also United States v. Local 359, United Seafood Workers*, 55 F.3d 64, 69 (2d Cir. 1995) ("[A] consent decree is an order of the court and thus, by its very nature, vests the court with equitable discretion to enforce the obligations imposed on the parties.").

However, the Court's power to issue enforcement orders is not unlimited. According to *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir. 1985), "[t]he court is not entitled to expand or contract the agreement of the parties as set forth in the consent decree, *and the explicit language of the decree is given great weight*" (emphasis added) (citation omitted). Likewise, "a court cannot randomly expand or contract the terms agreed upon in a consent decree." *Local 580*, 925 F.2d at 593.

There is nothing in the Consent Decree itself which speaks to the responsibilities and term of office of the Independent Investigator--an office whose existence was not contemplated at the time of the Consent Decree. However, the Stipulation and Order gives the District Council the *express* right to terminate Mr. Mack after 24 months, without cause.

Indeed, it is notable that in the course of negotiating the Stipulation and Order with the District Council, the government offered a proposal which would have provided the I.I. a term of office of "24 months (subject to ability to complete any open matters and to apply to Court for extension to complete work, upon showing of good cause)." *See* Declarations and Exhibits Submitted on Behalf of the District Council in Opposition to the Government's Motion to Extend

the Term of Independent Investigator Walter Mack, dated Mar. 21, 2005, at Ex. F. The government was unsuccessful in including this clause in the final Stipulation. Instead, the clause became, to use the words of Gary Rothman, Esq., counsel for the District Council, who in turn borrowed from labor law parlance, an "unachieved demand." It would be inappropriate for me to ignore the bargained-for terms of agreement that became the explicit language found in the Stipulation, nor do I find it appropriate to expand the terms agreed upon by the parties.

Moreover, while the Independent Investigator has relatively broad investigatory powers in the Stipulation, those powers are not all encompassing with respect to the Consent Decree. The link between the I.I.'s duties and the District Council's potential associations with the La Cosa Nostra crime family, for instance, is weak at best. For the most part, the I.I.'s responsibilities are narrowly focused on proper governance of the job referral rules. Any wrongdoing that does not concern the job referral system is better addressed through Court orders unrelated to the extension of Mr. Mack's term.

Notwithstanding any authority I may have to issue orders ensuring compliance with the Consent Decree, and balancing both the interests of the government and the District Council, as well as interpreting the Consent Decree as a court order on the one hand and a bargained for contract on the other, I decline to issue an order extending Mr. Mack's term of office as Independent Investigator as a means of enforcing the Consent Decree.

B.  *Modification of the Consent Decree*

The government also argues that changed circumstances necessitate modification of the Consent Decree to extend Mr. Mack's term, using a line of reasoning found in the Supreme Court's decision in *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992).

As mentioned previously, the Consent Decree itself says nothing with respect to the position of an Independent Investigator. The position was created with the 2002 Stipulation and Order. Therefore, the government's contention that changed circumstances warrant "modification" is open to two interpretations. One interpretation is that the government is asking the Court to modify paragraph 9 of the Stipulation, which dictates the I.I.'s term. However, the government's repeated references to the Consent Decree makes clear that this is not their position. *See, e.g.,* Memorandum of Law in Support of the Government's Motion to Extend the Term of Independent Investigator Walter Mack, dated Feb. 24, 2005 ("Government's Memorandum"), at 34 ("[T]his Court has the authority to adapt or modify the *consent decree* when circumstances justify....") (emphasis added). *See generally*, *id.* at 33-42.

The other interpretation of the government's position is that it requests that the Court modify the Consent Decree itself, in order to in effect re-create the position of Independent Investigator with the same (or more expansive) rights than found in the present Stipulation, appointing Mr. Mack into that position, and ensuring that he stay in office for eighteen months, with leave to renew, if necessary. This interpretation is more in line with the language of the government's brief and oral arguments.

Whichever position the government is arguing, it fails for the same reason: that any changed circumstances in this case are not "unforeseen."

