UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES OF AMERICA,      :
                               :
        Plaintiff,          :      90 Civ. 5722 (CSH)
                               :
   -against-                  :
                               :
                               :      MEMORANDUM OPINION
                               :            AND ORDER
DISTRICT COUNCIL OF NEW YORK CITY AND    :
VICINITY OF THE UNITED BROTHERHOOD OF    :
CARPENTERS AND JOINERS OF AMERICA, et. al,  :
                               :
        Defendants.         :
------------------------------------------------------------------------X

HAIGHT, Senior District Judge:

In a summary memorandum and order reported at 2005 WL 975857 (S.D.N.Y. Apr. 26, 2005) ("April Order") and an explanatory opinion reported at 2005 WL 1137877 (S.D.N.Y. May 11, 2005) ("May Opinion"), familiarity with which is assumed, the Court denied the government's motion to extend the term of Independent Investigator ("I.I.") Walter Mack and enforced the notice given by the District Council (or "Union") terminating Mr. Mack's appointment.

The April Order provided in ¶ 6:

> The identity of successor Independent Investigator, and the scope and nature of the I.I.'s responsibilities and the terms and conditions of his appointment, must be approved by a further Order of the Court. Counsel for the District Council and for the Government are directed to exercise good faith efforts to agree on the contents of this Order. The Court will resolve any disputes if requested to do so by either party.

Thereafter counsel for the parties conferred. I do not doubt that they attempted in good faith to agree, but their failure to do so was nearly total. Specifically, the government objects to the successor I.I. selected by the Union, and objects to a provision in the proposed Order that would

1

permit the Union to terminate the I.I. at will after 24 months. That particular provision also appeared in the Stipulation and Order filed on December 18, 2002, which appointed Mr. Mack as I.I., and which the Court enforced in denying the government's motion to extend Mr. Mack's term. *See* the May Opinion, 2005 WL 1137877, at *2, *8. The parties exchanged letter briefs on these issues, and the Court conducted a hearing by telephone conference call on June 14, 2005. This memorandum resolves those two disputes in that order, and then addresses other matters.

## I. THE DISPUTES

### A. The Identity of the Successor I.I.

It appears from the record that the District Council, acting through its officers and counsel, put forward requests for proposals ("RFPs") to a number of potential successor I.I.s, interviewed some of them, and at the end of that process selected United Intelligence Group, Inc., doing business as "Unitel," an appellation I will use hereafter. The government, not satisfied with that selection, asked the District Council to identify the other recipients of an RFP who had not been selected. The District Council, while confessing some reluctance, nonetheless complied. Government counsel then interviewed representatives of Unitel and two other entities: Nardello Schwartz & Co. ("Nardello Schwartz") and Forensic Investigative Associates ("FIA"). District Council attorneys and officers, by their own consent, did not attend those interviews. The government now contends that (1) either Nardello Schwartz or FIA would be preferable to Unitel as the successor I.I.; (2) the Union's selection of Unitel is entitled to no deference by the Court; and (3) the Court should conduct the selection process *de novo*, conducting its own interviews of the representatives of these three companies. I do not agree with any of these contentions.

**(1)** I have considered the responses of the three companies in question to the RFP promulgated

2

by the District Council. The RFP is a carefully prepared document. It accurately described the present circumstances and needs in respect of the job referral rules and the functioning of the OWL, and asked the right questions. Of particular relevance to the present inquiry are the second and third questions the District Council promulgated to responders:

> 2. Provide relevant information on your firm. This should include when the firm was founded, how the organization is structured and the number and location of offices. What are your firm's annual revenues, and what percentage is derived from providing similar services to Unions or other entities? Does your firm have the depth of professional resources to handle an engagement of this magnitude and complexity?
>
> 3. What is your experience (both your office and nationwide) in providing Independent Investigative services or private inspector general services of the type requested herein? Have you or your firm been privately retained to provide such services or been appointed by a court or public agency?

The responders were also asked to "[d]escribe the expertise of your professional staff." Question 7.

Judging by their responses, Unitel, Nardello Schwartz, and FIA are all qualified by personnel and experience to act as an effective I.I. in this case. Contrary to the government's assertion, I am unable to discern a material shortcoming on the part of Unitel in contrast to the other two companies. I need not describe the companies in detail. It is sufficient for present purposes to note that the extensive experience of William P. Callahan, Unitel's president, who will be the principal investigative attorney on this case, includes his appointment in 2003 to be the Independent Investigator over Local 1814, ILA (in Trusteeship) in a case pending in the Eastern District of New York. In connection with that case, the qualified and experienced Unitel staff conducted an independent review of the operations of the Local, set up a toll free hotline to receive complaints and

information, conducted interviews and took testimony of union members, and conducted a forensic examination of the Local's book and business systems for reporting to the U.S. Attorney's Office for the Eastern District. Unitel response to RFP at 7. These activities closely resemble those of the energetic Mr. Mack in this case, and there is no reason to assume that Unitel would not bring the same level of energy to its service as this Court's Appointee, in the maintenance of the hotline and in other respects.[1]

The government's letter brief included some disparaging impressions about the Unitel representatives gleaned from its interview, and I do not doubt the sincerity of those comments, but they are subjective in nature and during the hearing were not adequately supported.

