UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA, :
:
                 Plaintiff, : 90 Civ. 5722 (CSH)
:
           -against- : MEMORANDUM
: OPINION AND ORDER
DISTRICT COUNCIL OF NEW YORK CITY AND :
VICINITY OF THE UNITED BROTHERHOOD OF :
CARPENTERS AND JOINERS OF AMERICA, et al., :
:
               Defendants. :
------------------------------------------------------------X

HAIGHT, Senior District Judge:

       Plaintiff Eugene Clarke is a rank-and-file member of Local Union No. 608, United Brotherhood of Carpenters and Joiners of America, AFL-CIO ("Local 608"), a constituent local union of the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "District Council"). Clarke has previously moved to enforce a consent decree (the "Consent Decree") this Court entered on March 4, 1994 in this civil RICO action commenced by the government against the District Council and certain of its former officers; Clarke also seeks the imposition of monetary sanctions against Michael J. Forde, the Executive Secretary-Treasurer ("EST") of the District Council, for violating the Consent Decree. The gravamen of Clarke's charge against Forde is that Forde behaved improperly with respect to job referrals.

       Clarke now requests leave to amend the pleadings filed in connection with his motion to enforce the Consent Decree; specifically, he proposes to amend the "Notice of Misconduct Complained of Under Rule 71 Motion to Enforce Consent Decree" ("Notice of Misconduct") to add

certain additional allegations against Forde. *See* Memorandum in Support of Motion to Amend the Pleadings ("Clarke Mem."). Forde opposes the motion to amend. *See* Memorandum of Law in Opposition to Clarke's Motion to Amend the Pleadings ("Forde Mem.").

## I. BACKGROUND

The captioned case and related cases have generated numerous opinions by this Court and the Second Circuit. The facts that give rise to the complaint have been documented in 2002 WL 31873460 (S.D.N.Y. Dec. 24, 2002) (*"Clarke I"*), 2003 WL 21035292, (S.D.N.Y. May 7, 2003) (*"Clarke II"*), 2004 WL 48885 (S.D.N.Y. Jan. 9, 2004) (*"Clarke III"*), and 2004 WL 2480435 (S.D.N.Y. Nov. 3, 2004) (*"Clarke IV"*), familiarity with which is assumed. In particular, the Court's opinion in *Clark IV* contains an explanation of the relevant union referral system and the five specific referrals which Clarke alleges are improper. For ease of review, however, I will recount the pertinent background facts and allegations here.

### 1) *The Referral System*

Under the constituent unions' collective bargaining agreements ("CBAs"), a contractor is required to fill half of the jobs on each project with referrals from the union's out-of-work list ("OWL"). To meet this requirement, the contractor telephones a request into the local union in whose geographic jurisdiction the jobsite is located. The request is then processed by the local's business manager or one of its agents, who then faxes the form to the OWL office.

Each request lists the skills required by the contractor that an out of work union worker must possess in order to receive the job. The request is then processed in a computer system. Out of work union workers also submit their registration form on the OWL, listing the specialty skills that they possess. The request is then matched with a worker who has the skills requested and who has the

highest priority on the OWL. That person is then offered the job.

> Under the Consent Decree, the following rules must be followed when offering referrals:
>
> Only members who are not currently employed at the trade may register their availability for referral (Rule 4C).
>
> When the Local Union determines that the member who is first on the out-of-work list cannot be referred because of refusal, unavailability, or lack of required skills, the Local Union shall then refer the next member on the out-of-work list who is willing, available and has the required skills. (Rule 5F).
>
> Rule 5F, cited above, is also applicable to shop steward appointments:
>
> Shop stewards must be selected from the individuals referred from the out-of-work list to a given job. If there is no individual among those referred who qualified to serve as a steward, the next available individual on the out-of-work list in order of priority who either has served as a steward, or who is qualified to serve as a steward, shall be referred to the job as steward. . . . (IRO Decision No. 1 at 5).

The five referrals challenged by Clarke in the Notice of Misconduct matched job requests with the following three people: John Corrigan, John Hearty, and Edward Maudsley. Clarke has claimed that Corrigan and Hearty co-chaired a fundraiser for Forde's criminal defense, on or about March 25, 2001, following his indictment on New York state charges. Meanwhile, while Forde was president of Local 608, he appointed Maudsley as the local union's representative to the District Council committee that oversaw the 1999 election for District Council EST. Forde later appointed Maudsley as business agent for Local 608.

