UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,

      -against-

DISTRICT COUNCIL OF NEW YORK CITY AND
VICINITY OF THE UNITED BROTHERHOOD OF
CARPENTERS AND JOINERS OF AMERICA, et al.,

                Defendants.
----------------------------------------------------------------X

90 Civ. 5722 (CSH)

MEMORANDUM
OPINION AND ORDER

HAIGHT, Senior District Judge:

On September 6, 2007, non-party Eagle Construction Service, Inc. ("Eagle") was served with a subpoena by William P. Callahan, the Independent Investigator appointed by the Court in the captioned case. The subpoena was part of an investigation into whether Ronsco (Del), Inc. ("Ronsco"), a District Council signatory contractor, was using Eagle to pay carpenters working at Ronsco jobsites "off the books," without proper wages and benefits. Eagle now moves to quash the subpoena pursuant to Federal Rule of Civil Procedure 45(c); it argues that the subpoena was beyond the Independent Investigator's authority and unreasonable in scope. Alternatively, Eagle moves for a protective order limiting the scope of the subpoena and providing for reasonable costs and fees.

## I. BACKGROUND

### A. The Independent Investigator's Authority

In an August 22, 2005 Order (the "Appointment Order"), the Court appointed Unitel Intelligence Group, Inc. ("Unitel"), headed by Mr. Callahan, as the Independent Investigator for the captioned case. The Appointment Order sets forth the authority, rights, and responsibilities of the Independent Investigator. Paragraph 2(a) of the Appointment Order defines the general authority

of the Independent Investigator. It provides, in relevant part:

> General Authority. The Independent Investigator shall have the authority to investigate allegations of wrongdoing concerning the operation of the job referral system, and/or corruption or violations of federal, state, or local law by District Council representatives . . . or District Council signatory contractors . . . . "Wrongdoing" as used in the foregoing sentence shall include, without limitation, (i) manipulation of the job referral rules for political or personal gain; (ii) falsified reports, including without limitation shop steward reports; (iii) kickbacks and bribes; and (iv) permitting contractors to pay workers in cash or violate the "50/50 rule." The Independent Investigator shall operate the toll-free "hotline" telephone service (formerly operated by Walter Mack, Esq.) in order to solicit and receive allegations of wrongdoing or corruption by any person in connection with the operations of the District Council, whether or not such allegations relate to the job referral system. . . . .

Paragraph 2(b) of the Appointment Order sets forth specific investigative powers of the Independent Investigator. It provides, in relevant part:

> Investigative Powers. The Independent Investigator shall have the authority to take such reasonable steps as are lawful and necessary to be informed fully about the operation of the job referral system, District Council activities related to the job referral system, and jobsites. Without limitation, the Independent Investigator shall have the authority; (i) to interview and to take and require the sworn statement or sworn oral deposition consistent with the Federal Rules of Civil Procedure of any District Council Representative, or officer, employee, or member of the constituent locals, concerning any matter within the Independent Investigator's authority; and (ii) upon application to the Court, to issue subpoenas for testimony and/or documents from any person or entity. . . .

## B. The Eagle Investigation and Subpoena

On August 24, 2006, an anonymous caller to the Independent Investigator's toll-free hotline alleged that Ronsco was utilizing Eagle, a non-signatory contractor, to pay carpenters working at Ronsco jobsites. As a result of the call, the Independent Investigator opened an investigation into "double-breasting" by Ronsco and Eagle. The Independent Investigator explains:

2

> Double-breasting is a common technique used by companies to avoid paying union carpenters their proper wage and benefits. Signatory companies utilize non-signatory companies to process the payroll of some or all of the carpenters employed at their worksite. This is done so the lower wage and lack of benefits payments will not be detected during the periodic audits conducted by the New York City District Council of Carpenters Benefit Funds of signatory companies.

O'Flaherty Decl. ¶ 4.

On October 31, 2006, an attorney for the District Council requested that the District Council Benefit Funds' auditing firm, Abrams, Herde & Merkel LLP, perform an audit of Ronsco. The audit revealed that Ronsco had made nearly $1.5 million in cash disbursements to Eagle from September 30, 2004 through November 15, 2006. Although Ronsco invoices claimed the payments to Eagle were for "consulting services," the auditors identified a number of inconsistencies in the invoices which raised questions about their reliability. The auditors also found that Ronsco is owned by Lee Zaretsky and Eagle by Scott Zaretsky.[1]

Based on this information, the Independent Investigator states that it "has strong suspicion and evidence of a double-breasted scheme committed by Ronsco (Del) Inc. and Eagle Construction Services Inc. to defraud the District Council Benefit Funds and thus [needs] to have Eagle Construction Services Inc.['s] internal documents produced to investigate the matter further." O'Flaherty Decl. ¶ 9.

On August 9, 2007, upon application to the Court by the Independent Investigator, a subpoena directed at Eagle was signed by the Honorable Kimba M. Wood, Chief United States

---

[1] Scott Zaretsky is also the Vice President of Ronsco.

District Judge.[2] The subpoena commands Eagle to:

> Provide all documents, whether in paper or electronic form, relating to any and all work undertaken by Eagle Construction Services Inc. in the New York City vicinity from Sept. 2004 to the present, including but not limited to payroll records, invoices, pay stubs, purchase orders, work orders, contracts, union fringe benefit remittance statements, steward reports, accounts receivable, payment entries, bank statements relating to accounts used for payroll, bank statements reflecting deposits of payments for invoices relating to job sites, time sheets, sign in sheets, correspondence, memorandum, diary entries, phone messages slips, cancelled checks and e-mails.

Gardner Decl., Ex. A. The subpoena was served upon Eagle on September 6, 2007.[3]

On December 20, 2007, Eagle moved to quash the subpoena pursuant to Federal Rule of Civil Procedure 45(c), contending that the subpoena was beyond the Independent Investigator's authority and unreasonable in scope. Alternatively, Eagle moved for a protective order limiting the scope of the subpoena and providing for reasonable costs and fees. On January 7, 2008, the Independent Investigator, the District Council, and the government submitted papers in opposition to Eagle's motion. Eagle filed reply papers on January 15, 2008, and the matter is now ripe for decision.

## II. DISCUSSION

### A. Whether the Subpoena Was Within the Independent Investigator's Authority

In its initial brief, Eagle contended that the Independent Investigator lacked general authority

---

[2] The subpoena application was handled by Judge Wood in Part I due to my absence from the Courthouse that day.

[3] On its face, the subpoena specified a return date of September 6, 2007. In a letter to Eagle dated September 10, 2007, the Independent Investigator wrote: "Since the service was made on the same date as the return date (9-6-07), we are extending the date for Eagle Construction Service to respond to the request for documents as set forth on the annexed Rider to Monday September 24, 2007 as a final date." Gardner Decl., Ex. C.

4

to investigate Eagle under ¶ 2(a) of the Appointment Order, which gives the Independent Investigator "authority to investigate allegations of wrongdoing concerning the operation of the job referral system, and/or corruption or violations of federal, state or local law by District Council representatives . . . or District Council signatory contractors." Eagle argued: "Eagle is not and has never been a party to this action nor any related action. Eagle is further not a signatory of the District Council nor does it employ any union carpenters. As Eagle is not a District Council signatory nor does it have any role regarding the 'job referral' system, Eagle cannot be considered a party over which the Independent Investigator has authority to investigate . . . ." Eagle's Br. at 4. I reject this argument. The Independent Investigator's investigation into whether Ronsco, a District Council signatory contractor, was using Eagle as part of a "double-breasting" scheme to pay carpenters at Ronsco jobsites off the books clearly falls within the Independent Investigator's general authority to investigate "wrongdoing" by District Council signatory contractors.[4]

Eagle also argues, however, that the subpoena exceeded the Independent Investigator's investigatory powers under ¶ 2(b) of the Appointment Order. That provision states, in relevant part:

> The Independent Investigator shall have the authority to take such reasonable steps as are lawful and necessary to be informed fully about the operation of the job referral system, District Council activities related to the job referral system, and jobsites. Without limitation, the Independent Investigator shall have the authority; (i) to interview and to take and require the sworn statement or sworn oral deposition consistent with the Federal Rules of Civil Procedure of any District Council Representative, or officer, employee, or member of the constituent locals, concerning any matter within the Independent Investigator's authority; and (ii) upon application to the Court, to issue subpoenas for testimony and/or documents from any person or entity.

---

[4] Paragraph 2(a) of the Appointment Order states that "wrongdoing" includes, without limitation, "permitting contractors to pay workers in cash." I conclude without difficulty that a scheme by a signatory contractor to pay carpenters off the books, without proper wages and benefits, falls within the "wrongdoing" covered by ¶ 2(a).

5

. . .

According to Eagle, ¶ 2(b) only allows the Independent Investigator to issue subpoenas relating to "the operation of the job referral system, District Council activities related to the job referral system, and jobsites"; and the subpoena served upon Eagle thus exceeded the Independent Investigator's powers. I disagree with this analysis.

The text of ¶ 2(b)(ii) permits the Independent Investigator "upon application to the Court, to issue subpoenas for testimony and/or documents from any person or entity." Although the clause contains no further explicit limitation, the Independent Investigator's power in this respect must of course be bounded to some degree.[5] In light of ¶ 2(a), which sets forth the general authority of the Independent Investigator, and ¶ 2(b)(i), which permits the Independent Investigator to take depositions of certain individuals associated with the District Council "concerning any matter within the Independent Investigator's authority," I hold that ¶ 2(b)(ii) must be interpreted to permit the Independent Investigator, upon application to the Court, to issue subpoenas for testimony and/or documents from any person or entity *concerning any matter within the Independent Investigator's authority*. Because the alleged "double-breasting" by Ronsco and Eagle is within the Independent Investigator's general authority, the Independent Investigator was entitled to issue a subpoena for documents upon Eagle pursuant to ¶ 2(b)(ii).[6] Moreover, even if—as Eagle urges—I were to interpret ¶ 2(b)(ii) as limited to subpoenas relating to "the operation of the job referral system,

---

[5] In other words, the "application to the Court" is not a purely ministerial act; upon application to the Court, the Court must apply some standard in determining whether the subpoena is proper.

[6] Because ¶ 2(b)(ii) explicitly permits the Independent Investigator to subpoena "any person or entity," Eagle's status as a non-party and non-signatory does not shield it from investigation.

6

District Council activities relating to the job referral system, and jobsites," I would still find the subpoena properly within the Independent Investigator's power. The Independent Investigator's investigation into whether Ronsco has been transferring money to Eagle in order to pay carpenters on Ronsco jobsites "off the books" falls within the Independent Investigator's authority "to be fully informed about the operation of . . . jobsites." ¶ 2(b). *See, e.g., United States v. District Council*, 2007 WL 3256841, at *2 (S.D.N.Y. Oct. 26, 2007) (describing off the books payments to carpenters, without proper wages or benefits, as a form of "corruption of the job site").

For these reasons, I reject Eagle's contention that the subpoena was beyond the power of the Independent Investigator.

## B. The Scope of the Subpoena

Eagle also contends that the scope of the subpoena is broad and oppressive. The subpoena commanded that Eagle:

> Provide all documents, whether in paper or electronic form, relating to any and all work undertaken by Eagle Construction Services Inc. in the New York City vicinity from Sept. 2004 to the present, including but not limited to payroll records, invoices, pay stubs, purchase orders, work orders, contracts, union fringe benefit remittance statements, steward reports, accounts receivable, payment entries, bank statements relating to accounts used for payroll, bank statements reflecting deposits of payments for invoices relating to job sites, time sheets, sign in sheets, correspondence, memorandum, diary entries, phone messages slips, cancelled checks and e-mails.

Gardner Decl., Ex. A. Eagle argues that this broad request for documents creates an undue burden, and that "[t]he effort and expense which would be required to compile and copy this universe of documents is completely unwarranted, and patently oppressive and unreasonable." Eagle's Br. at 7. On December 27, 2007, the Independent Investigator contacted Eagle and offered "to reduce the list of subpoenaed documents to: 'payroll records, checking statements and cancelled checks.'"

7

Callahan Decl. ¶ 5 & Ex. G. The Independent Investigator states that it made this offer in good faith, "in an effort to accommodate counsel and the court [and] to avoid unduly burdening the parties and the Court." *Id.* Under these circumstances, Eagle's motion for a protective order will be granted so as to limit the scope of the subpoena to "payroll records, checking statements, and cancelled checks." Thus I need not determine whether the original request for documents in the subpoena created an undue burden on Eagle.

## C. Costs and Fees

Finally, Eagle argues that it should be awarded costs including reasonable attorney's fees as a sanction because the subpoena was overbroad and unduly burdensome. Federal Rule of Civil Procedure 45(c)(1) states:

> A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

In light of the fact that the Independent Investigator offered to discuss the scope of document production with Eagle as early as October 23, 2007, *see* Gardner Decl., Ex. D, and offered to reduce the list of subpoenaed documents on December 27, 2007, I conclude that the Independent Investigator took "reasonable steps to avoid imposing undue burden" on Eagle and I decline to impose any sanction.

## III. CONCLUSION

For the above reasons, Eagle's motion to quash the subpoena is denied. Eagle's motion for a protective order is granted so as to limit the scope of the subpoena to "payroll records, checking

statements, and cancelled checks." Eagle's motion for costs, including attorney's fees, is denied.

It is SO ORDERED.

Dated: New York, New York
January 23, 2008

_____
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE