UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiff,　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　:　　90 Civ. 5722 (CSH)
　　　　- vs. -　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　:　　**MEMORANDUM OPINION**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　:　　**AND ORDER**
DISTRICT COUNCIL OF NEW YORK　　　　　　　　　:
CITY AND VICINITY OF THE UNITED　　　　　　　　 :
BROTHERHOOD OF CARPENTERS AND　　　　　　 :
JOINERS OF AMERICA, at al.,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants.　　　　　　　　　　　　　　:
------------------------------------------------------------------x

HAIGHT, Senior District Judge:

　　　　The Intervenors apply pursuant to Fed.R.Civ.P. 62(c) for a stay pending their appeal of the Court's Remedy Order. The Remedy Order is reported at 618 F.Supp.2d 326 (S.D.N.Y. 2009). The Remedy Opinion giving the Court's rationale for the Order's provisions is reported at 592 F.Supp.2d 708 (S.D.N.Y. 2009). Familiarity with both is assumed. The Government opposes a stay. The District Council takes no position. For the reasons that follow, the Intervenors' stay application will be denied.

　　　　The Intervenors properly invoke Rule 62(c), in obedience to the direction in Fed.R.App.P. 8(a) that an application for a stay of a district court's order pending appeal "must ordinarily be made in the first instance" in that court. The criteria for granting such a stay are familiar in Second Circuit jurisprudence:

> The four factors to be considered in issuing a stay pending appeal are well known: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the

1



> applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*In re World Trade Center Disaster Site Litigation*, 503 F.3d 167, 170 (2d Cir. 2007) (citations, internal quotation marks, brackets and footnotes omitted). Significantly, "the degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other." *Id*. The Intervenors fail to satisfy all four criteria.

1. **Whether the Intervenors have made "a strong showing" that they are "likely to succeed on the merits" of their appeal.**

The standard of review applicable to the Remedy Order is abuse of discretion. *See OSRecovery, Inc. One Groupe Int'l., Inc.*, 462 F.3d 87, 93 (2d Cir. 2006) ("We review a finding of contempt for abuse of discretion."); *Eisemann v. Green*, 204 F.3d 393, 396 (2d Cir. 2000) ("A District Court's imposition of sanctions is reviewed for abuse of discretion."). This is a deferential standard. "When a district court is vested with discretion as to a certain matter, it is not required by law to make a *particular* decision. Rather, the district court is empowered to make a decision -- of *its* choosing – that falls within a range of permissible decisions." *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 168-69 (2d Cir. 2001) (emphases in original).

At the risk of appearing immodest or self-deluding, I think it unlikely that the Court of Appeals will condemn the Remedy Order as impermissible. The Remedy Order balances the public and private interests affected by the Job Referral Rules and the Consent Decree. While contractors lose the right to select the entire carpenter work force at a job site that the Request System gave them, which displeases the Intervenors, contractors can arrange their affairs in such a way that they can select two-thirds of the force, instead of the Union selecting half of the force from the Out-of-

Work List, as the government requested. While the government asked that the Remedy Order apply at once to all construction contracts, the Remedy Order exempts existing contracts and contracts in the bidding process, so that contractors will not be unfairly prejudiced, and need only to factor the Remedy Order provisions into future bids on future contracts. The Remedy Order restores the Job Referral Rules and the Out-of-Work List as effective vehicles for the fair and honest employment of carpenters, while minimizing any resulting economic disadvantage to contractors.

These and related provisions in the Remedy Order are the result of the exercise of this Court's discretion, after careful consideration of the sometimes competing and conflicting public and private interests involved. I am unable to conclude that the Intervenors have made a strong showing of likely success in persuading the Court of Appeals that the Remedy Order constitutes an abuse of discretion. To the extent that the Intervenors claim this Court lacked any power to issue the Remedy Order at all, they misconstrue the relevant jurisdictional statute and case law, and misread the Second Circuit's opinion remanding the case to this Court for the fashioning of an appropriate remedy.[1]

---

[1] The Intervenors' Main Brief at 1 n.1 reflects their lingering pique at being denied discovery during the remedy phrase: "Except for affidavits submitted by the Intervenors in support of their intervention, only the Government was permitted to supplement the long record through the discovery permitted by the Court." It is difficult to discern a reasonable basis for the Intervenors' discontent. "The Court allowed the Government limited discovery into the Intervenors' assertions that abrogating the Request System would work great economic hardship upon contractors, and their assertions of ignorance concerning the Government's contempt motion challenging the validity of the Request System." Remedy Opinion, 592 F.Supp.2d at 712. As to the first point of inquiry, I concluded that the evidence elicited from contractors "of the value of the Request System to union contractors and the risks inherent in losing the System persuade[s] me that the value is substantial and the risk real." *Id.* at 720. As to the second, I said: "The Court allowed the Government discovery into whether the contractors' representatives were aware of the contempt proceedings and what they entailed during the negotiations of the 2006 CBAs. No proof was elicited to support the Government's theory." *Id.* at 721. Thus the Intervenors prevailed on both questions on which the Government was permitted limited discovery; it is not surprising that the Intervenors fail to identify any prejudice to them resulting from the Court's denial of reciprocal discovery.

2.     **Whether contractors "will be irreparably injured absent a stay."**

The Remedy Order's job selection and referral procedures do not affect existing construction contracts or contracts where bids have been made but not yet awarded. Contractors must take the Reform Order's provisions into consideration only in fashioning future bids for future contracts. While the Intervenors argue that this will place its member contractors at a competitive disadvantage in bidding against non-union contractors, with consequent enormous and irreparable economic loss, these contentions are conjectural. That is understandable up to a point. However, while the Remedy Opinion foretelling the Remedy Order issued on January 13, 2009 and the Remedy Order implementing the Opinion issued on May 26, 2009, the Intervenors did not move for a stay pending appeal until July 13, 2009. Moreover, their motion papers do not include a description of any contract or contracts where the remedy decreed has placed union contractors at an economic disadvantage in the bidding process.

That does not mean the contractors' concerns lack substance. There is an economic reason why contractors prefer the freedom of selection they had under the Request System, and are less troubled that carpenters are denied work by the evisceration of the Job Referral Rules and the dismantling of the Out-of-Work List machinery. Nonetheless, the well-crafted letter dated June 2, 2009 that an Intervenor, the Association of Wall-Ceiling & Carpentry Industries of New York, Inc., sent to its membership (Ex. A to the affidavit of Michael Weber), outlining the provisions of the Remedy Order and instructing contractors on how to comply with it, has the perhaps unintended

---

While the Intervenors' economic concerns, recognized by the Court in the Remedy Opinion, remain substantial, for the reasons stated in text they do not justify a stay of the Remedy Order pending appeal.

4

effect of suggesting that compliance is perfectly possible without imposing undue hardships, at least on an administrative level.

### 3 and 4. "Whether issuance of the stay will substantially injure the other parties interested in the proceeding" and "Where the public interest lies."

These factors merge because the government, as party plaintiff, seeks a remedy on behalf of the individual members of the District Council's constituent local unions. *See Nken v. Holder*, – U.S. – , 129 S.Ct. 1749, 1762 (April 22, 2009) ("Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party."). In the case at bar, the Government demonstrated that Consent Decree and Job Referral Rules provisions intended to ensure the fair treatment of carpenters seeking employment had been nullified. A stay of the Remedy Order pending appeal would prolong that inequitable nullification, and irreparably injure those carpenters standing to benefit from the Order's provisions. These factors outweigh any harm to the Intervenors absent a stay. The public interests served by the Remedy Order add resonance to the Supreme Court's observations in *Nken*, 129 S.Ct. at 1757: "A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." (citations and internal quotation marks omitted).

There is an additional and recent development that I am bound to consider. On August 5, 2009, an indictment by a grand jury in this district was unsealed in the case of *United States v. Forde*, 08 Cr. 828 (VM). The ten defendants include the Executive Secretary-Treasurer of the District Council and the executive director of one of the Intervenor Associations. The indictment charges, *inter alia*, that Union officers accepted bribes from five unnamed contractors ("Contractor

#1" through "Contractor #5") to allow the contractors to pay carpenters in cash, off the books, with the objective of reducing the contractors' obligation to contribute to Union benefit funds as required by collective bargaining agreements. The Government has argued from the inception of this Consent Decree contempt proceeding that the Request System, with every carpenter depending upon a contractor's pleasure for employment, was a breeding ground for the sort of job site corruption a grand jury has now found probable cause to believe exists in considerable measure. The indictment reinforces the wisdom of denying a stay of the Remedy Order's remedial provisions.[2] That is so, although of course the indictment is only a charge and proves nothing, the defendants are presumed to be innocent, and the Government's burden at trial is to prove them guilty beyond a reasonable doubt.

For the foregoing reasons, the Intervenors' application for a stay of the Remedy Order pending appeal is DENIED.

It is SO ORDERED.

Dated: New York, New York
August 17, 2009

*[signature]*

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] The Government wrote the Court a letter dated August 10, 2009, discussing the indictment in the context of the Intervenors' application for a stay, and asking that the letter be added to the docket in this case. I have not considered the Government's letter and do not add it to the docket. But I may judicially notice the indictment, widely reported by the media. Copies of the indictment were sent to me by the Court's Independent Investigator, William Callaghan, and by my efficient Deputy Court Clerk in the Southern District of New York, who watches out for the cases I have retained in that Court after an assignment to the District of Connecticut. I was able to comprehend without assistance the pertinence of the indictment to the present application.