UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                             :
UNITED STATES OF AMERICA,                                    :
                                                             :
                          Plaintiff,                         :
                                                             :    No. 90 Civ. 5722 (CSH)
                                                             :
                   v.                                        :    **MEMORANDUM AND ORDER**
                                                             :
DISTRICT COUNCIL OF NEW YORK CITY                            :
AND VICINITY OF THE UNITED BROTHER-                          :
HOOD OF CARPENTERS AND JOINERS OF                            :
AMERICA, et al.,                                             :
                                                             :
                          Defendant.                         :
                                                             :
------------------------------------------------------------x

HAIGHT, Senior District Judge:

      For purposes of this Memorandum and Order, familiarity is assumed with all prior opinions and orders of this Court and the Court of Appeals.

      The present status of the case is as follows. The Consent Decree and the Job Referral Rules are in full force and effect. Unitel Intelligence, Inc. ("Unitel"), whose president is William P. Callahan, continues to act as the Independent Investigator appointed by orders of this Court. Following the indictment in this District of, among others, Michael Forde, the erstwhile Executive Secretary-Treasurer of the District Council of New York City and Vicinity of the Brotherhood of Carpenters and Joiners of America ("the District Council") and other District Council officers, the parent United Brotherhood of Carpenters and Joiners of America ("the UBC") placed the District Council under Trusteeship. Douglas J. McCarron is the General President of the UBT. Frank Spenser, an officer of the UBT, has been appointed Supervisor of the District Council in Trusteeship. John T. DeCarlo, of the law firm of DeCarlo, Connor & Shanley, is counsel for the UBC. Gary

Rothman, of the firm of O'Dwyer & Bernstien, is - or at least was - counsel for the District Council. Mark E. Brossman, of the firm of Schulte, Roth & Zabel, is counsel for the Employer Trustees of the District Council's several Benefit Funds. AUSA Benjamin H. Torrance, of the office of the United States Attorney for this District, heads the government litigation team.

At stated intervals, and as circumstances require, the Independent Investigator makes written or oral reports to the Court. On the afternoon of January 28, 2010, at his request, I met with Mr. Callahan and two members of his Unitel staff in New York.[1] They called to my attention reports of recent events that, in the Independent Investigator's view, compromised the effectiveness of that office. Specifically, Callahan and his staff advised me that on several occasions in November and December, 2009, McCarron and DeCarlo met in AUSA Torrance's office to discuss replacing Unitel as the Independent Investigator with an individual, one Dennis Walsh, who was referred to during these discussions as a "Monitor." The UBC's representatives and the government were also said to have discussed this matter with the Schulte Roth firm. Walsh, it was said, had been making the rounds, meeting with local unions.

Callahan and his staff further advised the Court that during an evening meeting of business managers of the District Council's constituent locals on January 27, 2010, a business agent said to the assemblage: "Don't use the hotline. Callahan is a lame duck." The hotline is a telephone line set up and maintained to receive complaints and information from union carpenters. It was first established by Walter Mack, Unitel's predecessor as the Court-appointed Independent Investigator, and subsequently maintained by Unitel.

---

[1] In 2008, my judicial duty station was relocated from the Southern District of New York to the District of Connecticut, with Chambers and Courtroom in New Haven. I have retained jurisdiction over this case. On January 28, 2010, I was in New York on an unrelated matter.

2

During the January 28 meeting with the Court, Callahan and his staff described their sources for this information as reliable individuals with knowledge of the events they related. Those individuals had expressed a wish to remain anonymous, which the Independent Investigator respected. The practice of giving individuals contacting the Independent Investigator's office the option of remaining anonymous was first instituted by Mack and continued by Unitel. The Unitel team also told the Court, based on their own knowledge, that subsequent to the Court's opinion on the remedy issue following remand from the Second Circuit, the United States Attorney's office had stopped responding to the Independent Investigator's reports and correspondence to that office.

The Court had not determined what action, if any, to take as the result of the Independent Investigator's report during the afternoon of January 28 when, during the early afternoon of January 29, Torrance, with DeCarlo on the line, called my Chambers and spoke to one of my Law Clerks. I had not yet returned to Chambers from New York. My Law Clerk prepared a memorandum to the file describing this conversation. It reads in part:

> Mr. Torrance said the purpose of the call was to nip certain rumors in the bud, because "there were apparently some rumors going around and someone said something at a union meeting yesterday" that "there was no longer any point to calling Mr. Callahan's hotline because he would be gone soon."
>
> Mr. Torrance "wanted to make absolutely clear that nothing the Government or UBC has done has ever discouraged anyone from calling [the] hotline or cooperating with Callahan" as the Independent Investigator.
>
> "But," he continued, "despite the misleading or false rumors going around, it is true that we're negotiating a further stipulation and submitting that to the Court shortly." Torrance said that the Government has been negotiating with the UBC as the supervisor [of the District Council] to fashion "an order governing matters going forward, additional relief in light of the indictment that came down

3

> in August, and means of implementing the 1994 Consent Decree." He did not say, and I did not ask, whether those "matters going forward" would include replacing Bill Callahan as the I.I. [Independent Investigator].
>
> DeCarlo said that the UBC and the Government are already "in agreement on this proposed stipulation," but they are "just trying to get another entity to agree."

Later that day, the Court received from Unitel by fax a copy of a report dated January 29, sent by Callahan to Spenser and captioned "Investigation of Statements Made by Business Agent John Holt." Holt, the Business Agent of Local Union 926, had been identified by the Independent Investigator's sources as the individual announcing the imminent replacement of Unitel by Walsh at the January 27 union meeting described *supra*. The report states at ¶ 2 that on January 28, the hotline received a call from a concerned Union member who stated that at a Union meeting on January 27, Holt

> made the statement he had information that was 100% accurate. He said the Independent Investigator had been given a 90 day letter of termination. He will be terminated by the end of March. Dennis Walsh will be the new Independent Investigator come April. When asked why he looked so happy, B/A Holt said that Callahan had been "breaking his balls" recently, but Callahan has got nothing on him.

Holt was interviewed at the District Council offices on January 29 by two Unitel investigators, together with the District Council's Director of Operations, Maurice Leary, and Assistant Supervisor John Ballantyne. The report at ¶ 4 summarizes that interview:

> B/A Holt admitted that he made statements concerning the termination of the Independent Investigator. These statements were made in front of other business agents and business managers at the at the District Council Executive Delegates Board meeting held on 1/27/10. There were no minutes taken as the meeting was to attend to First Readings. B/A Holt stated *he was just repeating information*

4

> *he heard while visiting jobsites during his regular course of business.*
> He told the other Business Agents and managers that I.I. Callahan had been terminated and was to be replaced by Dennis Walsh in March. He claimed this information was 100% accurate.

(emphasis added).

These events justify the Independent Investigator's concern about an undermining of the effectiveness of his office. The Court shares that concern. It is entirely proper for any party or parties to this case to make, on proper notice, an application or present a stipulation to Court for its consideration. Non-parties may do so, if they can identify a protectible interest in the litigation, as did the Intervenors during the remedy stage. But it is entirely improper for anyone – party, non-party, representatives, or individuals with knowledge of non-publicized facts – to attempt, directly or indirectly, to undermine or diminish the ability of the Independent Investigator, appointed by the Court, to discharge the responsibilities laid upon it by Court order. If Holt is taken at his word, the supposed imminent termination of Callahan and ascendancy of Walsh were subjects of widespread knowledge and comment among union carpenters for a considerable period of time. I regard that as problematic.

It would appear from the statements of AUSA Torrance and Mr. DeCarlo that a stipulation of some sort will be presented to the Court eventually, presumably accompanied by an order the parties to the stipulation will invite the Court to sign. That invitation would be addressed to the discretion of the Court sitting in equity. I think that the concerns arising out of what has been recounted *supra* require a further development of the record.

Accordingly, the Court directs Messrs. Callahan, McCarron, Spenser, DeCarlo, Torrance, Walsh, Brossman and Rothman to attend a hearing before this Court on Wednesday, February

10, 2010, at 1:00 p.m., in the 500 Pearl Street Courthouse, room number to be designated later. Those participating should be prepared to discuss (1) their personal knowledge of the dates, places, attendees, agreements reached or other substance of any meetings or discussions dealing with or relating to the possible termination of the present Independent Investigator and its replacement by someone else; and (2) whether they informed any other person or persons of the substance of such meetings or discussions, and if so, to give full particulars as to the person or persons involved, the date, the content of the information given, and any instruction or request as to what use should be made of it.

At the hearing, the Court will respect any well-founded claim of attorney-client privilege or concept of confidentiality.

Until this hearing has been completed, and pending the further Order of the Court, the Court will not entertain any stipulation or application relating to the termination or replacement of the present Independent Investigator.

It is SO ORDERED.

Dated: New York, New York
       February 1, 2010

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE