UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,                      :
                                               :
                    Plaintiff,    :
                                               :      90 Civ. 5722 (RMB)
        -against-                     :
                                               :      **ORDER**
DISTRICT COUNCIL OF NEW YORK CITY              :
and VICINITY OF THE UNITED                     :
BROTHERHOOD OF CARPENTERS and                  :
JOINERS OF AMERICA, et al.,                    :
                                               :
                    Defendants.   :
------------------------------------------------------------X

      Having reviewed the record herein, including, among other things, the Consent Decree, dated March 4, 1994 ("Consent Decree"); the Stipulation and Order Regarding Appointment of a Review Officer, dated June 2, 2010 ("Stipulation"); Court proceedings held on April 6, 2011 and May 16, 2011; the letter from Raymond G. McGuire, Esq., counsel to the Funds' trustees ("Trustees"), dated May 19, 2011 to the Court ("McGuire May 19 Ltr.") ("[P]roviding additional information [about the Funds] to the participants . . . may be in the interest of all parties."); the Court's Order, dated May 26, 2011 ("May 26 Order"), indicating, among other things, that "the Court would like to devote the first hour or so at the June 28, 2011 conference to a report on the status of the [District Council Benefits Funds ('Funds')]"; the letter from Mr. McGuire, dated June 20, 2011 ("McGuire June 20 Ltr."), requesting that the Court "reconsider the May 26 Order"; and applicable law, the Court finds and directs as follows:

      **More complete disclosure of the financial status of the Funds is imperative. The Trustees' request for reconsideration of the May 26 Order is respectfully granted in part and denied in part as follows**:

The Court's May 26 Order calling for a June 28, 2011 "report on the status of the Funds" was issued as a (direct) result of counsel to the District Council, Kenneth Conboy, Esq.'s, and counsel to the Trustees, Mr. McGuire's, comments to the Court at the April 6 and May 16, 2011 conferences about troubling and seemingly urgent problems related to the Funds and "threats" to the viability of the Funds.  (Tr. of Proceedings, dated Apr. 6, 2011 ("Apr. 6 Tr.") at 10:23–11:1 (MR. CONBOY: "Mr. McGuire is going to give you some numbers, Judge, and they're very, very, very troublesome in terms of gaps between . . . monies going into the [F]unds and benefits going out of the [F]unds."); Apr. 6 Tr. at 21:21–22:4 (MR. McGUIRE: "[W]e've turned our attention to what I might broadly describe as threats to the continued vitality and economic integrity of the Funds."  COURT: "Meaning that there won't be enough money available to pay out what is supposed to be paid out?"  MR. McGUIRE: "Exactly, your Honor.  The threats come from four sources," including, "[f]irst, the fraud and cheating that has preoccupied all of us for the last several years."); Tr. of Proceedings, dated May 16, 2011 ("May 16 Tr."), at 4:1-9 (MR. CONBOY: "I am going to ask my colleague, Raymond McGuire, to bring your Honor up to date with a matter that . . . is of a nature that we believe should be shared by you and by all here in the courtroom, obviously very concerned about the integrity of these [F]unds, as those [F]unds relate to the retirement and the health and indeed the fundamental expectations of the rank and file . . . ."); May 16 Tr. at 9:5–10:1 (MR. McGUIRE: "[W]e will be running in 2010–2011 a deficit of approximately $45 million. . . .  [I]f we do nothing the reserves run out, no question about it.  And by nothing, I mean if we do not . . . somehow adjust and restructure the benefit plans and the benefits available under the plans, we will be facing a serious problem.").)

The May 26 Order is the Court's response to these issues raised by counsel at the April 6 and May 16, 2011 conferences – and the Court is mystified by counsel's reaction and hopes

(presumes) this is not backtracking on the need for disclosure by the Funds' counsel.[1]  (Compare McGuire May 19 Ltr. at 2 ("[W]e will be prepared to update the Court . . . at the June 28 status conference" on "how to provide [status reports to the membership] in the most comprehensive and accessible format"), with McGuire June 20 Ltr. at 4 ("[T]he Trustees . . . do not believe it is in the best interests of the Funds[] for the type of direct participation in [this] case that is required by the Court's May 26 Order.").)  The May 26 Order provides a framework for discussion about the Funds' performance at the June 28, 2011 conference – while endeavoring to ensure greater transparency with respect to the Funds.  (Apr. 6 Tr. at 10:24, 21:22.)  **The Court reaffirms the May 26 Order and its conclusion that the more transparency which can be provided to the membership with respect to the Funds, the better**.  (See May 26 Order at 1.)[2]

The Court appreciates Mr. McGuire's request to defer to the Review Officer vis-à-vis reporting on the Funds (see McGuire June 20 Ltr. at 4 ("The Trustees have been and remain fully committed to reviewing and, if appropriate, implementing any recommendations made by the Review Officer.  We respectfully request that the Funds' participation in this . . . case continue in

---

[1]   The Court is also disappointed that counsel waited nearly 4 weeks from the issuance of the May 26 Order to write to the Court (and only 8 days before the June 28, 2011 conference).

[2]   See also First Interim Report of the Review Officer, Dennis M. Walsh, Esq., dated Dec. 3, 2010, at 52 ("The concentration of knowledge and power in the hands of only a few provides an environment where fraud and abuse can occur."); Apr. 6 Tr. at 7:2-10 (MR. CONBOY: "[O]f immense importance to every member of the [U]nion and certainly every retired member . . . relates to the integrity of the [F]unds."); May 16 Tr. at 28:16-20 (UNION MEMBER: "My question to Mr. McGuire is being that the [F]unds are in such dire straits and being that we wait to [the] end [of] the fiscal year . . . is it at all possible to get a quarterly report?  I mean, that being the condition that they're in, it's fair enough."); Apr. 6 Tr. at 40:17-21 (UNION MEMBER: "[W]hen I heard about the supervision, I want[ed] to find out what was going on.  I did not have any power to find out anything.  I went to the [F]unds.  The [F]unds will not tell you anything."); Second Interim Report of the Review Officer, dated June 3, 2011, at 16 ("I have had expressed to me by some members great antipathy toward the [Union], which they believe is secretive and dictatorial."); McGuire May 19 Ltr. at 2 ("**[W]e appreciate the point Your Honor raised about providing additional information [about the Funds] to the participants and recognize that doing so may be in the interest of all parties**." (emphasis added)).

this manner.")), and would be comfortable with having Mr. Walsh – but also a representative from The Segal Company ("Segal") – provide the information outlined in the May 26 Order. See infra pages 4–5.  The provision of that information may also be "without prejudice" to Mr. McGuire's claim that the Trustees "are not bound to the Consent Decree."  (McGuire June 20 Ltr. at 3.)[3]

With respect to the remaining points in Mr. McGuire's June 20, 2011 letter, the Court notes the following:

(i) The May 26 Order is fully consistent with the Stipulation, and the "Court retains exclusive jurisdiction to supervise implementation of th[e] Stipulation."  (Stipulation at 2, 20 ("[I]n recent years certain persons have been convicted of criminal offenses relating to . . . the Benefit Funds" and "fraud and inaccurate reporting by certain employers required to contribute to the Benefit Funds have deprived the Benefit Funds of such contributions."); see also Stipulation at 19 ("To the extent this Stipulation . . . conflicts with any current or future right[] . . . applicable to . . . the Benefit Funds, . . . the Benefit Funds hereby waive compliance with any such right . . . .").)

(ii) It would be very helpful to the Court for Segal **actively** to participate at the June 28, 2011 conference because they are the "Funds' actuary and consultant" (McGuire May 19 Ltr. at 1) and the Court is most interested (at this time) in the financial issues related to the Funds' performance.  Respectfully, it did not appear at the May 16, 2011 conference that counsel was fully informed as to the Funds' financial situation.  (See May 16 Tr. at 8:24–11:12 (MR.

---

[3] See also United States v. District Council of N.Y.C., No. 90 Civ. 5722, 1996 WL 221584, at *5 (S.D.N.Y. May 2, 1996) (Haight, J.) ("[T]he Benefit Funds is bound by the terms of the Consent Decree . . . ."); (see also Consent Decree at 2, 18 ("This Court shall retain exclusive jurisdiction to supervise implementation of this Consent Decree," through which "the parties agree that . . . the District Council and its constituent local unions shall be maintained and run democratically and without unlawful influence . . . .").

McGUIRE: "We had a meeting with [Segal] last week and we did get some disturbing news . . . . We were not aware that the situation was as precarious as [Segal] told us last week, although today [Segal] somehow found $32 million in income," "so the situation is not as dramatically precarious, but it remains precarious. . . . [T]here were a number of different figures thrown around, but what I have in my notes here from . . . [Segal] was that the deficit was reduced from [$]44 to $20 million or is projected to be reduced by the end of the fiscal year when [Segal] accounted for investment gains.").)

(iii) Finally, it is inconceivable to the Court that the financial reporting outlined in the May 26 Order – which is to be provided at the June 28, 2011 conference – would have any "negative impact . . . on the Trustees' ability to obtain confidential advice from [Segal]," or would significantly "increase[] . . . the Funds' administrative and professional fees" (McGuire June 20 Ltr. at 5), or that such concerns should, in any event, frustrate the important goals of financial disclosure, transparency, and integrity of the Funds.

Dated: New York, New York
       June 27, 2011



RICHARD M. BERMAN, U.S.D.J.