# UNITEL FAX MEMO

William P. Callahan, Esq
Independent Investigator
New York City District Council of Carpenters
17 Battery Place, Suite 1226
New York, NY 10004
(212) 889-3000 – Fax (212) 889-3242
E-mail: unitel.group@gmail.com

PAGES TO FOLLOW: *3*

DATE:  November 30, 2006

TO:   Hon. Charles S. Haight, Jr.

FR:   William P. Callahan, Esq

RE:   Calls – L-45 Nominating Meeting 11-28-06

**Preliminary Fax Report**

This will acknowledge the Court's two fax communications (11-29-06) relating to calls (2) from a confidential carpenter source concerning Local-45 nominating meetings/elections. At the outset, I have a serious question if my office even has any authority to act herein regarding purely election matters.

Concerning the same matter, on 11-29-06, at 12:25 p.m., we received a "hotline" call (#511 – copy annexed) from a carpenter who was at the L-45 nomination meeting the previous evening and advised he and other carpenters objected to the nomination process. He asserted that there were two spots open and Sal Antonucci, the president and chair of the meeting stated there was only one spot open, etc. Caller asserted that the Local management is trying to "railroad" the election process, etc.

A few minutes later another carpenter called on the same topic and same issues (both callers identified themselves to the I.I. but requested anonymity).

I.I. advised both callers that initially, I have to determine if I even have authority to investigate election issues under my order. Neither caller had any evidence of corruption or wrongdoing other than a perception of corruption concerning these election issues.

Regarding the two calls to Chambers, I note in Mr. Lee's memos, the assertion that the caller "complained to Callahan about a shop steward (being improperly assigned to a job) but nothing was done." A second assertion/rumor was that the "District Council had bought Callahan with cash." And another assertion in the 11-29-06 Chambers call that the "District Council is able to get around Callahan."

Of course, the first assertion about the shop steward improper assignment was the subject of a previous full investigation into the allegations of an earlier call to Chambers on 9-11-06. That

assertion and our investigation resulted in a 5-page written report to your Honor dated 9-28-06 wherein our investigation found no violation of the OWL or the other allegations. As far as "the D.C. had bought Callahan with cash"or that the "D.C. is able to get around Callahan," both are wildly speculative assertions as well as being blatantly false defamatory statements. However, I can't control rumors and perceptions which are endemic in the Carpenter's Union.

I ask the Court to first consider if I even have jurisdiction or authority under my 8-26-05 Order of appointment regarding "election/nomination issues." In reviewing the Order, particularly Par. 2 a., (General Authority) I clearly have the authority to investigate any and all acts of "wrongdoing" concerning the job referral system and/or corruption or violations of federal, state or local law by District Council Representatives ... officers, etc., ...signatory contractors and to recommend disciplinary charges, etc. Wrongdoing is then defined later in this paragraph. In addition the I.I. shall operate the toll-free hotline to "receive allegations of wrongdoing or corruption by any person in connection with the operations of the D.C. whether or not such allegations relate to the job referral system." The Order further provides (pag-3) "when the I.I. receives complaints ... that in his judgment are garden-variety collective bargaining agreement issues that do not implicate corruption, organized crime influence or the fair administration of the job referral rules, the I.I. is encouraged to refer those matters to the D.C. Director of Operations.

Thus, I find no justification in my Order to investigate election issues herein and beg the Court to provide some guidance here. I note during the recent DC elections, that an Elections Monitor (law firm) was appointed by the D.C. to resolve purely election issues. This may be a matter more suited for the District Council or the International in Washington.

I invite responses from both the government and Counsel for the District Council herein.

Respectfully submitted,

William P. Callahan
Independent Investigator

cc:  Edward Scarvalone, AUSA
      Gary Rothman, Esq   / Gary Silverman, Esq

THE CONTENTS OF THIS FAX IS CONFIDENTIAL AND MAY CONTAIN LEGALLY PRIVILEGED INFORMATION. IF THIS IS RECEIVED IN ERROR PLEASE NOTIFY THIS OFFICE AND RETURN THE ORIGINAL FAX AT OUR EXPENSE OR CALL COLLECT.

# NYCDC - CARPENTERS UNION

## INDEPENDENT INVESTIGATOR

**CASE REPORT** **(18)-071-11/29/06** 511

| | | | |
|---|---|---|---|
| **DATE:** | 11/29/2006 | **SATUS:** | Pending |
| **TIME:** | 12:25:00 PM | **TYPE OF CASE:** | 18 - Miscellaneous |
| **PRIORITY:** | | **RELATED CASE** | |

**CALLER NAME:**

**CALL BACK NUMBER:**

**JOB LOCATION:**

**FLOOR:**

**LOCAL:** 45

**JOB CONTRACTOR:**

**GENERAL CONTRACTOR:**

**WORK TYPE:**

**DATE JOB STARTED**

**# OF PERSONS ON JOB:**

**STEWARD NAME:**

**FOREMAN NAME:**

**BUSINESS AGENT NAME:**

**COMPLAINT:**
Caller, an Anonymous Local 45 carpenter, was at the nomination meeting at the Hall last night and Sal Antonucci informed the membership that only one nomination for a delegate was on the agenda. Caller said that a number of carpenters objected, noting that there were 2 spots open since Jim Brennan retired and another delegate, John Collette, resigned. Antonucci said "No only one delegate spot is up for nominations" and that the 2nd spot was already appointed or filled. Caller wants to see the minutes for the meeting, he feels that John early is trying to "railroad" the elections.

**CASE NUMBER:** (18)-071-11/29/06

# CASE REPORT     (18)-071-11/29/06     511

**REPORTED TO UNION:** yes (DC Only)

**UNIT:**

**REPORTED DATE:**

**UNION ID:**

**CALL TAKEN BY:** WPC

**CLOSING REASON:**

**I.I. ACTION:**

11/29/06 - II informed caller he first had to determine if he has authority to investigate election issues. Note: a 2nd call came in from another confidential carpenter who commented on the exact same issues. II informed this carpenter with same response Both callers will be notified after the II determines if he has the power to investigate.

**I.I. RESULT:**

**CASE NUMBER:** (18)-071-11/29/06