## Office of The Independent Investigator

NYC District Council of Carpenters & Joiners
17 Battery Place, Suite 1226
New York, NY 10004
212-889-3000 / Fax 212-889-3242

William P. Callahan, Esq
Independent Investigator

January 8, 2007

Hon. Charles S. Haight, Jr.
Senior United States District Judge
Southern District of New York
500 Pearl Street, Room 1940
New York, NY 10007

Re:  United States v. District Council of Carpenters
       90 Civ. 5722 (CSH)

Dear Judge Haight:

    This letter-report is in response to the Court's fax letter to the I.I. dated January 25, 2007 requesting by 2/9/07, a letter from the I.I., setting forth our comments to the two enclosed memoranda from Andrew Lee concerning two calls from Carpenter         . These comments encompass our findings and also enclosed is a fax letter from Mr. Rothman responding to my request to him for the D.C.'s comments as well.  I had forwarded to Mr. Rothman both of Mr. Lee's memos.

### I.I. Findings

    The legacy of the government's intervention and the court's supervision of the District Council of Carpenters will be the extent the Out of Work List (OWL) has been utilized to move out of work carpenters into the ranks of the employed and to place shop stewards on a fair and equitable base at job sites.  To this end the IRO and every II have been completely committed.   The current operation of the OWL by the District Council of Carpenters under the supervision of Scott Danielson, who also sits as a member of the Anti-Corruption Committee, has been beyond reproach. The operation of the OWL is a unifying source of pride both to the II and the DCC.

    The OWL is constructed to be blind to most outside influences and is especially blind to aspects which are lawfully protected such as color, creed or national origin. The OWL is not meant to be onerous to either the member or the employer.  The District Council of Carpenters OWL is designed and implemented to be user-friendly.  Any member can call the toll-free number from anywhere, even while on vacation or out of the area, and place themselves on the OWL.  The OWL is the exclusive list from which all stewards are dispatched to a job-site.  Mr.        is a beneficiary of this fairly-awarded steward dispatch in his present long-term assignment.

In any given month, 2500 to 2800 members are likely to be dispatched from the OWL by Mr. Danielson's staff. If the II were to cause the OWL supervisor to insure each and every member provide proof of their unemployment status with a faxed document or a written certification, the sheer process of collecting, reading, verifying, recording and retaining these superfluous records would be a horrific handicap to the current system of dispatch from the OWL, and unjustly prolong the amount of time a union carpenter sits on the OWL. It is a system that is fairly administered and working well in New York City.

An example of the burden unemployment verification would place on implementation of Mr. _____'s proposal; the I.I. finds that the 25 Day Rule and the benefit it gives a carpenter to find long term work when dispatched to a job of short duration would be undermined by the new burden of proof the II envisions these changes would require. Under the 25-day rule, a member retains his position on the OWL until he accumulates credit for 25-days of work. While indeed other models of job dispatch are utilized by other trade unions, in this instant matter, the OWL is designed for the specific needs of out of work carpenters. Additionally the OWL manages the diverse carpenter skill sets many members have acquired through training and practice. The dispatch of a carpenter with drywall skills from the OWL is of very little use to a contractor that needs furniture skills, or a job-specific skill that requires an OSHA certification. These are the types of skill sets a member sitting at position 1000 may use to elevate themselves to a higher place on the OWL for job placement.

The II asked counsel for the DCC to respond in kind to this matter and notes a similar defense of the OWL (See attached letter). Mr. Rothman notes that there is an enforcement provision built into the OWL system that now compares OWL records with benefit fund remittances and automatically notifies members that they will be removed from the OWL list. The II has found that the operation of the job placement list for Local 3 Electricians is significantly different than the Carpenters OWL. Foreman, stewards and workers are all dispatched from the list. There is also a separate benefit provision for their members collecting unemployment. As we understand the practice, union electricians contribute funds that can be withdrawn to supplement their unemployment compensation. A good many "licensed" electricians are both a contractor and a member and circumvent their OWL by contracting their own work to a greater extent than most other crafts except possibly for members of the plumbers union.

Carpenter skills are diverse; their work stands the test of time. In New York City, generations of carpenters secured with the benefits they earned, hold the hand of their children and their children's children, point to the skyline and proudly say they built that building. That is their legacy. To those of us who labored for their interests under the Consent Decree our time-tested legacy may very well be the OWL and the benefits it provided so many carpenters who were treated fairly and equitably by its stewardship. The I.I. has considered the comments of Mr. _____ and found they are not advantageous to the running of the OWL, but we respect his right to engage in any discussion that will benefit the members at large. Nevertheless, the II will make arrangements to interview Mr. _____ to cull from him ideas which may be fruitful in the future.

Respectfully submitted,

William P. Callahan, Esq.
Independent Investigator


cc:   Edward Scarvalone, AUSA, SDNY
      Gary Rothman, Esq
      Gary Silverman, Esq.