## Office of The Independent Investigator

NYC District Council of Carpenters & Joiners
17 Battery Place, Suite 1226
New York, NY 10004
212-889-3000 / Fax 212-889-3242

William P. Callahan
Independent Investigator

January 9, 2007

Hon. Charles S. Haight, Jr.
Senior United States District Judge
Southern District of New York
500 Pearl Street, Room 1940
New York, NY 10007

Re:  United States v. District Council of Carpenters
       90 Civ. 5722 (CSH)

Dear Judge Haight:

Please find enclosed our periodic reports thru the end of December 06 consisting of:

- All logged calls to Hotline – (open/closed & Master) Open 90 (updated 1-3-07)
  Total to date 535 Calls.

- Pie graph detailing number of calls by Case Category (Category Key enclosed)

- Open Case History Summaries

- Monthly I.I. Time Sheets

In addition, there are other on-going matters that will be of interest to the Court as set
forth below:

1

Other Matters

On January 2, 2005 former FBI Special Agent Bernard J. Kane joined the Office of the Independent Investigator as Chief Investigator.  Mr. Kane brings over thirty years investigative experience and has served as the FBI's case Agent for several court supervised union investigations including the International Brotherhood of Teamsters, and the Hotel Employee and Restaurant Employee International Union and has provided expert testimony in labor racketeering matters to Monitors and oversight agencies.  He also served as FBI case agent in successful RICO, labor racketeering, bid-rigging and ERISA investigations.    Prior thereto, Mr. Kane was a detective with the Philadelphia, P.D. for seven years.

On-Par.  The On-Par matter continues to head toward a successful resolution for the recovery of monies defrauded from the ultimate victim, the New York City District Council Benefit Funds.  The government's very successful use of the forfeiture provisions to provide restitution to the victims of this scheme to defraud may indeed permit the Union to recoup a substantial sum possibly in excess of $15 million into the benefit funds from the forfeited proceeds.

This investigation began during Mr. Mack's tenure and despite the best efforts of Mr. Mack and the dedicated efforts of many good carpenters and Union management including civil litigation and arbitration proceedings by the Union, On-Par through the activities of James Murray its founder, managed to run a number of job sites using cash workers.  Mr. Murray was subsequently indicted in the Southern District and he fled to Ireland.  He is listed as a fugitive, but left numerous realty properties in the District and due to the vigilance of the FBI and DOL case agents working the case along with the U.S. Attorney's Office, these properties were identified, seized and eventually sold. Counsel for the Union has followed this up with the filing of a Civil Fraud Complaint against On-Par in the Southern District and that matter is pending.  (A copy of the Indictment and the Civil Judgment are annexed hereto).

L&D Installers.  Our investigation of the L&D matter began with a couple of hot line calls alleging the shop steward was absent a lot and other alleged wrongdoing at a Manhattan site where L&D had a long term furniture installation contract.  After an intensive investigation by our Office and the assistance of court-ordered subpoenas issued by this Court, plus the taking of sworn testimony, numerous L&D records were obtained which became the central body of evidence showing a large scheme to defraud by keeping various workers off the shop steward reports and other alleged wrongdoing.

This matter was referred to the Office of Labor Racketeering of the DOL and U.S. Attorney's Office for the SDNY.  On September 28, 2006, the former shop steward was arrested on a federal complaint and that matter is currently pending as an active investigation by the U.S. Attorney's Office for the Southern District.  Following the opening of the I.I.'s investigation on L&D, Counsel for the Union (O'Dwyer & Bernstein) on behalf of the Benefits Funds, commenced a civil action in federal court

2

Southern District (06 Civ. 6138 (PKC)), to compel an audit of L&D and its affiliated companies and for a judgment for collection of the delinquent amounts that may be determined by such an audit. As a result of intense negotiations between Counsel and L&D principals, an agreement was entered into by the parties, wherein L&D agreed to fully cooperate with the District Council and its Funds to ascertain the amount of any and all delinquent contributions and to begin making monthly payments in a Payment Plan toward such amounts that may be determined to be due. In consideration thereof and with the consent of the I.I., the District Council agreed that L&D's business would continue uninterrupted by any Union action. L&D has continued to comply with the terms. This arrangement has benefited the Union and its Funds by creating continued employment for the members.

Investigation Plans. The I.P. Plans have been in effect for a while. Since being appointed in September 2005, my Office has found them to be a particularly effective tool with respect to closer scrutiny by Business Agents of certain contractor companies at specific job sites throughout the 5-Boros. But we also found they were not being properly acted upon. This issue was discussed with Mr. Peter Thomassen, President of the Union regarding the input or lack thereof of by the various Business Agents of the Locals. Mr. Thomassen thereupon took a pro-active stand and insisted to the I.I. that he expects complete cooperation and support to this program by the management of the various Locals. As a result, my Office agreed to supervise the IP program so that after a Local receives notice that a particular signatory company has been placed on the list (that decision is a joint effort by the I.I. and ACC Committee) that Local Business Manager is expected to carry out a series of job site visits according to the level of Response listed. (A copy of the Memos concerning this revised program are annexed hereto).

Unannounced Site Visit Program. Upon taking office as the I.I., I started a program of unannounced site visits by the I.I.'s office to various sites in the 5-Boros. The impetus for the visit may be a hotline call or other intelligence brought to the attention of the I.I. This program in conjunction with the above I.P. listings has shown itself to be extremely effective and has resulted in the I.I.'s Office finding first-hand, evidence of potential violations with carpenters or shop stewards as well as signatory company personnel or non-union workers on some sites visited. The unannounced visit we have found spreads like "wild fire" among the rank and file and has in my view a beneficial effect. It is reassuring to the hard-working carpenters or the hotline caller that someone is actually policing the sites and when done because of an anonymous hot line call, that is further reassurance that the Union and the I.I. take job-site corruption or wrongdoing seriously. The L&D hotline calls triggered at least two unannounced site visits resulting in substantial intelligence gained. The above two programs along with the intelligence gleaned from hot line calls, are intended to further reduce and detect job site corruption for the benefit of the whole union.

I have the pleasure to be able to advise the Court that across-the-board, the ACC Committee is taking their duties extremely seriously when it comes to matters of carpenter and signatory company violations and potential corruption. Accordingly, Mr.

Scott Danielson, the OWL Supervisor and his staff have recently charged 41-carpenters with violations of the Constitution based on forensic audits commenced by Greg Polvere, at the request of Gary Rothman, Esq, counsel for the D.C. in                       (See copy of Mr. Scott's 12/19/05 Memo annexed). This is in addition to over 100-carpenters being charged the last several weeks by Mr. Danielson in the On-Par matters. As far as my research shows, no other union in the country files as many charges against its members.

In Walter Mack's letter to the Court dated July 15, 2005 (copy annexed hereto) on page-2, Mr. Mack identifies several signatory contractors "paying cash" to workers out of non-disclosed bank accounts, etc. Among the contractors mentioned are Pyramid, Aurash, Pitcohn and Perimeter. This is to advise the Court that the attorneys with O'Dwyer & Bernstein, representing the Union, have just filed federal civil ERISA law suits in the SDNY against the above four firms alleging fraudulent failure to remit and pay benefit funds for the union workers in violation of the collective bargaining agreement. (See copy of Gary Silverman's letter to the I.I. annexed hereto). During the last several months, counsel for the Union have been involved in intensive litigation and arbitration activity on behalf of the Union and its Benefit Funds. They have been keeping the I.I.'s Office fully informed on these matters.

This past week, I had the pleasure of addressing a new class of Stewards and provided each with a copy of your order and our hot-line number and explained our role and duties and what is expected of them. The thrust of my message was to follow the Golden Rule, i.e., honesty in all matters. The class was attentive and I enjoyed the question and answer session.

In an interview the other evening with members of my investigative team and Scott Danielson, a former On-Par Steward admitted to falsifying steward reports. This matter will be addressed at the next Anti-Corruption Committee meeting and will require further investigation by our staff.

Summary

In summary, 2006 has been a very busy time for our Office and going forward into 2007, it is our intention to further tighten the grip on corruption and wrongdoing by the few signatory contractors and members that choose to avoid ethical and legal business practices. The temptation by workers to accept cash is indeed a problem and the companies that choose to embark on that practice will be caught. The I.I.'s Office and the ACC Committee with the full support of the Executive body of the Union, expect to follow a zero-tolerance policy regarding job-site wrongdoing in all its permutations. The great majority of contractors and members carry out their duties honestly and above board. It is only the few that do otherwise, but those few in the past, have done immense economic harm to the Union and the Benefit Funds. Shortly, additional findings

involving members are expected to be completed by my office and those findings will be forwarded to your Honor.

If the Court has any questions re these matters, we would be pleased to meet at the Court's convenience.

Respectfully submitted,

William P. Callahan, Esq
Independent Investigator

cc:  Edward Scarvalone
     Assistant U.S. Attorney, SDNY
     Gary Rothman / Gary Silverman, Esqs.
     O' Dwyer & Bernstein

5