# CONFIDENTIAL

## TRANSITION MEMORANDUM

TO:        William Callahan, Independent Investigator

CC:        Senior United States District Judge Charles S. Haight, Jr.

FROM:      Walter Mack

DATE:      October 26, 2005

RE:        Cipriani Banquet Hall

PROJECT:   200 Fifth Avenue, New York, New York

---

This was a matter under scrutiny by me, but it was superseded by other investigations that deserved, in my view, greater priority in the time that I had remaining.

This memorandum should serve as an outline of developments which may occasion you to undertake the further steps necessary to evaluate responsibility for the conduct on this job site.

All the depositions with their exhibits plus the documents produced through service of So Ordered subpoenas will be sent to you shortly for your review.

1. Hot Line File: 4-8-26-1450; at approximately 2:50 p.m. on August 26, 2004 an anonymous call was received which reported to the Hot Line that there were six or seven carpenters working at 200 Fifth Avenue in Manhattan without a shop steward and that this information had been provided to the Carpenters Union but still no shop steward had been dispatched to the job site. This information was telefaxed to the District Council promptly on August 26.

2. Despite my assigning this call the highest priority, no one from the District Council visited the job site for more than three weeks. No satisfactory answers have ever been provided to the questions: why it took so long to do so, when did Local 608 first receive notice of the job site and why this job, openly discernible from the street, in a high profile building, and having received already attention from Local 79 of the Mason Tenders Union, did not get checked out until I pressed Gary Rothman, Esq. repeatedly and regularly at ACC meetings for a response.

3. When Local Union 608 Business Agent          finally went to the job site on September 20, 2004, (although          and company had visited the site on September 17), he found clear evidence that the job had gone unreported and unsupervised for, at least, a month and that a union contractor and union carpenters had been doing work on the site without a

carpenter steward for the entire time.

4. Because I was dissatisfied with the District Council's investigation of this matter and because of my belief that the Cipriani organization had before been the beneficiary of lax union oversight, I obtained with the parties' consent, court-ordered subpoenas for records and testimony concerning the job site. Those materials plus interviews of participating persons will be in your possession to permit your determination as to whether you wish to proceed on the matter. I would be glad to assist you in making that determination. Please let me know.

5. Questions for consideration or resolution.

A. Why did this job start and continue below District Council radar despite notice and visibility?

B. Did Cipriani get special treatment on this job and, if so, how and why?

C. What cash was paid or attempted to be paid concerning this job, to whom and for what purposes?

D. How effectively was the grievance prosecuted against                    ? How effectively are grievances prosecuted by the District Council at anytime? This, as you may remember, is the essence of the Grievance Project which I hope you undertake.

E. Was Mr.              , the construction supervisor or owner's representative for Giuseppe Cipriani, perjurious in his testimony before me on January 20, 2005? Did he offer cash to workers or union officials on or about the site to avoid complying with union obligations or rules?

F. Should you conduct the sworn deposition of the                    , Inc. Project Manager,               , to gain further insight into why          was able to proceed as long as it did without compliance with union obligations? You should read the sworn testimony of principal             taken by me on March 7, 2005 to assist you in that decision. At the very least, Mr.         's testimony clarifies who and what was on the job site at particular times.

G. Is there significance to the facts that John Mingione (please reference Tri-Built Report and Willoughby testimony) of                    Inc, and             from Woodworking Interiors, Inc. appeared on the job site to perform services at the instance of Mr.       ?

6. Materials to be Transmitted:

A. Hot File 4-8-26-1450

B. Cipriani Subpoena Response

    C.        Subpoena Response

    D.  Deposition Transcripts

    E.  Reports of Interview

I would be glad to discuss any of these issues with you at your convenience.

Walter Mack

cc:    Gary Rothman, Esq. w/o enclosures
       AUSA Ed Scarvalone w/o enclosures