## **CONFIDENTIAL**

## **TRANSITION MEMORANDUM**

TO: William Callahan, Independent Investigator

CC: Senior United States District Judge Charles S. Haight, Jr.

FROM: Walter Mack

DATE: October 26, 2005

RE: Javits Center - Trade Show Procedures

---

I believe it important to the Court and its Independent Investigator to be informed about the operation of the job referral system as it relates to the Javits Center and other trade shows assignments because these referrals are, for the most part, made without reference to the Out-of-Work List. The only time that job assignments for the trade shows and Javits are made from the OWL are on the rare occasions when the trade show list is exhausted.

The District Council plays no role in most assignments to the Javits Center. Assignments are made directly by the staff in the office of the President of the Javits Center, who work from a list of Carpenters who have taken a required course and been vetted by the Javits Center staff and thereby obtained Javits Center badges. The list contains approximately 800 names of Journeymen and Apprentice Carpenters, who notify the Javits Center staff when they are available to work. The Javits Center contacts as many available Carpenters as are needed for a specific event or trade show.[1]

On those occasions when the Javits Center is unable to meet the demand for Carpenters from its own list of available Carpenters, a request for additional Carpenters is made to Richard Tucillo, the District Council business representative responsible for the operation of the trade show list and the assignment of Carpenters to trade show jobs. When this occurs, Mr. Tucillo assigns Carpenters from the Trade Show List. Mr. Tucillo has told me that in assigning the "overflow" Javits Center Carpenters from the Trade Show List, he dispatches trade show-qualified Carpenters based on who has been on the

---

[1] The Exhibitor Contractors who work in the Javits Center are permitted to employ a core group of Carpenters who were not assigned by Javits, but possess Javits badges.

list the longest and that once Carpenters receive a trade show assignment, they are moved to the bottom of the list. However, I have received numbers of complaints from Carpenters to the effect that the Javits Center repeatedly employs the same group of Carpenters and that contrary to what Mr. Tucillo has described to me, "overflow" Javits Center jobs are given to a favored few. Routinely, I have discovered that when a favored Carpenter is disciplined and/or loses a job, he manages to obtain employment at the Javits center or other trade show venue.

Because trade show work is often done at "off" hours (Carpenters' work days usually end at 2:30 p.m.) and on weekends, Javits Center workers often do this work at the end the day, after working another job. Working two jobs simultaneously is possible because the District Council takes the view that, contrary to the out-of-work rules incorporated in the Consent Decree, Carpenters may remain on the OWL while working at trade show jobs. Thus some Carpenters have two jobs while others remain idle on the OWL. I have found occasions where favored shop stewards are fully employed during the normal work day and also get hours at Javits at night or on the weekend. Furthermore, many of these fortunate carpenters continue their progression on the OWL while obtaining significant hours of employment at the Javits Center. Perhaps these practices are known and approved by the Court and are appropriate exceptions to the job referral rules but I have been unwilling to make that assumption.

There is no evidence to substantiate the union's claim that the "overflow" assignments are made fairly, based on length of time on the trade show list, because neither the Javits Center or the District Council retains paperwork reflecting dispatches to these jobs and no shop steward reports are created. Moreover, because the Carpenters who are badged by Javits are paid directly by Javits, whereas overflow Carpenters are paid by the contractor, benefit remittances are not a useful tool to corroborate employment at Javits.

In addition, Hot Line calls and informant information received by our II team surfaced allegations that:

1. Since 2000, when Javits began limited its hiring (*i.e.*, issuance of badges) to Apprentices rather than Journeymen, several Journeyman Carpenters have conspired with Exhibitor Contractors to secure employment at Javits.

2. Certain Journeyman Carpenters obtained "temporary badges" issued by Javits for exclusive employment by one contractor, usually for only one of the annual shows, but then continued to use those badges, without Javits approval, to maintain continuous employment at Javits.

  3. Journeyman Carpenters have represented themselves as Apprentices in order to be hired by Javits.

  4. Carpenters reportedly "buy" their position on an Exhibitor Contractor's core list of Javits employees (*see* footnote 1) by agreeing to work for the contractor on display shows outside of Javits for cash and without benefits.

  It had always been my intention to evaluate the fairness of the disconnection between the OWL and Javits trade show work and to look into the methodology used to assign Carpenters fortunate enough to work either at Javits or other trade shows, but other pressing issues have intervened. I failed to accomplish my plan to take testimony and obtain records on these subjects before my termination.

  The materials collected on these subjects will be forwarded to your office to enable your to decide whether you wish to undertake this project. As always, please call upon me if you wish to consider further my views on this subject.

            Walter Mack

cc: Gary Rothman, Esq.
   AUSA Ed Scarvalone