MEMO ENDORSED



RO is respectfully requested to respond to this letter by 11/23/11 (noon), if family. Parties should see also Court Order of 10/26/11.

SO ORDERED;
Date: 11/18/11
Richard M. Berman, U.S.D.J.

# BISCEGLIE & DE MARCO
Attorneys At Law
A Limited Liability Company
365 Rifle Camp Road
Woodland Park, NJ 07424
(973) 742-8900
Telecopier
(973) 742-7999

New York Office
c/o Schrader & Schoenberg, LLP
711 Third Avenue, Suite 1803
New York, NY 10017
Tel No. (212)682-8089

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/18/11

Reply to Woodland Park Office

November 17, 2011

RECEIVED
NOV 17 2011
CHAMBERS OF
RICHARD M. BERMAN
U.S.D.J

**Via Federal Express**
The Hon. Richard M. Berman
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 21B
New York, NY 10007-1312

Re:  United States vs. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America, et al.
Index No. 90 Civ. 5722 (RMB)

Dear Judge Berman:

We represent three members of the District Council -- George LaMontagne, John DeFalco, and Charles Lucas -- who as a result of a decision by Review Officer Dennis Walsh, recently affirmed by this Court, have been deprived of their right to run as candidates for Executive Secretary-Treasurer, President and Vice President respectively of the District Council in the elections which are now scheduled to take place before December 14, 2011. We are writing to advise Your Honor and the Review Officer of two matters in connection with the upcoming election which in our view require relief from the Review Officer and Your Honor.

## Background

In late Fall, 2011, Messrs. LaMontagne, DeFalco and Lucas -- who had been nominated by petitions signed by hundreds of their fellow members of the District Council -- appeared before the Review Officer for interviews in connection with their candidacies.

*The Hon. Richard M. Berman*
*November 17, 2011*
*Page 2 of 5*

On or about October 12, 2011, the Review Officer notified Messrs. LaMontagne, DeFalco and Lucas that he was disapproving their candidacies and he also notified numerous other individuals that he was disapproving their candidacies as well. In all, the Review Officer notified 16 of the 34 individuals who sought to participate in the election that he was disapproving their candidacies.

On or about October 17, 2011 an application was made to the Court seeking, on behalf of 8 individuals (including Messrs. LaMontagne, DeFalco and Lucas) (collectively, the "Complainants"), the reversal of the Review Officer's decision and the inclusion of such individuals on the ballot that was going to be distributed for the upcoming election.

The Review Officer opposed this application and, in connection with such opposition, he submitted to the Court a declaration (the "Walsh Declaration") which, among other things, stated that his opposition to these individuals was based on the interviews that his office had conducted with them. The Review Officer's Declaration further stated (on page 6 of the Walsh Declaration) that: "Each candidate interview as recorded. Should the Court desire, audio discs of each interview can be provided to the Court and the Parties."

On October 26, 2011, the Court issued its Decision and Order (the "October 26 Order") with respect to the above application. In its October 26 Order the Court denied Complainants' application, holding that the Review Officer's decision was "final and non-reviewable," and that even if that decision was reviewable, it was "supported by substantial evidence in record as a whole."

In determining that the Review Officer's decision was supported by substantial evidence, the Court relied on, and quoted verbatim, a memorandum by the Review Officer purporting to summarize the contents of his interviews with the Complainants including Messrs. LaMontagne, DeFalco and Lucas. The memorandum was the only evidence with respect to the contents of these interviews submitted by the Review Officer. No transcripts of the interviews were submitted, nor were any audio discs produced although, as noted above, the Review Officer offered to produce such discs if the Court requested same.

### The Petition to Allow Write-Ins

Believing themselves to have been effectively disenfranchised as a result of the Review Officer's decision, a large number of District Council members have signed a Petition to allow write-ins in the upcoming election. The text of the Petition is as follows:

> "I, the undersigned, do hereby state that I am a member in good standing of the New York City District Council of Carpenters ("NYCDCC") entitled to vote at the next election of officers of the NYCDCC; that my Local Union affiliation is truly stated opposite my signature hereto; that

> because the Review Officer has vetoed almost half of the candidates for election as officers of the NYCDCC, the members of the NYCDCC have been deprived of their right to participate in union democracy by voting for officers of their choice; and that I hereby request an opportunity to write in the name of an undesignated candidate or candidates for election to the offices of Executive Secretary Treasurer ("EST"), President and Vice President, in the election to be held by the submission of ballots on or before December 14, 2011."

We understand that in the two days that were available to collect signatures, and notwithstanding the fact that a major construction site (the World Trade Center) was shut down for one of those days because of inclement weather, 488 signatures were collected. Copies of the signed Petitions thus far received are enclosed herewith.

Significantly, at the same time signatures were being collected on the Petition, the Review Officer called a pre-election meeting for District Council members at the Javits Center (which upon information and belief the Review Officer had rented out at a cost of $50,000.00 and which had a seating capacity of 6,000). We understand that fewer than 100 people showed up at that meeting, which is a fraction of the hundreds of members who typically had attended such pre-election meetings in the past.

On November 11, 2011 I wrote to the Review Officer asking whether he would agree to allow write-ins in the upcoming election. On November 12, 2011 the Review Officer responded by stating that under Section Five of the Election Rules for this election, write-in votes would not be permitted.

We respectfully submit that it is clear both from the number of signatures that were collected on the Petition and from the meager showing at the Review Officer's pre-election meeting at the Javits Center, that many District Council members are discouraged and believe themselves to have been effectively disenfranchised as a result of the Review Officer's decision. Accordingly, if an election is held in which write-ins are not allowed, the bona fides of such election would be seriously in doubt. At the very least, such election would not be consistent with one of the purposes of the Consent Order, which was "to insure that the District Council and its constituent local unions shall be maintained and seen democratically and without unlawful influence from outside its membership."

Accordingly, we hereby request that the Review Officer reconsider his position that write-ins will not be allowed in the upcoming election; and, if the Review Officer persists in his position and write-ins are not allowed, Messrs. LaMontagne, DeFalco and Lucas reserve their right to challenge the result of any such election pursuant to Paragraph 11 of the Stipulation and Order.

### Request for Audio Discs of Interviews with the Review Officer

As noted above, the Review Officer's decisions to disapprove the candidacies of the Complainants including Messrs. LaMaontagne, DeFalco and Lucas, were purportedly based on interviews that the Review Officer conducted with such candidates, the results of which interviews were purportedly summarized in a memorandum that the Review Officer attached as an exhibit to his Declaration. Moreover, and also as noted above, this Court relied on such memorandum and in fact included the Review Officer's findings -- as summarized in the memorandum attached to the Walsh Declaration -- practically verbatim in its decision upholding the Review Officer's determination in this matter.

Based on our conversations with our clients, we believe that at least in one (1) case the actual content of these individuals' interviews may have been substantially different than what has been represented to the Court and would **not** support the Review Officer's determination with respect to these individuals.

Thus, for example, although the Review Officer's memorandum implies -- and clearly led the Court to believe -- that Mr. LaMontagne had falsely denied that he had consulted with Joseph Firth (a former official of Local 608, who had been removed for reasons having nothing to do with organized crime) with respect to Mr. LaMontagne's candidacy. In fact, however, Mr. LaMontagne specifically admitted in the affidavit that he submitted to this Court that he had informed the Review Officer that he had consulted with Mr. Firth (as he had every right to do); and Mr. LaMontagne believes that a review of the audio disc of his interview will substantiate this.

If, as we believe, any of the audio discs are inconsistent with the summaries of the interviews that the Review Officer offered to the Courts, we would intend to seek reconsideration of the Court's Decision and Order on the ground of newly discovered evidence with respect to any individual so affected; and on that basis we would ask the Court to reverse its determination, overrule Review Officer, and allow such individual to run for office.

We also believe that, separate and apart from new evidence, there may be a basis for seeking reconsideration of the Court's Decision and Order, on the ground that, in making its decision, the Court ignored or overlooked relevant facts and law. In this connection we would note, for example, that although the Court quoting the Stipulation and Order held that the Review Officer's decision was "final and nonreviewable," the Court did not give effect to the preceding and qualifying words, which require the Review Officer to make his determination "in light of the terms and objectives of the Consent Decree." Significantly, many of the reasons asserted by the Review Officer and cited by this Court as the basis for disqualifying these individuals -- for example, their alleged unfamiliarity with Bylaws, etc. -- have nothing to do with the "terms and objectives" of the Consent Decree and, in any event, are matters that could easily be dealt with, should such individuals be elected, between the time of their election and the time they took office.

*The Hon. Richard M. Berman*
*November 17, 2011*
*Page 5 of 5*

We respectfully submit that whether these parties' interviews actually were consistent with what has been represented to the Court, and whether such interviews actually supported the determinations made by the Review Officer and upheld by this Court, are issues which may be decisive, and should be promptly addressed by the Court.

Yesterday we requested copies of those audio discs (along with transcripts, if they exist) of the LaMontagne, DeFalco and Lucas interviews from the Review Officer. The Review Officer has now rejected that request. Although the Review Officer's counsel has now taken the position that one reason the discs will not be produced is because "details of the interviews may be pertinent to ongoing investigations," we would note that the Review Officer apparently was not concerned with any "ongoing investigation" when, in his submission to the Court, he represented that "[s]hould the Court desire, audio discs of each interview can be provided to the Court and the parties."

Accordingly, we are respectfully requesting that this Court issue an order requiring the Review Officer to promptly furnish the Court and us with the audio discs of the interviews of Messrs. LaMontagne, DeFalco and Lucas, together with any transcripts made with respect to such discs. In light of the imminence of the elections, and as discussed with Your Honor's law clerk, we are making this application by letter rather than by formal motion, and we thank the Court for its consideration of this matter.

                Respectfully submitted,

                **BISCEGLIE & DEMARCO, LLC**

                By: _____
                    Angelo R Bisceglie, Jr. (AB9251)

ARB/ds
cc:    Dennis M. Walsh, Esq. (by Fedex) (w/encs.)
        Bridget Rohde, Esq. (via e-mail) (w/o encs.)
Z:\share\share\Carpenters\Judge Berman Ltr 11-16-11.doc