UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

       Plaintiff,

 -against-

DISTRICT COUNCIL OF NEW YORK CITY
and VICINITY OF THE UNITED
BROTHERHOOD OF CARPENTERS and
JOINERS OF AMERICA, et al.,

       Defendants.
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/2/2013

90 Civ. 5722 (RMB)

**OPINION & ORDER**

  Having reviewed the record herein, including **(i)** the Consent Decree, entered into by the Government and the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("District Council"), and approved by United States District Judge Charles S. Haight on March 4, 1994, permanently enjoining all current and future members of the District Council from, among other things, "committing any act of racketeering activity, as defined in 18 U.S.C. § 1961" and "from knowingly associating with any member or associate of any La Cosa Nostra crime family or any other criminal group" (Consent Decree § 2(a), (b)); **(ii)** the parties' Stipulation and Order, approved by Judge Haight on June 2, 2010, appointing Dennis M. Walsh, Esq. as the review officer ("Walsh" or "RO") and vesting in his office broad powers, including the "authority to ensure compliance with the injunctions set forth in the Consent Decree," "the right, with authorization of the Court, to issue subpoenas for testimony or documents from any person or entity," and the ability to "apply to this Court at any time pursuant to the All Writs Act, 28 U.S.C. § 1651(a), for relief as against non-parties to the Consent Decree . . . who may be in a position to interfere with the implementation of the Consent Decree" (Stip. & Order ¶¶ 5(a), 5(d)(ii), 12(i)); **(iii)** the Fourth Interim Report of the Review

Officer ("Fourth Interim Report"), dated June 4, 2012, describing, among other things, the formation of a "new union attempting to represent workers in the jurisdiction of the District Council" named the Amalgamated Carpenters and Joiners Union ("Amalgamated") and contending that "Persons who are not parties to the Consent Decree or the Stipulation and Order may be importuning members to join this new union and thereby may be in a position to interfere with the implementation of the Consent Decree and the Stipulation and Order" and that investigation has revealed that "the one-time president of the Amalgamated Carpenters Union, Angelo Bisceglie ["Bisceglie"], received . . . calls from [prison] inmate Joseph Olivieri" and that "Joseph Olivieri, a senior operative of the Genovese family, is deeply involved in the affairs of the Amalgamated union" and Bisceglie "exchanged emails [with Olivieri] about the Amalgamted Union [that] illustrate Mr. Olivieri's deep involvement in, and control over, the Amalgamted union from inside a federal prison" (Fourth Interim Report of the Review Officer ("Fourth Rep."), Ex. 2., at 1; Fourth Rep., at 5, 7.); **(iv)** Bisceglie's letter to the Court, dated June 15, 2012, "in response to [the fourth] interim report and the misinformation Walsh continues to feed to the press containing false or fictionalized facts regarding the Amalgamated Carpenters and Joiners Union and myself" and citing five newspaper articles that "defame me by falsely connecting me with alleged mob involvement with past carpenters union officials" and "organized crime families." Bisceglie June Let., at 1. Bisceglie also contends that "[t]here was absolutely nothing improper about my visits [in prison] with [Joseph] Olivieri" and that Olivieri "is considered an expert in the field of labor/management relations, and created one of the most progressive and effective contractors association [sic] in the country," and "call[s] on the Court to have Mr. Walsh put his proofs on the record." Id. at 3, 6, 12; **(v)** Bridget M. Rhode's letter to the Court on behalf of the RO, dated June 28, 2012, stating "the clear authority for the RO's

[investigative] actions and reiterate[ing] the proof supporting the [RO's assertions about Bisceglie]" (RO June Let., at 1); **(vi)** Bisceglie's June 29, 2012 letter to the Court stating that the RO's "claim of jurisdiction is virtually unlimited" and that the RO "has yet to provide any proof to support his assertions that my visits to Mr. Olivieri were an attempt to perpetuate control by the Genovese family over the New York City construction industry"; **(vii)** the oral presentation of Mark Silberblatt, of counsel to the law firm of Bisceglie & Demarco, LLC, in Court on July 17, 2012, on behalf of Bisceglie, objecting to an "investigation of an individual [Bisceglie] and of an entity, Amalgamated Carpenters, that is [sic] not a party to the [S]tipulation [and Order]" and stating that "Mr. Walsh should be directed that an investigation of Amalgamated is not within his jurisdiction"; and Walsh's oral response describing his authority under the Stipulation and Order "to assist in enforcing" the Consent Decree and asserting that "[t]he consent decree . . . contains a permanent injunction against racketeering activity" and that "violations of the consent decree [have been] revealed by my investigation of Amalgamated" (Hr'g Tr., dated July 17, 2012, at 7, 10, 11); **(viii)** Bisceglie's July 30, 2012 letter to the Court noting that "we are not at this time taking issue with the RO's right to conduct an investigation" and requesting that the Court order "the RO promptly to furnish us with all evidence" that "the Genovese crime family or any organized crime family [has] been involved in any way with . . . Amalgamated," and instruct Walsh that "unless and until [the RO] seeks injunctive relief against Amalgamated, no allegations with respect to Amalgamated or [Bisceglie] should be included in any [interim] report," or made to the press or to the public generally (Bisceglie July Let., at 8–9); **(ix)** Rhode's August 6, 2012 letter to the Court "submit[ting] that Mr. Bisglie has not set forth any basis for the relief he seeks" (RO Aug. Let., at 1); and applicable legal authorities, **the Court hereby denies Bisceglie's application as follows:**

1)       Bisceglie—who is the co-founder and former president of, and currently counsel to, Amalgamated—asserts in substance that the RO has defamed both him and Amalgamated. (Bisceglie July Let., at 1) But neither Bisceglie nor Amalgamated is a party to the Consent Decree and, consequently, neither appears to have standing to litigate in this proceeding. United States v. Dist. Council of New York City, No. 90 Civ. 5722, 2012 WL 3822963, at *1 (S.D.N.Y. Aug. 27, 2012) ("[Movant] is not a party to this case and appears to have no standing under the Consent Decree."); see also Nebraska v. Wyoming, 515 U.S. 1, 21, 115 S. Ct. 1933, 1944 (1995) ("[T]he dissent nowhere explains how [a non-party to the litigation] would have standing to bring an action under . . . contracts to which it is not a party."); FW/PBS v. City of Dallas, 493 U.S. 215, 231, 110 S. Ct. 596, 608 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of the jurisdictional doctrines.") (citations omitted); Lee v. Bd. of Governors of the Fed. Reserve Sys., 118 F.3d 905, 910 (2d Cir. 1997) ("[T]he party invoking the authority of the court bears the burden of proof on the issue of standing."); United States v. Dist. Council of New York City, No. 90 Civ. 5722, 2007 WL 3196136, at *1 (S.D.N.Y. Oct. 26, 2007). Bisceglie has not demonstrated an actual or imminent "injury-in-fact" that is "concrete and particularized," a "causal connection between [such] injury and the conduct complained of," or that the injury will likely be "redressed by a favorable decision" in this forum.[1] Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (citation omitted); Lee, 118 F.3d at 910 (internal quotation marks omitted); see also United States v. Dist. Council of New York City, No. 90 Civ.

---

[1] The Court makes no determination as to whether Bisceglie or Amalgamated may have redress in a civil action for alleged defamation or any proceeding before the National Labor Relations Board pursuant to 29 U.S.C. §§ 151 et seq.

4

5722, 2012 WL 4056088, at *1 (S.D.N.Y. Sep. 12, 2012); United States v. District Council of New York City, No. 90 Civ. 5722, 2003 WL 2105292, at *3 (S.D.N.Y. May 7, 2003).

2) Even assuming, arguendo, that Bisceglie had standing and that Bisceglie's application were properly before this Court, it would likely be dismissed because Biceglie has not shown that the RO's investigation of Amalgamated is "completely outside his purview" or that the Court should "exercise its supervisory authority over the RO pursuant to 12(g) of the Stipulation and Order . . . so as to insure . . . that the [allegedly] unsubstantiated allegations made against Amalgamated and myself are adequately addressed and remedied." (Bisceglie June Let., at 1; Bisceglie July Let., at 1–2.) The RO unquestionably has broad "authority to ensure compliance with the injunctions set forth in the Consent Decree," including "committing any act of racketeering activity" and "knowingly associating with any member or associate of La Cosa Nostra." (RO June Let., at 2; Consent Decree § 2(a), (b).) The RO also persuasively notes that he "is charged with filing reports with the Court, apprising [the Court] and the public of his findings, progress, and setbacks on a regular basis," (RO Aug. Let., at 1), and that the Fourth Interim Report was integral to fulfilling this duty. See id.

The Stipulation and Order specifically authorizes the RO to investigate non-parties who may interfere with implementation of the Consent Decree. (Stip. & Order ¶¶ 12(g), (i) ("The Review Officer . . . may apply to the Court for any orders necessary or appropriate to implement the Consent Decree . . . including orders preventing non-parties from interfering with the implementation of the Consent Decree.") The RO's investigation of Bisceglie and Amalgamated was aimed at preventing them from interfering with the implementation of the Consent Decree and fell squarely within the RO's powers under Paragraph 12 of the Stipulation and Order.

The RO's investigation appears to have involved and examined contact(s) between Bisceglie and Joseph Olivieri, a former union official convicted of perjury in 2010 (following a trial) for "lying in a deposition (in this case) about his affiliation with the Genovese family." (Fourth Rep., at 5.) Bisceglie acknowledges that such contacts took place. (See Bisceglie June Let., at 6.) In his Fourth Interim Report, the RO noted that between September 2011 and April 2012 Bisceglie was in regular contact with Olivieri, including 42 telephone initiated by Olivieri from prison, five prison visits, and numerous emails discussing the day-to-day operations of Amalgamated. Id. at 6–8. The RO concluded that Olivieri "is deeply involved in the affairs of the Amalgamated union." Id. at 5.

3)     Bisceglie does not cite to any authority to support his contentions that "an investigation of Amalgamated is not within [the RO's] jurisdiction" and that the RO "disseminat[ed] . . . false and defamatory allegations . . . not required by any legitimate purposed and . . . intended solely to embarrass." (Hr'g Tr., dated July 17, 2012, at 10:15–16; Bisceglie July Let., at 9; Bisceglie July Let., at 10 ("[T]he RO is protected by at least limited immunity for his actions, so that recourse to other remedies—for example, a damages suit for defamation—are, as a practical matter, unavailable.").) Nor does Bisceglie identify and/or specify with particularity any alleged false statement disseminated by the RO. (Bisceglie June Let., at 2–5.)

Bisceglie refers to three sources in support of his claim, namely, the United States Attorneys' Manual ("USAM"), criminal cases regarding pre-trial publicity, and New York Rule of Professional Conduct 4.4 (and ABA Model Rule 4.4) ("Rule 4.4."). (Bisceglie Let., at 9–14.) None of these authorities is persuasive. As the RO notes, the USAM is inapplicable because the RO is not an officer or employee of the United States Attorney's Office. (RO Aug. Let., at 3.) His actions are governed by the Consent Decree and the Stipulation and Order. Id. The cases

cited by Bisceglie regarding pre-trial publicity are unpersuasive because, among other reasons, this proceeding is not criminal in nature, and, by definition, there is no scheduled trial. The RO is obligated to report his findings to the Court and public on a regular basis, which he did in the Fourth Interim Report. (RO Aug. Let., at 3.)

Rule 4.4, which states that a lawyer "shall not use means that have no substantial purpose other than to embarrass or harm a third person," is also unpersuasive. New York Rules of Professional Conduct R. 4.4 (2010). The RO has stated publicly that the purpose behind his investigation of Amalgamated was that "Persons who are not parties to the Consent Decree or the Stipulation and Order may be importuning members to join [Amalgamated] and thereby may be in a position to interfere with the implementation of the Consent Decree and the Stipulation and Order." (Fourth Rep., at 4.) (citation omitted); (see also RO June Let., at 23 ("If followed to [Bisceglie's] absurd conclusion, one would be asked to accept the premise that some 20,000 current members of the District Council could simply disaffiliate themselves from the District Council one day and return to their same carpentry, dock building and other jobs the next, represented by another union that is not subject to court orders and thus susceptible to the will and influence of racketeers.").)

Dated: New York, New York  
January 2, 2012

_Richard M. Berman_  
**RICHARD M. BERMAN, U.S.D.J.**