USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/5/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Plaintiff,　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　　90 Civ. 5722 (RMB)
　　　-against-　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　　**OPINION & ORDER**
DISTRICT COUNCIL OF NEW YORK CITY　　　　 :
and VICINITY OF THE UNITED　　　　　　　　:
BROTHERHOOD OF CARPENTERS and　　　　　 :
JOINERS OF AMERICA, et al.,　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　Defendants.　　　　　　　　:
------------------------------------------------------------X

　　　　Having reviewed the record herein, including **(i)** the Stipulation and Order, approved by Judge Charles S. Haight Jr. on June 2, 2010, appointing Dennis M. Walsh, Esq. as the review officer ("Walsh" or "RO") (Stip. & Order ¶ 3); **(ii)** the January 11, 2013 Notice of Veto by Walsh, (Letter from RO to Hon. Richard M. Berman, dated Feb. 19, 2013 ("RO Feb. Let."), Ex. A at 1–2); **(iii)** Daniel Franco's ("Franco") February 8, 2013 letter "petition[ing] the Court to vacate Review Officer Dennis Walsh's veto" because "the RO's formal and favorable review of any conduct I have submitted charges against, in particular the hiring [by Executive Secretary-Treasurer ("EST") Michael Bilello ("Bilello")] of [President William] Lebo [("Lebo")] as Assistant to the EST, is flawed, contradictory and/or inconsistent with the UBC Constitution, the NYCDCC Bylaws, the NYCDCC Personnel Policy, and/or the Stipulation and Order, and/or the Consent Decree," (Letter from Franco to Hon. Richard M. Berman, dated Feb. 8, 2013 ("Franco Feb. Let."), at 2); **(iv)** Walsh's February 19, 2013 response letter stating that "there is no basis for vacating the veto because the RO acted within the scope of his authority [and approved the hiring and compensation of Lebo] and rendered a decision that was not arbitrary or capricious and that was based on substantial evidence" (RO Feb. Let. at 1); **(v)** the Court's March 1, 2013

Order requesting the parties to address and provide legal authority for "Franco's legal ability to present disciplinary charges," "[t]he Trial Committee's role in these matters," and "[t]he authority of the RO to veto disciplinary charges filed with the Trial Committee prior to Trial Committee Review," (Order, dated March 01, 2013); **(vi)** Franco's March 14, 2013 letter stating, among other things, that "I do not recall having known that the RO had conducted a 'favorable formal review' [of the Lebo delegation] until my reading of his veto" and acknowledging that as to "[t]he authority of the RO to veto disciplinary charges filed with the Trial Committee prior to any Trial Committee Review . . . the RO apparently has the authority under the Stipulation and Order," (Letter from Franco to Hon. Richard M. Berman, dated Mar. 14, 2013 ("Franco Mar. Let."), at 13); **(vii)** the RO's March 22, 2013 letter acknowledging, among other things, that "[a]s a union member, Mr. Franco has the right to bring charges before the District Council's Trial Committee" and confirming that "the Review Officer reviewed and had no issue with the expenditure for [Lebo's] salar[y] or the delegation of authority to [him], having been fully apprised of the specific duties [he] would perform" and noting that "[t]he formal delegation of authority [by Billelo] to Mr. Lebo, was authorized by the Bylaws, [and] was approved by the Delegate Body at its January 11, 2012 meeting," (Letter from RO to Hon. Richard M. Berman, dated Mar. 22, 2013 ("RO Mar. Let."), at ); **(viii)** the transcript of the oral presentations held on April 4, 2013, (Hr'g Tr., dated April 3, 2013 ("4/3/13 Tr.")); and applicable legal authorities, **the Court hereby denies Franco's petition as follows:[1]**

1)      The Court notes at the outset that Franco confirmed on April 3, 2013 that he does not seek "to have [Bilello or Lebo] removed" but seeks only "to have at delegate meetings and other such meetings of council a parliamentarian [and] a court reporter because the meeting

---

[1] Any issues not specifically addressed herein were reviewed on the merits and rejected.

minutes have been atrocious from the beginning." (4/4/13 Hr'g Tr. at 11:20–24; see also Franco Mar. Let. at 9 ("[T]he only remedies I intended to seek were requiring 1) at each delegate meeting a parliamentarian for assist[ing] in adhering to the rules and a professional court reporter of the meeting minutes, and 2) parliamentarian/Robert's Rules of Order, NYCDCC Bylaws, and UBC Constitution classes for the NYCDCC officers, Executive Committee members, and delegates.").) Franco appears to acknowledge that the RO has the authority under the Stipulation and Order to "veto disciplinary charges filed with the Trial Committee prior to any Trial Committee Review," as happened here. (Franco Mar. Let. at 13.) It is clear that an application for sanctions against Bilello or any other members of the District Council is not part of Franco's petition. (4/3/13 Hr'g Tr. at 12:18–20 ("If I was to win my charges against Bilello, Lebo, I wasn't going to move to have them removed.").)

2) In light of Franco's above described statements as to the RO's authority to veto his charges, it is unclear whether Franco's petition presents an actionable controversy. See Lillbask v. State of Conn. Dep't of Educ., 397 F.3d 77, 84 (2d Cir. 2005) ("When the issues in dispute between the parties are no longer 'live', a case becomes moot.") (citation omitted); W.G. v. Senatore; 18 F.3d 60, 63 (2d Cir. 1994). Assuming, arguendo, that Franco were presenting an actionable challenge, the Court would likely deny his application on the grounds that the Lebo delegation/hiring was in accordance with the NYCDCC Bylaws.

Section 10N of the District Council Bylaws provides:

> The Executive Secretary-Treasurer may also, when he deems it necessary and subject to the approval of the Executive Committee, delegate in writing (such writing to contain a detailed description of the delegation and to have been submitted to the Executive Committee prior to approval) any of his authority to a District Council employee or Officer with the requisite skill, experience and training to efficiently and completely perform the assignment. Compensation for services rendered in this regard shall be reasonable and appropriate and consistent with the

3

> compensation for equivalent work performed by District Council employees and subject to approval of the Council Delegate Body.

(Franco Mar. Let. at 4; RO Mar. Let. at 4.) Bilello's actions, as confirmed by the RO in his Notice of Veto and in his submissions to the Court, appear at the very least to have been substantially in accordance with Section 10N. (See RO Feb. Let., Ex. A at 1; RO Mar. Let. at 2.) That is, District Council Executive Committee and Delegate Body meetings, at which the RO was present, were convened on January 11, 2012 to install the newly elected officers, including Bilello as EST and Lebo as President. (RO Mar. Let. at 2.) In advance of those meetings, Bilello "provided the Review Officer with a typed written list of the authority he sought to delegate to Mr. Lebo, and the Review Officer reviewed the list and discussed it with Mr. Bilello." Id. On January 11, 2012, Bilello proposed the delegation of authority to Lebo to the Executive Committee and read to them the duties to be delegated that were listed in his submission to the RO. He also stated the compensation proposed to be paid to Lebo, which was an annual salary of approximately $185,000. Id. A motion was made and seconded before the Executive Committee to recommend approval of the delegation of authority to Lebo. Id. Later that day, at the Delegate Body meeting, Bilello presented the Lebo matter to the delegates and again recited the duties to be delegated to Lebo and the compensation that Lebo would receive. Id. After discussion, the delegates voted in favor of the delegation. Id. at 3. As noted, the RO attended both the Executive Committee and the Delegate Body meetings. Id. at 4.[2]

---

[2] The RO notes that Bilello "followed a similar process leading up to the approval of a delegation of authority to [Vice President] Michael Cavanaugh." (RO Mar. Let. at 3.) Cavanaugh was to act "as a liason . . . at a salary of [approximately] $174,081." (RO Mar. Let. at 3.) Franco did not discuss the delegation to Cavanaugh in either his letter submissions to the Court or in his oral presentation on April 3, 2013. (See Franco Feb. Let.; Franco Mar. Let.; 4/4/13 Hr'g Tr.).

4

3) Assuming, arguendo, that it were necessary for the Court to adjudicate the delegation issue (in light of Franco's comments at the April 3, 2013 hearing, see 4/3/13 Hr'g Tr. at 11:20–24, 12:18–20), the Court would likely find that the delegation was proper. (See NYCDCC Bylaws § 10N.) Franco's claims that Bilello's appointment/delegation violated UBC Constitution Section 51A(6) and "defrauded" the UBC, and that Bilello violated various other provisions of the District Council Bylaws are unpersuasive. (See RO Mar. Let. at 1 n.2; see also Bellsouth Telecomm. Inc. v. W.R. Grace & Co.-Conn., 77 F.3d 603, 615 (2d Cir. 1996) ("It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts.").) Bilello utilized the authority granted to him under Section 10(N) of the District Council Bylaws, along with the approval of the RO, the Executive Committee, and the Delegate Body, to effect the delegation of enumerated powers to Lebo. (See Franco Mar. Let. at 4; RO Mar. Let. at 4.) While the EST and other union officials, going forward, would be best served if they prepared thorough and precise documentation of such matters, there is no evidence of infraction in this case. (See, e.g., NYCDCC Bylaw §§ 10(h), 10(N), 12(D); NYCDCC Personnel Policy; UBC Const. §§ 51.A(4), (6).)

4) Similarly, assuming, arguendo, that Franco's petition pursued a remedy against Billelo and/ or Lebo, the Court would likely find that Franco's various claims regarding the delegation to Lebo are conclusory and are not substantiated. (See, e.g., Franco Mar. Let. at 4, 5, 6 ("it is unreasonable to think that any one person could possibly perform all the duties summarily listed [on Bilello's submission to the RO]"; "The hiring of Lebo was based on cronyism"; "the hiring of Lebo as an Assistant to the EST was a waste of the membership's money").) The RO has authority under the Stipulation and Order to "review all expenditures and investments" and to review "all proposed appointments to office or employment." (Stip. &

Order ¶ 5(b)(i)(1), (3).) He was authorized to approve the delegation to Lebo and did so. Id.; see also One Commc'n Corp. v. JP Morgan SBIC LLC, 381 Fed. App'x 75, 78 (2d Cir. 2010) ("Allegations that are conclusory or unsupported by factual assertions are insufficient.") (citation omitted).

5) At the same time, Franco's petition and his oral presentation do suggest several very helpful areas for improvement in union processes, as confirmed by the RO and the District Council on April 3, 2013. (See 4/3/13 Hr'g Tr. at 33:44–17 ("MR. WALSH: I'm grateful for Mr. Franco's suggestions. They are consistent with things that I've been thinking. And I share his and all like-minded members' concern about the progress of democracy in the delegate body.").)

First, the RO and the District Council have stated their intention to analyze and propose ways in which to revitalize and reorganize the Trial Committee process. (See 4/3/13 Hr'g Tr. at 27:24–28:5 ("MR. WALSH: No. 1, I am not fully content with [the current] version of the trial committee. THE COURT: You mean -- MR. WALSH: This new one that resulted in my decision that the district council should have an opportunity to use the UBC's own process with the caveat that they must have an independent outside trial chairman.").) This should be a top priority, the goal being to establish a fair, transparent, and expeditious Trial Committee process.[3] The RO and the District Council will no doubt consider, among other things, whether it is prudent for both the Executive Committee and the Delegate Body to play a role in the Trial

---

[3] Such review may well also consider how and when the RO may participate in any individual Trial Committee proceeding. (See 4/4/13 Hr'g Tr. at 26:5–12 ("THE COURT: So what I'm trying to figure out though . . . is when is the right time and what is the mechanism for you to intervene and is it better to wait until after the executive committee -- what if the executive committee, for example, decided not to file this with the trial committee for the same reasons that you might have suggested because you had approved something. So that's what I'm trying to get at: When do you step in?").)

6

Committee process (and, if so, what that role may be); appropriate recusal guidelines relating to actual and/or perceived conflicts of interest; procedural time frames; record keeping; and how to ensure that Trial Committee rulings are in accord with the Stipulation and Order, District Council rules and regulations, and applicable law. See id. at 28:16–25 ("MR. WALSH: With respect to if the executive committee continues to play a role, they I think were trying to perform their job within the expectations of the UBC Constitution Section 52. It presents yet another conflict though with the situation that we face in New York with the consent decree and the stipulation and order where there are numerous exceptions to the UBC standard nationwide. And the executive committee and the UBC constitution is ill-equipped to deal with situations like the one that was presented by Mr. Franco's charges.").

Second, the RO and the District Council have indicated their intention to analyze and propose measures regarding (more detailed) documentation of their respective actions and decisions, particularly in matters of significance such as, for example, the hiring/delegation of Lebo. (See 4/3/13 Hr'g Tr. at 19:7–10 ("MR. WALSH: It has not been my practice because of the volume, and I certainly grant that there are matters of greater import that perhaps might be better served by an actual written document saying it."); RO Mar. Let. at 4 n.5 ("[T]he Review process . . . does not involve the creation of a favorable review document."); Mar. Franco Let. at 12.)

Third, the RO and the District Council have indicated their intention to analyze and propose measures regarding Franco's suggestion that there be a parliamentarian (and/or attorney) available in an official capacity at Executive Committee and Delegate Body meetings to assist with legal and procedural matters. (4/3/13 Hr'g Tr. at 33:25–34:13 ("MR. WALSH: Delegates need to inform themselves about the UBC constitution, which has very specific orders of

procedure in the back of the pamphlet, and when they don't cover an issue, Robert's Rules apply. So if there was someone who could be retained to serve as a parliamentarian, I think that would be fine. THE COURT: And who would do that? MR. WALSH: I believe there are actually people who are certified parliamentarians who are experts in Robert's Rules. But, again, Robert's Rules kick in after the UBC constitution fails to address a particular point. THE COURT: It almost appears it's really more of a counsel than a parliamentarian or it's both? MR. WALSH: Well, they're certainly benefiting, I think, from counsel being present"); 4/3/13 Hr'g Tr. at 36:2–8 (THE COURT: So there's a recommendation just made. It sounds like a good one. MR. DUFFEY: Yes. I definitely absorbed that recommendation, and we will discuss it with our client and respond to the review officer.").) It would certainly appear that a parliamentarian and/or attorney would be able to assist the Executive Committee and the Delegates in keeping meetings orderly and complying with NYCDCC Bylaws, the UBC Constitution, the Stipulation and Order, and any other applicable laws. See id.

Fourth, the RO acknowledged that sometimes "the minutes are very bad," and that he has taken Franco's suggestion for a court reporter/stenographer to record meetings under advisement. (4/3/13 Hr'g Tr. at 33:14–17 ("MR. WALSH: The minutes are very bad. I've already spoken to the district council leadership once about the minutes. We just went through an issue where my team had to go back into the recording to find what was actually the substance of a motion when in fact the minutes reflected something which was absolutely contrary to what was actually said at the meeting. And this is something that has to be done. These meetings have got to get better.").) Improvement in record keeping would seem also to be a matter of some urgency.

Dated: New York, New York
April 5, 2013

_RMB_
**RICHARD M. BERMAN, U.S.D.J.**