UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

               Plaintiff,

      -against-

DISTRICT COUNCIL OF NEW YORK CITY
and VICINITY OF THE UNITED
BROTHERHOOD OF CARPENTERS and
JOINERS OF AMERICA, et al.,

               Defendants.
-------------------------------------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: |
| DATE FILED: 9/10/14 |

90 Civ. 5722 (RMB)

**OPINION & ORDER**

    Having reviewed the record herein, including, without limitation, the following: (i) the

Consent Decree, entered into by the Government and the District Council of New York City and

Vicinity of the United Brotherhood of Carpenters and Joiners of America ("District Council") in

1994 (Consent Decree, dated March 4, 1994, at 1); (ii) the Stipulation and Order appointing

Dennis M. Walsh, Esq. as the review officer ("RO") of the District Council (Stipulation and

Order, dated June 2, 2010 ("2010 Stipulation and Order"), at 3); (iii) the letter applications of

Patrick Nee and Levy Messinetti, dated July 23, 2012 and July 24, 2012, respectively, asking the

Court to vacate the RO's June 26, 2012 Notice of Veto which removed them from their positions

as Delegates and Officers of Local Union 157 of the District Council ("Local 157") for alleged

misconduct[1] (see Ltr. from Patrick Nee to Hon. Richard M. Berman, dated July 23, 2012 (Dkt. #

---

[1] The RO's Notice of Veto determined that, on April 28, 2012, Messinetti, Nee, and Gauntlett
Holness "engaged in concerted activity [improperly] to direct payment of the funds of Local
Union 157 to Holness and [Peter] Corrigan in payment for moving the books, records and other
property" of Local 157 to new office space. (Notice of Veto, dated June 26, 2012, ¶ 1.) The
Notice of Veto also stated that Nee and Messinetti "waste[d]" Local 157 assets by printing and
mailing an election notice for a nonexistent "alternate delegate" position. (Id. at 3.) Nee and
Messinetti's union membership and employment rights were not affected by the June 26, 2012
Notice of Veto.

1174 at 2);  Ltr. from Levy Messinetti to Hon. Richard M. Berman, dated July 24, 2012 (Dkt. #

1193)); **(iv)** the Court's Decision and Order, dated October 23, 2012, finding that the RO's June

26, 2012 veto of Nee and Messinetti (and Gauntlett Holness) was "not arbitrary or capricious"

(which is the applicable standard of review) and did not exceed the RO's authority under the

2010 Stipulation and Order (Decision & Order, dated Oct. 23, 2012 ("10/23/12 Decision"), at 9,

13); **(v)** the Second Circuit's July 23, 2014 summary order determining that "an ambiguity

exists" with respect to the RO's veto power under Paragraph 5.b. of the 2010 Stipulation and

Order, vacating the Court's October 23, 2012 Decision and Order, and remanding the case to the

Court to "defin[e] the RO's authority under Paragraph 5(b) . . . in the first instance" by

considering, among other things, "the circumstances surrounding the formation of the

[Stipulation and Order]" (Summary Order, dated July 23, 2014, at 7–8); **(vi)** the Court's July 25,

2014 Order requesting briefing from the parties regarding "[w]hether, as a matter of jurisdiction,

the issues raised by the applications of Mssrs. Nee and Messinetti . . . remain ripe for

consideration" and whether the Review Officer's June 26,2012 Notice of Veto was within the

Review Officer's authority under the June 2010 Stipulation and Order; **(vii)** the letter to this

Court from RO Walsh, dated August 25, 2014, arguing that the applications by Mssrs. Nee and

Messinetti challenging the Review Officer's veto of their positions are "moot" because "[t]he

RO's veto did not prevent either Mr. Nee or Mr. Messinetti from running for any future office

and, indeed, they both later ran for office and were elected;" and that in vetoing Messrs. Nee and

Messinetti, the Review Officer exercised authority granted by the terms of paragraph 5.b of the

Stipulation and Order and was "consistent with the intent of the parties to the Stipulation and

Order" (Ltr. from Bridget Rohde to Hon. Richard M. Berman, dated Aug. 25, 2014, at 1–2);

**(viii)** the letter to this Court from the Government (i.e., one of the two parties to the 2010

Stipulation and Order), dated August 25, 2014, enclosing an affidavit from AUSA Benjamin H. Torrance, Esq. and stating that "the issues are moot," and that RO Walsh "had the authority to issue the veto" (Ltr. from Benjamin H. Torrance to Hon. Richard M. Berman, dated Aug. 25, 2014 ("Government Letter"), at 1); **(ix)**  the letter to this Court from the District Council (i.e., the second of the two parties to the 2010 Stipulation and Order), dated September 10, 2014, stating that "the District Council agrees with the government that this matter is moot" and that "a course of conduct . . . suggests that the parties [to the 2010 Stipulation and Order] believed that the veto power of the Review Officer extended to removal of individuals from elected office" (Ltr. from Barbara S. Jones to Hon. Richard M. Berman, dated Sep. 10, 2014 ("District Council Letter"), at 1–2); **(x)** the brief and exhibits submitted by Mssrs. Nee and Messinetti, dated August 25, 2014, arguing that the RO vetoes are not moot because "the Review Officer's action impacts on our future rights in our union" and that "the Review Officer does not have the authority to remove elected officials." (Brief of Patrick Nee and Levy Messinetti in Response to Court's Request for Submissions, dated Aug. 25, 2014 ("Nee Br."), at 3–4); and **(xi)** applicable legal authorities, **the Court concludes as follows:**

1.      The July 23, 2012 and July 24, 2012 applications of Mssrs. Nee and Messinetti to vacate the RO's June 26, 2012 Notice of Veto no longer present a "case or controversy." United States v. Mercurris, 192 F.3d 290, 293 (2d Cir.1999).  "In general a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1982).  "Under Article III of the U.S. Constitution, when a case becomes moot, the federal courts lack subject matter jurisdiction over the action." Doyle v. Midland Credit Mgmt., Inc., 722 F.3d 78, 80 (2d Cir. 2013) (internal punctuation omitted).

2.      There is no "case or controversy" because, as acknowledged by Mssrs. Nee and

Messinetti, the terms of Nee and Messinetti's vetoed service as union delegates and officers have

expired (and did so during the pendency of their appeal to the Second Circuit).  (Nee Br. at 3

("[O]ur terms expired while this action was still pending in the courts . . . .").) See ABC, Inc. v.

Stewart, 360 F.3d 90, 97 (2d Cir. 2004) ("[U]nder the mootness doctrine, if an event occurs

while a case is pending on appeal that makes it impossible for the court to grant any effectual

relief whatever to a prevailing party, we must dismiss the case, rather than issue an advisory

opinion." (internal quotation marks omitted)); see also Maldonado v. Flynn, 597 F.2d 789, 797 n.

10 (2d Cir. 1979) ("The terms of those elected in 1975 have expired, rendering moot the question

of the validity of the election . . . ."); Robinson v. New York, 550 F. App'x. 63, 64 (2d Cir.

2014); Associated Gen. Contractors, Inc. v. City of New Haven, 41 F.3d 62, 65–66 (2d Cir.

1994).

3.      Nor do Nee and Messinetti present "disputes capable of repetition, yet evading review."

FEC v. Wisconsin Right to Life, 551 U.S. 449, 462 (2007).  On June 19, 2013, less than 12

months from the RO's veto and while the appeal in this matter was pending, both Nee and

Messinetti ran for—and were elected to—new terms as Local 157 delegates.[2]  (Decl. of Dennis

M. Walsh, dated Aug. 12, 2014 (Dkt. # 1553-1), ¶ 9.)  And, on June 19, 2014—also while their

appeal was pending—Nee and Messinetti each ran for new terms as officers of Local 157.

Messinetti won and was elected to the position of trustee of Local 157; Nee lost the election for

the position of financial secretary.  (Id.)  The RO did not prevent either Nee or Messinetti from

seeking elected office, although on other occasions the RO exercised his (undisputed) authority

---

[2] Nee and Messinetti filed their Notice of Appeal of the Court's October 23, 2012 Decision and
Order on November 20, 2012.

under the 2010 Stipulation and Order to approve candidates for union office. (See 2010 Stipulation and Order ¶ 5.k.iv.) Nor did the RO seek to remove (veto) either Nee or Messinetti from their 2013 and 2014 elected positions. (Decl. of Dennis M. Walsh, dated Aug. 12, 2014, ¶ 9.) The Court finds that there is no "reasonable expectation" that Nee and Messinetti "will be subject to the same action again." FEC v. Wisconsin Right to Life, 551 U.S. at 462.[3]

4.      Even assuming, arguendo, that Mssrs. Nee and Messinetti's July 2012 applications were not moot, the Court would find that the RO's June 2012 veto was within the authority granted to him under paragraph 5.b. of the 2010 Stipulation and Order and that his actions were neither arbitrary nor capricious and were supported by substantial evidence.[4]  The available extrinsic evidence, including the historical context surrounding the Consent Decree and the 2010 Stipulation and Order, as well as the interpretation and understanding of paragraph 5.b. advanced by both parties to the 2010 Stipulation and Order (i.e., the District Council and the Government), confirms unequivocally the Court's conclusion that the RO had the authority to remove District Council officers Nee and Messinetti from their positions. (See Decl. of Benjamin H. Torrance, dated Aug. 25, 2014 (Dkt. # 1554-1), ¶ 5 (**"It was the government's understanding**

---

[3] RO Walsh has expressed his intention to end his term on or before December 31, 2014. (Ltr. from Dennis Walsh to Hon. Richard M. Berman, dated Aug. 6, 2014, at 3.) And, there is currently pending before the Court the District Council and the Government's Joint Proposed Stipulation and Order Regarding the Appointment of an Independent Monitor. (See Ex. 1 to Joint Memorandum, dated May 27, 2014 (Dkt. # 1512-1).)

[4] Paragraph 11 of the 2010 Stipulation and Order provides that, in reviewing a decision of RO, "the Court will apply the same standard of review applicable to review of final agency action under the Administrative Procedure Act." (2010 Stipulation and Order ¶ 11.) Under this standard, the RO's conclusions of law will be upheld unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." United States v. Dist. Council of New York City, 941 F. Supp. 349, 362 (S.D.N.Y. 1996). The RO's findings of fact "are entitled to affirmance on review if they are reasonable and supported by substantial evidence in the record as a whole" and may be "set aside only if they are 'unsupported by substantial evidence.'" Id.

**throughout this negotiation [of the 2010 Stipulation and Order] that the power to dismiss current officeholders of the District Council . . . remained a part of the parties' agreement, and no one ever contradicted that understanding."** (emphasis added).)

5.      The Court has (re)reviewed the long, disturbing, and very public record of union mismanagement and corruption which gave rise to the Consent Decree and the 2010 Stipulation and Order. The 1994 Consent Decree "came about as a result of the pervasive corruption historically in the district council." (Hearing Tr., dated March 10, 2014, at 37:5–13; see Consent Decree, dated March 4, 1994, at 2). Similarly, the "whereas" clauses of the 2010 Stipulation and Order memorialize the fact that its purpose was to combat the continued presence of corruption in the District Council. (See 2010 Stipulation and Order at 2 ("WHEREAS, in recent years certain persons have been convicted of criminal offenses relating to the District Council and the Benefit Funds [(the entities charged with administering the pension, health care, and other benefit plans of active and retired District Council carpenters)]. . . WHEREAS, on August 5, 2009, an indictment by a grand jury in this district was unsealed, charging various acts of racketeering against certain employees and representatives of the District Council, including Michael Forde, Executive Secretary-Treasurer and a trustee of the Benefit Funds; John Greaney, Business Manager of Local Union 608, a constituent local of the District Council, and a trustee of the Benefit Funds; Brian Hayes, Business Representative for Local Union 608 and Local 608 Executive Board Trustee; and Shop Stewards Michael Brennan, Brian Carson, Joseph Ruocco, John Stamberger, and Michael Vivenzio, along with Joseph Olivieri, a contractor association representative and a trustee of the Benefit Funds, and Finbar O'Neill, a contractor").)

The 2010 Stipulation and Order "was created in response to the revelation of the serious corrupt practices . . . which continued to exist [at the District Council and notwithstanding the

Consent Decree] . . . involving certain contractors and union officers and representatives."
(Hearing Tr., dated March 10, 2014, at 37:5–13.) This Court's predecessor in overseeing this
case, District Judge Charles S. Haight, stated at the time he approved the 2010 Stipulation and
Order that "[i]t is entirely clear that increased efforts must be made to cleanse the District
Council and its constituent locals of corruption and dishonest practices. **The appointment of a
Court officer with increased powers is vital to that purpose.**" (Memorandum, dated June 2,
2010 (Dkt. # 990), at 6 (emphasis added).)

6.      More recently, this Court, which assumed responsibility for this case less than one month
after Judge Haight approved the 2010 Stipulation and Order, has underscored the need for
continued vigilance in light of the District Council's history of corruption. (Hearing Tr., dated
March 10, 2014, at 36:15–37:20 ("The oversight over the affairs of the district council, as has
been eloquently stated by the government today, came about as a result of the pervasive
corruption historically in the district council and that gave rise, as you all know, to the consent
decree in 1994 . . . The current iteration of the review officer, Mr. Walsh's position, was created
and authorized in the June 3, 2010 stipulation and order signed by Judge Haight. That was
created in response to the revelation of the serious corrupt practices . . . which continued to exist
and involving certain contractors and union officers and representatives. And more specifically,
the June 3, 2010 stipulation and order came about in direct response to a 2009 indictment
charging various acts of racketeering against Michael Forde, then the executive secretary
treasurer of the council and various other union officers and employees . . . So the bottom line

from this history is that this is serious business and the court has, this court has certainly, and I know Judge Haight before me, approached its oversight role with the utmost care.").) [5]

7.       Given the crystal clear purpose and context of the 2010 Stipulation and Order, and the intention and need to appoint a review officer with "increased powers," the Court is persuaded that the RO's veto power under paragraph 5.b.iii. (with respect to "any matter described in paragraphs 5.b.i and 5.b.ii") is and was to be interpreted expansively and to include the veto of persons holding union office. (See 2010 Stipulation and Order ¶ 5.b.; see also 10/23/12 Decision, at 9 ("The Stipulation and Order gives the RO broad authority to investigate allegations of corruption and wrongdoing by officers . . . members, and trustees and to review and veto persons currently holding office or employment." (internal quotation marks omitted)); id. at 13 ("The RO unquestionably has the power to remove elected officials.").)

8.       In reaching these conclusions, the Court finds very persuasive (as a matter of law) the fact that both the District Council and the Government interpret paragraph 5.b. as authorizing the RO to remove District Council officers from their positions. (See Government Letter at 2 ("**The Review Officer is also correct that he had the authority to remove Mr. Nee and Mr. Messinetti by exercise of his veto authority.**" (emphasis added)); District Council Letter at 2.) See Int'l Minerals and Resources, S.A. v. Pappas, 96 F.3d 586, 593 (2d Cir. 1996) ("[S]ome of the most common factors relied on in determining intent include . . . subsequent conduct and interpretation by the parties themselves.").

9.       And, the Court is also persuaded by the fact that, as the Government, the District Council, and the RO point out, "neither party to the stipulation, the union and the government, has ever

---

[5] In 2010, Mr. Forde and eight other District Council officers and representatives pled guilty to or were convicted of criminal charges of corruption and racketeering-related activity. See USA v. Forde, 08-cr-828.

8

voiced an objection to the Review Officer's **multiple vetoes** of those already holding office,

including elected officials." (Government Letter at 2; see Decl. of Dennis M. Walsh, dated Aug.

12, 2014, ¶ 8 ("Neither the government nor the District Council has objected to my use of the

veto authority to remove officeholders."); District Council Letter at 2 ("As the Government and

the RO note, there have been a number of vetoes of office holders in past years with no objection

from any party. This demonstrates a course of conduct that suggests that the parties believed that

the veto power of the Review Officer extended to removal of individuals from elected office

under the authority of the 2010 Stipulation and Order."); Decision & Order, dated Aug. 5, 2013,

at 6 ("The Court affirms the RO's Bilello Veto with respect to Specifications 1, 2, 4, and 5").)

New York Marine and General Ins. Co v. Lafarge North America, Inc., 599 F.3d 102, 119 (2d

Cir. 2010) ("Conduct of the parties provides another important source for deriving their intent as

to the meaning of the . . . contracts at issue . . . There is no surer way to find out the intent of the

parties to a contract   . . . than to see what they have done." (internal punctuation omitted));

United States v. Local 359, United Seafood Workers, 55 F.3d 64, 69 (2d Cir. 1995) ("The

conduct of the parties also supported the district court's interpretation of the [consent decree] as

authorizing a nunc pro tunc extension" where "[o]n several occasions prior to 1994, orders were

entered extending a term that technically had already expired" and "Defendants did not appeal

any of those retroactive extensions.").

10.     The Government has pointed out that an early draft of the 2010 Stipulation and Order

included language explicitly authorizing the RO to "dismiss any person whose continued

officeholding or employment . . . constitutes or furthers an act of racketeering". (See Ex. A to

Decl. of Benjamin H. Torrance, dated Aug. 25, 2014, at 5.) The Court does not believe that the

decision not to include this language in the final version of the 2010 Stipulation and Order is

9

dispositive or even significant. Rather, the Court is persuaded by the affidavit of AUSA

Torrance—who was personally involved in the negotiation and drafting of the 2010 Stipulation

and Order—which states: **"It was the government's understanding throughout this**

**negotiation that the power to dismiss current officeholders of the District Council . . .**

**remained a part of the parties' agreement, and no one ever contradicted that**

**understanding."** (Decl. of Benjamin H. Torrance, dated Aug. 25, 2014, ¶ 5 (emphasis added).)

Torrance also states that the language used in paragraph 5.b. reflects "the parties' agree[ment]

that the [RO]'s powers should be different in this respect regarding the [Benefit] Funds and the

District Council." [6] (Id.)

11.     In connection with the RO's June 26, 2012 Notice of Veto of Nee and Messinetti, the

RO, prior to issuing the veto, "sent them each a Notice of Possible Action and afforded them the

opportunity to submit written responses and the opportunity to be heard at a pre-action

conference with the RO." (10/23/12 Decision at 17.) Nee and Messinetti availed themselves of

this process by making written submissions to the RO, and by attending a pre-action conference

with the RO and two of the RO's investigators on June 14, 2012. (See Ltr. from Bridget Rohde

to Hon. Richard M. Berman, dated Aug. 13, 2012, at 2.) After considering, among other things,

"e-mails, telephone records   . . . Nee's [and Messinetti's] written submission[s] to the RO . . .

[and] witness interviews of Nee, Messinetti, and others involved in the alleged misconduct," the

RO issued a Notice of Veto on June 26, 2012. (Id. at 11, 13.) Thereafter, Nee and Messinetti

---

[6] Torrance explains that the earlier draft of the 2010 Stipulation and Order "permitted the [RO] to veto proposed appointments to office of both the District Council and the Benefit Funds, and to dismiss current officeholders of both entities. In the weeks that followed, the parties agreed that . . . the [RO's] power to veto extended only to the District Council, not to the Funds." (Decl. of Benjamin H. Torrance, dated Aug. 25, 2014, ¶ 5.)

10

provided written submissions to this Court in appealing the RO's actions, and were given the opportunity to make oral presentations.  (See Hr'g Tr., dated Oct. 18, 2012.)

After considering all of the relevant evidence and the arguments advanced by Nee, Messinetti, and the RO, the Court concluded that RO Walsh's decision to remove Nee and Messinetti from their positions as delegates and officers of the Local 157 was not "arbitrary or capricious," did not exceed the authority granted to him under the 2010 Stipulation and Order, and was supported by substantial evidence.  (10/23/12 Decision at 9 ("[T]he Court finds that the RO's determinations with respect to Nee, Messinetti, and Holness were supported by substantial evidence and were not arbitrary or capricious."); id. ("The Stipulation and Order gives the RO broad authority to investigate allegations of corruption and wrongdoing by officers . . . members, and trustees and to review and veto persons currently holding office or employment." (internal quotation marks omitted)); id. at 13 ("The RO unquestionably has the power to remove elected officials.").)

**Conclusion and Order**

**For the foregoing reasons, the Court, on remand, denies the applications of Mssrs. Nee [Dkt. # 1166] and Messinetti [Dkt. # 1193], dated July 23, 2012 and July 24, 2012, respectively, to vacate the RO's vetos of their (prior) service as delegates and officers of Local 157.**

Dated: New York, New York
       September 10, 2014

_____
RICHARD M. BERMAN, U.S.D.J.