*Rufo* involved a consent decree originally entered to correct unconstitutional conditions at a local county jail. The consent decree required the construction of a new jail to replace an older, neglected facility whose conditions were designated unconstitutional. While the new jail was still under construction, the county sheriff moved to modify the consent decree to allow double bunking

8

of male detainees in a little under half of the new cells, in order to raise the total capacity of the jail. The sheriff argued that changes in law and in fact--both a Supreme Court opinion from 1979 as well as an upsurge in the county's inmate population--required modification of the consent decree, which called for single cells only.[1]

The District Court rejected the sheriff's request for modification, finding that the sheriff had failed to meet the stringent standard of *United States v. Swift & Co.*, 286 U.S. 106 (1932). After the Court of Appeals affirmed, the Supreme Court reversed, holding that *Swift* was not intended to govern questions of consent decree modification. The Supreme Court then established a framework for considering such questions, holding that "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree. If the moving party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstances." *Rufo*, 502 U.S. at 383. "Modification of a consent decree may be warranted when changed factual conditions make compliance with the decree substantially more onerous." *Id.* at 384. Moreover, modification is also appropriate "when a decree proves to be unworkable because of unforeseen obstacles." *Id.*

Here, the government cannot point to any specific changes in factual, or legal, conditions since the signing of the Consent Decree which would make compliance substantially more onerous. Undoubtedly, Mr. Mack's investigations have uncovered substantial violations of the Consent Decree and the job referral rules, since his term began, such as the bogus "40-hour OSHA" skill, "riding" the out of work list, the running of "cash jobs" on construction sites, and evidence of possible continuing racketeering acts and associations with organized crime by District Council

---

[1] The government does not argue any changes in the law in the case at bar.

members.

However, such forms of conduct, however deplorable, have not been shown to be "new" circumstances that arose after the Consent Decree took effect. Rather, they are more akin to ticking time bombs in place when the Stipulation and Order was entered, and only waiting to be detected by an astute investigator. Mr. Mack testified to this at the evidentiary hearing:

> Q. [AUSA Lisa Zornberg]: Mr. Mack, this morning and now since the lunch break, we've gone through a list of the problems and weaknesses that you identify in June 2004 and many which you've said are continuing problems today with the District Council's anticorruptive efforts. To your mind, does the information that you learned after becoming I.I. in early 2002, about the state of the District Council's anticorruption program represent a change in facts from when you were appointed?
>
> A. Well, I just want to say you said 2002. It's actually 2003 that I actually started work.
>
> Q. Okay.
>
> A. But I think, in fairness, I can say -- and, again, I think this was written into the stipulation and order, to some extent -- no person in my capacity, wherever they go, is going to accept what actually the circumstances are of a situation till they actually get involved in it, but if someone had told me in 2002 at the end that I would have conducted -- had to conduct 63 sworn depositions in order to find out really what the facts were, I would have been shocked, and I would have felt that is not consistent with what I expected, to some extent, which was a corruption program second to none in the construction industry, which was well underway, in which experts had evolved and which an investigative organization was busy at work gathering data.
>
> THE COURT: I'm going to ask the reporter, please, to read back for us the question that counsel put to the witness just before that answer was given.
>
> THE REPORTER: [Reads back the question.]
>
> The COURT: Counsel asked you if the various things you've described for us today, in your view, represented a change of fact from the time you were reported. Is it so much, in your view, a change of fact that occurred during that period of time, but is it, rather, a change in your perception of or knowledge of facts which existed at the time you took office? Do you follow me?

THE WITNESS: I do. I would have to say, your Honor, it is the latter.

THE COURT: The latter.

THE WITNESS: Because I cannot say that prior to taking the job I was knowledgeable of the facts. I was told by others what they believed the facts to be and the situation to be, but I had not undertaken my own review, which I really did not even commence until 2003.

Tr. 93-95.

In his testimony, Mr. Mack confirmed that what changed during his term of office was not changes of facts per se but rather changes in his own perception and knowledge of the facts since the time he took office. This is in contrast to *Rufo*, in which a rapid increase in jail population was the potential unanticipated change of circumstances justifying modification of the consent decree. It is also in contrast to my opinion in *Handschu v. Special Services Div.*, 273 F.Supp.2d 327 (S.D.N.Y. 2003) in which I held that the events of 9/11 and the new threat of terrorism arising from that horrific day satisfied the "changed circumstances" requirement for modifying a decree governing the NYPD's activities in the investigation of political activity (popularly called the "Handschu guidelines"). *See id.* at 337 ("There is no disputing Deputy Commissioner Cohen's assertion that since the formulation of the Handschu Guidelines in 1985, '[t]he world has undergone remarkable changes, ... not only in terms of new threats we face but also in the ways we communicate and the technology we now use, and are used by those who seek to harm us.'") (internal citation omitted).

This leaves the government with the contention that modification is appropriate due to "unforeseen obstacles" in enforcement of the Consent Decree.

*Rufo* held that modification of a consent decree is appropriate when unforeseen obstacles

make execution of the consent decree unworkable.[2]  In the ordinary instance, "modification should not be granted where a party relies upon events that were anticipated at the time it entered into a decree." *Rufo*, 502 U.S. at 385. "If it is clear that a party anticipated changing conditions that would make performance of the decree more onerous but nevertheless agreed to the decree, that party would have to satisfy a heavy burden to convince a court that it agreed to the decree in good faith, made a reasonable effort to comply with the decree, and should be relieved of the undertaking under [Fed. R. Civ. P.] Rule 60(b)." *Id.*  That is the circumstance in which I find the government on its present motion.

The Stipulation and Order provided the Independent Investigator "authority to investigate allegations of wrongdoing concerning the operation of the job referral system and/or corruption or violations of federal, state, or local law by District Council representatives . . . concerning the operation of the job referral system." ¶ 6(a). And while not completely germane to the case at hand, the Consent Decree likewise appointed an Investigations and Review Officer who had the authority, *inter alia*, "to investigate the operation of the District Council and its constituent locals...." ¶ 4(a).

Both officers had the right and responsibility to investigate the operation of the District Council, and more specifically, corruption with respect to the job referral system.  Indeed, Mr. Mack inherited, improved, and made excellent use of a hotline system in which carpenters could make phone calls, anonymous or otherwise, reporting acts of corruption committed by the District Council, its various agents, and hired subcontractors.  It is therefore clear that both Mr. Mack and the government anticipated that Mr. Mack's investigations would uncover acts of wrongdoing, both

---

[2] By contrast, the Supreme Court did not adopt the more stringent standard, pressed by respondents in that case, of allowing modification only when a change in facts was both "unforeseen and unforeseeable." *Rufo*, 502 U.S. at 385.

known and unknown. Certainly, Mr. Mack's testimony, cited above, indicates that he had uncovered far more corruption in the course of his investigations than he had expected--indeed he stated he would have been shocked had he known the number of depositions he would eventually have to take. Nevertheless, both the government and Mr. Mack entered into the Stipulation anticipating what his investigations might lead to--even if it can reasonably be said that Mr. Mack's investigations made his duties more onerous than if there had been less corruption found.

I find that the government anticipated that Mr. Mack's investigations would lead to discovery of greater corruption. Under these circumstances, it cannot be said that the level of corruption found in the course of Mr. Mack's investigations was "unforeseen."

In these circumstances, I decline to deprive the District Council of its bargained-for right to terminate Mr. Mack as the I.I. Specifically, I decline to modify the Stipulation and Order to extend Mr. Mack's term, and I decline to modify the Consent Decree itself to appoint Mr. Mack as Independent Investigator for what is in essence a second term of office.

### III. CONCLUSION

I emphasize that the views and conclusions I have reached with respect to the government's memorandum are by no means in criticism of Mr. Mack's performance as Independent Investigator. To the contrary, Mr. Mack has embraced his role with zeal and diligence, showing compassion for the carpenters who he serves and a genuine desire to purge the District Council of corrupt practices. He is to be commended. Mr. Mack is to remain in office until the provisions of the April 22nd Summary Memorandum and Order are in place. All other provisions of that Opinion likewise remain in effect.

It is SO ORDERED.

Dated: New York, New York
       May 11, 2005

_____
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

14