The government makes much of the fact, conceded by the Union, that Unitel's lower projected costs and fees in relation to those of other responders played a part in its selection of Unitel. There is nothing inherently improper in this. The officers of the District Council bear a fiduciary responsibility to the union members whose dues will be expended to pay the I.I. Retaining the services of a lower bidder is consistent with that responsibility, provided that the quality of the service is not compromised by its lesser cost, a concern that does not arise in this case.

---

[1] Unitel's RFP response lists Andrew J. Maloney as "Outside Advisory Counsel." Mr. Maloney is an experienced attorney who served as the United States Attorney for the Eastern District of New York from 1986 through 1992. The government, in its objection to the selection of Unitel as I.I., says that its interview indicated that Mr. Maloney's attention to this case would be relatively slight. Counsel for the District Council say that is inaccurate, and that Mr. Callahan and Mr. Maloney would be glad to speak to me about the engagement. That is not necessary. Meaning no disrespect to Mr. Maloney, the more significant persons are those who will furnish the day-to-day activities. These are Callahan; Richard V. Roth, Unitel's principal senior investigator, a licensed private investigator and a former FBI agent; and James J. McEnroe, an attorney and experienced litigator. This team will have the assistance of Michael R. Sullivan, a licensed CPA who has specialized in union compliance and forensic accounting. *See* Unitel response to RFP at 10, and Appendix 2.

Moreover, as the Union points out, while ¶ 7 of the proposed Order of Appointment sets Unitel's monthly compensation and expenses at "not less" than $35,000 for the first six months, it further provides that after that period the District Council and Unitel "will confer regarding the appropriate monthly compensation for services of the Independent Investigator," and if they cannot agree "the Independent Investigator may make an application to the Court for a determination of the appropriate monthly compensation." I think it unlikely that those individuals in charge of Unitel would be reticent in asking for increased compensation if, after six months on the job, they regard the company as entitled to it.

In these circumstances, I decline to regard Unitel's initial compensation figure as a factor militating against its appointment.

**(2)** Given the fact, as I have found, that all three companies are qualified to serve as I.I., I am prepared to defer to the District Council's preference for Unitel. The I.I.'s services will, after all, be paid for with the dues of union carpenters, and their representative organization is in my view presumptively entitled to select the provider of those services. The District Council would not be free to prefer and select an unqualified I.I. or one tainted by a conflict of interest. Neither concern arises. As discussed *infra*, Unitel is qualified to perform the required tasks. The government's letter brief suggested that Unitel had performed services in the past for Mr. Rothman's firm, but the subject was explored at the hearing, *see* Tr. 37-39, and I am satisfied that the very limited contacts Mr. Rothman described without contradiction create no impediment to Unitel's appointment.

**(3)** In these circumstances, I decline to conduct the I.I. selection process *de novo* and interview these three companies myself.

**B.     The Length of the Independent Investigator's Term of Appointment**

The District Council, following the model of the Stipulation and Order appointing Mr. Mack, proposes that after Unitel has served a 24-month term, the District Council may terminate the company's services without cause. I agree with the government that at the present moment in the affairs of the Union, it is not appropriate to bestow that unfettered discretion on the District Council.

Surely all persons, including this Court, are entitled to hope that the District Council, its officers, and other Union representatives, acting principally through its anti-corruption program, and Unitel as the I.I. will work together in good faith and with unflagging energy to expose and put an end to improprieties in the operation of the job referral rules and related matters. In such a world, the Union and the I.I. may be in a position to represent to the Court, and the government may agree, that all concerns have been satisfactorily dealt with and the I.I. may be discharged, even earlier than the minimum 24-month term provided for by the proposed Order.[2]

But the Court cannot assume that hope will be realized, and its order must contain appropriate safeguards if it does not. The principal objection to the District Council's unilateral and unconditional right to terminate the Independent Investigator after 24 months is that if any of its officers or other Union representatives are determined to withhold cooperation from the I.I., or fail to play with vigor their part in the joint effort to root out corruption, or otherwise obstruct detection of wrongdoing and its eradication, they have an inherent motivation to stall, string out, and stonewall the I.I.'s efforts in the sure and certain knowledge that in two years, whatever the I.I., the

---

[2] Such optimism in human affairs may be traced as far back as the Old Testament. "They shall beat their swords into ploughshares, and their spears into pruning hooks; nation shall not lift up sword against nation, neither shall they learn war any more." Isaiah 2:4. Unfortunately this prophecy has not yet come to pass.

government, or even the Court may think about it, the I.I. will be gone.[3] Given the history of this case as revealed by prior opinions and orders, this would not be a prudent provision. The government agreed to the District Council's right of termination in the Stipulation and Order installing Mr. Mack as I.I., but it agrees no longer, and I think the government is right not to do so.

Counsel for the Union argue in their letter brief at 3 that "preserving its right to not extend any Independent Investigation after an initial term is important to the operation of the anti-corruption program." That is so, the Union says, because

> the Independent Investigator and District Council representatives spend a great deal of time interacting with each other and must be able to devote their attention to the matters at hand without being distracted by a need to make a record of every disagreement in order to establish a "just cause" dismissal at some future date. Issues that may not amount to a "just cause" for termination may nonetheless make the working relationship between the parties undesirable.

*Id*.

I find this argument difficult to follow, let alone agree with. Counsel paints a gloomy picture of Union representatives and Unitel staffers distracted from their cooperative efforts for the common good by perceived needs to look over their shoulders, watch their backs, and "make a record" against contested "just cause" dismissals which, in the absence of the Union's absolute right to terminate the I.I. after 24 months, the Union seems to prophesy will inevitably occur. But I am no more prepared to accept that pessimistic prophecy than I am to pretend that Isaiah's optimistic prophecy has been realized in our time.

If both the Union and the I.I. practice in the future what they presently preach to the Court,

---

[3] The reader will understand that the Court does no more than acknowledge the conceptual possibility of such counterproductive conduct; it neither assumes nor predicts that anyone involved will act that way.

the I.I. will never give just cause for its dismissal, and the Union will never suggest that it did. Instead, that happy and hoped-for day will come, when the Union, the I.I., the government, and the Court agree that effective reform of the job referral system has been achieved, its future integrity assured, and the I.I. can depart to render other services to others in need of them. But if disputes arising out of the I.I.'s conduct break out, the interests of the union carpenters and the general public, which are paramount, will be better protected by placing the power to terminate the I.I., extend its term, or modify its conduct or that of the Union in the hands of this Court. The Order appointing Unitel as successor Independent Investigator will so provide.

## II. THE ORDER OF APPOINTMENT

Except for the modifications directed in this Part, the Court accepts the proposed form "Stipulation and Order" previously submitted by counsel for the Union (although in the circumstances the document will be captioned as an "Order"). The specific modifications are as follows:

**Page 1:** Delete the last paragraph beginning with the phrase "WHEREAS, the parties have agreed . . .", and delete the word "and" at the end of the preceding paragraph.

**Page 2, line 3:** Change the capitalized language to "NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, as follows:" Consistent with that change, delete the word "Stipulation" wherever it appears in the document, including the descriptive phrase appearing to the right of the case caption on page 1, which should read "ORDER," and not "STIPULATION AND ORDER."

**Page 9, paragraph (6), line 3:** "fail" should read "fall."

**Page 11, paragraph (i):** Change the last phrase from "every six months" to "every two

months." Add this subparagraph: "In addition to the reports required in this paragraph, the Independent Investigator is directed to file with the Court *in camera* with respect to the activities of all individuals performing services pursuant to this Order copies of contemporaneous time records which satisfy the requirements for attorneys' fees set forth in *Nat'l Assoc. for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (1983). These records are to accompany the status reports called for by the preceding subparagraph. They will be released by the Court to the parties upon the application of a party upon a showing of good cause, or in the exercise of the Court's discretion."

**Page 13, paragraph 9, last line:** The language beginning with the phrase "After the Independent Investigator has completed his 24 month term" is deleted, and replaced by the following: "Not later than thirty (30) days prior to the completion of the 24-month term provided for by this paragraph, the parties are directed to file and serve applications for a further Order (1) continuing the Independent Investigator in office for an additional stated term; or (2) terminating the services of Unitel as Independent Investigator and appointing a successor; or (3) abolishing the office of the Independent Investigator; or (4) such other Order as the parties may be advised to request. These applications must be supported by evidentiary submissions and citations to authority if the circumstances require. Not later than fifteen (15) days after the service of such applications, the parties are directed to file and serve responsive papers. Thereafter, and if necessary, the Court will conduct a hearing. Nothing in this paragraph of this Order prevents the parties from entering into a stipulation concerning this issue, provided that such a stipulation is presented to the Court not later than thirty (30) days prior to the completion of the 24-month term."

Counsel for the District Council are directed to settle an Order consistent with this Opinion on five (5) business days' notice.

Upon the entry of the Order Appointment of Unitel as successor I.I., the process of transition described in Paragraph 4 of the April Order will commence and proceed in accordance with the provisions of that paragraph.

It is SO ORDERED.

Dated: New York, New York
July 18, 2005

                                          CHARLES S. HAIGHT, JR.
                                   SENIOR UNITED STATES DISTRICT JUDGE