   *2)   The Five Challenged Referrals*

On April 23, 1999, Maudsley added the following to his list of skills: Lab Furn, FRMN/LYT. The following day, Forde filled out a request for a Eurotech job at 111 8th Avenue. He requested a carpenter to serve as both foreman and steward for the job, and to possess the skill of laboratory furniture installer, and forwarded it to the OWL office. Maudsley, who was #1,807 on

the OWL, received the job.

On November 1, 1999 Corrigan received a referral as a steward to a job for North Berry Concrete at 59th Street and Twelfth Avenue. He was #609 on the OWL. The manning request asked for a steward with a "40-hour OSHA certificate," which Clarke has alleged is a fictitious skill. Clarke also noted that November 1st was the day Forde was nominated to run for the position of EST, and was also the day that Corrigan was referred to a job, ten days in advance.

On July 13, 2000, John Greaney--who was appointed by Forde to succeed him as business manager of Local 608, and also elected as Forde's successor as president of Local 608--forwarded a request from Component Assembly Systems for a steward to serve simultaneously as a foreman. Hearty received this referral while #279 on the OWL.

Hearty placed his name back on the OWL on November 22, 2000, and was assigned position #1,397. Shop steward reports for the Component Assembly systems job show that Hearty worked from July 13, 2000 to January 2, 2001, indicating that he was ineligible to have his name placed back on the OWL on November 22, 2000. *See* Consent Decree Rule 4C, cited *supra*. On February 5, 2001, Hearty received another referral as a steward, and also simultaneously to serve as foreman, to a second jobsite of Component Assembly. This request, like the first, was filled out and forwarded to OWL by Greaney.

On March 20, 2001, Corrigan added "concrete" to his list of skills. The following day, he received an out-of-order steward referral from position #198 on the OWL to a jobsite at Columbus Circle. Again, the manning request form listed 40-hour OSHA certificate as a required skill. Clarke has noted that the date of the referral, March 21, 2001, coincides with another fundraiser for Forde's criminal defense, held on March 25, 2001. Both Corrigan and Hearty were co-chairmen of the

4

fundraiser. Clarke has also pointed out that Corrigan received the job referral 22 days in advance of the Columbus Circle job.

These are the five referrals which Clarke alleges were improper. On July 24, 2001, Clarke wrote a letter to the District Council's Executive Committee alleging that Forde had manipulated the referrals. This led to an investigation which culminated in the Report, whose developments and findings I have described in a prior opinion. *See Clarke I*, at \*3-\*5. The Report concluded that the OWL computerized matching system "is reliable" and that "the referrals were proper under the approved system." *Id.* at \*4. In explaining Corrigan's two matches, and specifically the 40-hour OSHA certification, the Report stated, "[a]ny member motivated to take classes and pass the test can acquire this certification . . . this is a skill that makes a member's profile unique regardless of whatever skills may be requested. Corrigan's 40 hour OSHA certification alone can explain []his dispatch[es] as convincingly as any other," since the skill was "possessed by only, approximately 10 people in the entire District Council." Report ¶ 19.

Clarke has claimed that the 40 hour OSHA certificate was a fictitious skill, making Corrigan's referrals improper. With respect to Maudsley's and Hearty's referrals, Clarke contends that they violate provisions of the CBAs which contemplate that a foreman should not serve simultaneously as a shop steward. Additionally, Clarke has challenged Hearty's November 22, 2000 referral because Hearty was employed while concurrently on the OWL, a violation of the Consent Decree Rule 4C.

### 3) Forde's Liability

In the Notice of Misconduct, Clarke blamed Forde for these alleged violations in several ways. In submitting the April 23, 1999 referral, Clarke alleged that Forde knowingly manipulated

5

the referral system in a way to favor Maudsley. According to Clarke, Forde is directly responsible for this violation.

Though Forde was not personally responsible for forwarding the referrals to the OWL office, Clarke has also claimed that he aided and abetted the remaining four violations. Specifically, Clarke has asserted that as the officer charged with responsibility under § 16 of the District Council's by-laws for insuring that stewards are appointed in "a manner consistent with" the Consent Decree, Forde had a fiduciary obligation to enforce the terms of the Consent Decree's referral rules. Clarke has asserted that Forde therefore had an obligation to suspend or dismiss any business manager or agent who violated the Consent Decree's referral rules, which he failed to do. Greaney was neither suspended nor dismissed for his referrals of July 12, 2000 and February 5, 2001. Clarke has claimed that through Forde's inaction, he aided and abetted Greaney's wrongdoing.

With respect to Corrigan, Clarke asserted in the Notice of Misconduct that after he filed his letter with the District Council's Executive Committee, Forde was obligated to demand that Corrigan produce his 40-hour OSHA certificate, which he did not do. Clarke also claimed that the Report emanated from Forde's investigation into his own wrongdoing, and that the Report tried to cover up the fraudulent basis for Corrigan's referrals. Therefore, Clarke claimed that the Report imputes knowledge of the fraud onto Forde. Additionally, Clarke called into question the timing of the referrals. The date of Corrigan's referrals--November 1, 1999 and March 21, 2001--coincided with Forde's nomination for EST and a fundraiser on behalf of his criminal defense, respectively. Based on these totalities of circumstances, Clarke asserted that Forde aided and abetted Corrigan's violations.

## II. DISCUSSION

*1)  The New Allegations*

Clarke now seeks to amend the pleadings to include additional allegations against Forde; the additional allegations relate to the same referrals/conduct Forde has already challenged, as detailed above. Specifically, Clark desires to add the following allegations: (1) Hearty and Corrigan were impermissibly "riding the list" prior to the referrals of July 13, 2000 and March 21, 2001, respectively[1] (*see* Clarke Mem. at 3); (2) Forde was aware of the four instances of list-riding by Hearty and Corrigan, but Forde "deliberately concealed it from Clarke, the government, and the Court," thereby breaching his fiduciary duty (*id.*); (3) the admitted prior practice of the District Council has been that a steward cannot serve simultaneously as a foreman, further supporting the existing allegation that Forde altered manning requests in order to "game" the computer (*see id.* at 4); (4) Forde's concealed the existence of this established prior practice, further supporting the existing allegation that Forde breached his fiduciary duty (*see id.*); and (5) contractor Eurotech did not request that an assigned worker have the "laboratory furniture installer" skill set, and Forde concealed this fact, as well as other evidence that referral forms had been improperly altered (*see id.*).

According to Clarke, the bases for these additional allegations were discovered by depositions and other discovery that apparently took place after the original Notice of Misconduct was filed. *See* Clarke Mem. at 3-4.

---

[1] As mentioned above, Clark has previously alleged two other instances of improper list-riding by Hearty and Corrigan prior to the challenged referrals.

*2) Legal Analysis*

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This provision has been liberally interpreted by the Supreme Court, *see Forman v. Davis,* 371 U.S. 178, 182 (1962), and the Second Circuit, *see S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979). *See also Excel Elecs. & Photo Corp. v. Aetna Casualty & Sur. Co.,* No. 90 Civ. 6508, 1991 WL 259257 at *2 (S.D.N.Y. Nov. 27, 1991) (citing Second Circuit cases). In *Forman*, the Supreme Court stated:

> In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'

*Forman*, 371 U.S. at 182.

In the case at bar, Clarke seems simply to be adding additional allegations that purportedly support the claims he made against Forde in the original Notice of Misconduct. The motion to amend does not seek to add additional parties, causes of action, or even additional challenged referrals. As such, allowing the amendment would not appear to unduly delay the action or prejudice Forde, and there is no evidence of bad faith or repeated failure to cure on the part of Clarke.

However, in opposing the motion to amend, Forde does assert that the motion should be denied because granting it would be futile. *See* Forde Mem. at 12-13. Ford is correct that a court need not grant leave to amend if doing so would be futile. *See Forman*, 371 U.S. at 182. An amendment or supplementation of a pleading is considered

8

a "futile" act when the proposed new claim would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Masefield AG v. Colonial Oil Indus.*, No. 05 Civ. 2231 (PKL), 2005 WL 2105542, at *7 (S.D.N.Y. Sept. 1, 2005). If, however, the party seeking to amend "has at least colorable grounds for relief, justice . . . require[s]" that its motion be granted. *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 783 (2d Cir.1984) (citation omitted). Additionally, the decision whether to grant leave to amend a pleading is within the sound discretion of the Court. *See Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995).

Because futility is analyzed pursuant to the standard for dismissal under Rule 12(b)(6), the allegations of the pleading in question must be presumed true, and the Court must draw all reasonable inferences in the pleading party's favor. *See, e.g., Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992). A claim may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Considering these standards, the Court cannot say that Clarke's proposed amendments would be futile. As mentioned above, more than anything else, the allegations Clarke seeks to add merely provide additional support for claims already made in the original Notice of Misconduct. Given the circumstances, I see no reason to prohibit Clarke from amending his pleading. Accordingly, Clarke's motion to amend is granted.

## III. CONCLUSION

Clarke's motion to amend is hereby granted. The proposed amended Notice of Misconduct, attached as Exhibit B to Clarke Mem., is deemed the operative pleading in this matter.

It is SO ORDERED.

Dated: New York, New York
November 1, 2005

*[signature]*
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE