**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------X

UNITED STATES OF AMERICA       :

                          :

           Plaintiff,         :

                          :

          -against-        :

                          :

DISTRICT COUNCIL OF NEW YORK CITY  :
And VICINITY OF THE UNITED       :
BROTHERHOOD OF CARPENTERS and   :
JOINERS OF AMERICA, et al.,       :

                          :

           Defendants.     :

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED; *10/7/15*

90 Civ. 5722 (RMB)

**DECISION & ORDER**

### I.   Introduction

Pursuant to the March 4, 1994 Consent Decree entered into by the United States of America ("Government") and the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("District Council"), a Stipulation and Order appointing Dennis M. Walsh, Esq. as review officer ("RO") was agreed to on June 3, 2010 ("2010 Stipulation"). The RO was, among other things, granted the power to "veto" or remove union individuals from office or employment for misconduct. (See 2010 Stipulation ¶ 5.b.iii.(1).) See also United States v. Dist. Council of New York City, No. 90 Civ. 5722, 2013 WL 3974046 (S.D.N.Y. Aug. 5, 2013) ("Bilello"); United States v. Dist. Council of New York City, No. 90 Civ. 5722, 2013 WL 2451737 (S.D.N.Y. June 5, 2013) ("Passero"); United States v. Dist. Council of New York City, No. 90 Civ. 5722, 2010 WL 5297747 (S.D.N.Y. Dec. 21, 2010) ("Willoughby").

On November 18, 2014, a new Stipulation and Order ("2014 Stipulation") was entered into to establish an Independent Monitor ("IM") in the place of the RO. Unlike the 2010 Stipulation, under which the RO had the power to veto someone from office or employment and

1

the recourse for the removed individual was an appeal to the Court, the 2014 Stipulation added a step involving the District Council Executive Committee ("Executive Committee"). Pursuant to the 2014 Stipulation, the IM makes a disciplinary recommendation to the Executive Committee, and the Executive Committee, in turn, makes the final determination after considering whether the IM's recommendation is supported by substantial evidence. (2014 Stipulation ¶ 5.b.iii.(1).) The aggrieved party (which may include the IM) may then petition the Court for review of the final decision of the Executive Committee. (Id.) "In reviewing the decision, the Court will apply the same standard of review of final agency action under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. to the decision or recommendation of the Independent Monitor at issue." (Id. at ¶ 10.) If the Court "concludes that the determination of the IM was not arbitrary or capricious or otherwise met the standard of the APA, [the Court] would affirm that determination." (2014 Stipulation, Ex. A at 2.)

This case is the first appeal to the Court following a recommendation for removal by IM Glen McGorty, Esq. and approved by the Executive Committee under the 2014 Stipulation and Order. (IM Memorandum at 1 ("IM Mem.").)

## II.    Background

Just prior to the end of his term, on December 23, 2014, the RO (Walsh) issued a Notice of Possible Action ("Notice") to John Daly, former Local 157 Delegate to the Executive Delegate and District Council Shop Steward.[1] The RO's Notice included the Declaration of Jack Mitchell, Chief Investigator for the RO, dated December 23, 2014 ("Mitchell Declaration"). The Notice alleged that Daly had been "paid for benefits" by his employer, Regal USA, "for work [he] did not perform in violation of the 29 U.S.C. 186" and the Shop

---

[1] The RO's term ended on December 31, 2014 and the IM's term began on January 1, 2015. (2014 Stipulation ¶ 3.b.)

Steward Code of Ethics, dated February 2012. (Notice at 1; Mitchell Decl. at ¶ 5.) The Notice advised Daly that the RO was "requesting his removal as executive committee member of Local Union 157 of the United Brotherhood of Carpenters and District Council shop steward."[2] (Notice at 1.) The Mitchell Declaration stated, among other things, that the RO was unable to confirm whether or not Daly was paid wages for work he did not perform – as opposed to benefits the payment for which was confirmed – because the RO's investigators do not have access to Regal USA's or Daly's pay records.[3] Thus, the Court is reviewing Daly's termination on the basis of the benefit payments he received from Regal USA.

According to the Mitchell Declaration, "Daly was interviewed by [Mitchell], the Review Officer and investigator [William] O'Flaherty on December 8, 2014 regarding his work at the Regal USA 42nd Street jobsite." (Mitchell Decl. at ¶ 4.) During the interview, "Daly admitted that at times he was not on the job during [normal work] hours [in order] to perform 'union duties.'" (Id. at ¶ 6.) "Daly described these union duties as attending: (1) Executive Committee meetings; (2) delegate meetings; and (3) collective bargaining agreement negotiations." (Id.) After "review[ing] District Council and Benefit Funds records including shop steward reports, remittance reports, collective bargaining agreements, sign-in sheets, transcripts of District Council proceedings and financial records," Mitchell determined that "Daly was compensated [i.e. he received benefits] for at least 47.25 hours that he did not,

---

[2] On September 22, 2015, the IM sent a letter to the Court advising that "[o]n September 17th, as scheduled, the Local Union 157 held its election [to replace Daly] and a new member was elected to the position of delegate to the Executive Committee." (IM Sept. 22, 2015 Letter at 1.)

[3] "Based on shop steward reports, it is likely that Daly was also paid wages by Regal USA, however we do not have access to Regal USA's or Daly's pay records to confirm whether or not Daly was paid wages for these hours. For the periods in question, Regal USA paid benefits for hours greater than or equal to those reported by Daly on the shop steward reports." (Mitchell Decl. at 1 n.1.)

3

in fact, work." (Id. at ¶ 2, 7.)

Daly responded to the Notice in a letter from his counsel dated January 8, 2015 and addressed to the IM ("MacGiollabhui January 8, 2015 Letter"). Daly asserted that he could "fully account[]" for "every hour of every day" and specifically for the days that the RO had claimed Daly was paid benefits in excess of the hours he actually worked. (MacGiollabhui January 8, 2015 Letter at 4.) Daly's response included two documents: (i) a declaration, dated January 5, 2015, from Delroy Pryce, Daly's General Foreman on the Regal USA job site ("Pryce Decl."); and (ii) an undated document entitled "John Daly's Actual Hours," which purported to be an accounting of when Mr. Daly had worked and the number of hours for which he had received benefits on the days in question. Pryce stated that Daly "has never been paid by the Company for hours that he was not on the job. Anytime [Daly] left to attend Union Business, he informed me of this fact. [Daly] made up the hours throughout the day by performing the following: starting early, working through lunch, and/or returning from Union Duties to the Job." (Pryce Decl.)

On January 9, 2015, IM McGorty, who had succeeded RO Walsh, informed Daly's counsel that "[he] would take additional time to investigate and consider the evidence and issues raised by [Daly's] response." (Letter from IM McGorty to Niall MacGiollabhui, dated March 10, 2015 at 1 ("IM March 10, 2015 Letter.")) In light of Daly's unqualified assertion that he could "fully account[]" for "every hour of every day" and his refutation of the evidence that was put forth by the Review Officer, the IM requested the Court to approve a subpoena to Verizon Wireless for Daly's cellsite records, which the Court did on February 17, 2015 (to "provide some insight into Mr. Daly's whereabouts on the days in question"). (Id. at 1-2; IM. Mem. at 4.)

On March 10, 2015, the IM sent a letter to Daly's counsel containing an analysis of the

4

cellsite data he had obtained. The IM stated that the data showed "a greater discrepancy between the hours worked and the hours paid than originally charged." (IM March 10, 2015 Letter at 2.) The IM concluded that "the original Notice of Possible Action was proper and its accusations sound," and provided Daly with "an opportunity to consider the evidence and respond" before the IM "formally communicate[d] [his] recommendation to the Executive Committee." (Id. at 1.) Daly's counsel responded with a letter on April 1, 2015 ("MacGiollabhui April 1, 2015 Letter"), arguing that "[t]he subpoena and disclosure of [Daly's] location information were unlawful." (MacGiollabhui April 1, 2015 Letter at 2.)

"On April 3, 2015, the IM presented his findings and recommendation to the Executive Committee members . . . that Mr. Daly be removed as a member of the District Council's Executive Committee and as a District Council Shop Steward" in light of the "overwhelming evidence to support the accusation against Mr. Daly contained in the original Notice." (District Council June 8, 2015 Letter at 5 ("Dist. Council Letter"); IM Mem. at 5.) On April 6, 2015, "[a]fter discussing the IM's factual findings and recommendation, the Executive Committee reported . . . that it had decided to accept under the substantial evidence standard the findings and recommendation of the IM to remove Mr. Daly as an Executive Delegate and a Shop Steward."[4] (Dist. Council Letter at 6.) "Mr. Daly's services as an Executive Delegate and a Shop Steward were terminated immediately." (Id.)

On May 6, 2015, Daly petitioned the Court ("Petition") "for review of the decision of the Executive Committee of the District Council on April 6, 2015, by which Mr. Daly was removed

---

[4] The Executive Committee had been presented for review with the following documents: "Exhibits A through E . . . to the MacGiollabhui Decl.," which included the Notice (Ex. A) and the correspondence between the IM and Daly's counsel between January 8, 2015 and April 1, 2015 (Ex.'s B-E) (including the Pryce Declaration and the "John Daly's Actual Hours" document in Ex. B). (Dist. Council Letter at 5.)

5    ·

from his positions as Local 157 delegate to the Executive Committee and as shop steward, respectively." (Daly Petition at 1; see also infra pp. 19-22) Daly included a declaration, dated May 6, 2015 from his counsel ("MacGiollabhui May 6, 2015 Declaration"), and a memorandum of law in support of his Petition ("Daly Mem."). Daly argued that "[t]he [IM] exceeded his authority in taking action against Mr. Daly as a shop steward;" "[t]he subpoena issued by the [IM] to obtain Mr. Daly's historical cell-site data was unlawful;" and that "[t]he decision of the Executive Committee must be vacated." (Daly Mem. at 4, 6, 9.)

On June 8, 2015, the IM and District Council each filed (separate) responses in opposition to Daly's Petition ("IM Mem." and "District Council Letter," respectively). The IM (and District Council) argued that: **A.** The "conclusion that Mr. Daly received payment of benefits from Regal for hours he did not work was . . . based on concrete and 'substantial evidence' that contradicts Mr. Daly's specific representations about the days in question;" **B.** The receipt of benefits "from his [Daly's] employer for hours he did not work violated 29 U.S.C. § 186;" **C.** The IM has the authority to "take action under Paragraph 5.b [of the 2014 Stipulation] against Mr. Daly in his capacity as a Shop Steward;" **D.** It was lawful to subpoena Daly's cellsite information under paragraph 5.d.ii of the 2014 Stipulation (IM. Mem. at 11, 19, 20.); and **E.** The Executive Committee acted properly and "followed the procedures provided under the 2014 Stipulation and Order" in making its decision to accept the IM's recommendation to remove Daly as an Executive Delegate and a Shop Steward. (Dist. Council Letter at 1, 5-6.) On June 16, 2015, Daly filed a reply memorandum of law in support of his Petition for review ("Daly Reply").

6

**For the reasons outlined below, the Court finds that the IM's determinations were supported by substantial evidence and were not arbitrary or capricious. Accordingly, the Petition for review is respectfully denied.[5]**

## III. Legal Standard

The 2014 Stipulation (as did the 2010 Stipulation) grants the IM broad authority to investigate "allegations of corruption and wrongdoing by officers . . . employees, members, and trustees" and to review and recommend removal of "persons currently holding office or employment." (2014 Stipulation ¶¶ 5.a, 5.b.i.(3), 5.b.iii; see also Willoughby, 2010 WL 5297747, at *3.) After the Independent Monitor "present[s] his evidence and recommendation for action to the Executive Committee," the Executive Committee "determine[s] if there is substantial evidence to support the conclusion of the Independent Monitor and will make a final decision on whether the action should or should not be taken or whether an individual should or should not be removed from office or employment or face other action." (2014 Stipulation ¶ 5.b.iii.(1).) When an individual facing removal appeals to the Court, the Court will "apply the same standard of review of final agency action under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. ("APA") to the decision or recommendation of the Independent Monitor at issue." (2014 Stipulation ¶ 10.)

The IM's findings of fact "are entitled to affirmance on review if they are reasonable and supported by substantial evidence in the record as a whole;" they may be "set aside only if they

---

[5] So that the parties would have the Court's determination prior to the scheduled September 16, 2015 election, the Court issued an order on September 16, 2015, stating that "the petition of John Daly, former Local 157 Delegate to the District Council Executive Committee and Shop Steward, dated May 6, 2015, is hereby respectfully denied. A written opinion will follow." (Order, dated Sept. 16, 2015.) This Decision & Order is the written opinion referred to.

**Any issues raised in the Petition not specifically addressed herein were considered by the Court on the merits and rejected.**

7

are unsupported by substantial evidence." United States v. Dist. Council of New York City, 941 F. Supp. 349, 362 (S.D.N.Y. 1996) ("Fiorino"); see also (2014 Stipulation, Ex. A at 2.). "Substantial evidence is more than a mere scintilla but something less than the weight of the evidence, and the substantial evidence standard may be met despite the possibility of drawing two inconsistent conclusions from the evidence." Id. "The court must consider the reasonableness of an agency action based on the record in existence at the time of the decision; it will not engage in an evidentiary hearing or a de novo review." Boatmen v. Gutierrez, 429 F. Supp.2d 543, 548 (E.D.N.Y. 2006). "In considering a relevant question of law under the APA, the reviewing court asks whether the agency's action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" Fiorino, 941 F. Supp. at 362.

"Under § 10(e) of the APA, 5 U.S.C. § 706, a reviewing court determines de novo 'all relevant questions of law.'" Willoughby, 2010 WL 5297747, at *3.

## IV. Analysis

The IM, as did the RO before him, "seeks to instill the highest ethical standards in the management of the affairs of the District Council." Passero, 2013 WL 2451737, at *2. "Union officers 'owe an enhanced duty of care to their membership.'" Id. at *6 (citing United States v. Int'l Bhd. of Teamsters, 761 F. Supp. 315, 319 (S.D.N.Y. 1991). Given the long, disturbing, and very public record of union mismanagement and corruption which gave rise to the Consent Decree and to the 2010 Stipulation and Order and the 2014 Stipulation and Order, there is a continuing need for vigilance at the District Council. See Hr'g Tr., dated March 10, 2014, at 20:8-10; Bilello, 2013 WL 3974046, at *9. "[T]he continuing ability for an aggrieved party to petition the Court for review recognizes that the Council is still on the path of recovery from the influences of corruption and racketeering addressed by the Consent Decree and earlier

8

Stipulations and Orders." (Barbara S. Jones, counsel to the District Council, November 14, 2014
Letter at 2.)

## A. The IM's Recommendation Was Supported by Substantial Evidence

Daly argues that "[t]he decision of the Executive Committee must be vacated under the
APA standard of review." (Daly Mem. at 9.) He contends, among other things, that the cellsite
"analysis indicated that Mr. Daly had at times under-reported as well as over-reported his hours"
and he maintains that "he did not intentionally over-report his hours." (Id. at 10.)

The IM counters that his "conclusion that Mr. Daly received payment of benefits from
Regal for hours he did not work was . . . based on concrete and substantial evidence that
contradicts Mr. Daly's specific representations about the days in question." (IM Mem. at 10-11.)
The IM states that his "conclusion that Mr. Daly received benefit payments for hours which he
did not work easily withstands scrutiny under the APA standard of review." (Id.) The IM
contends that his "actions and recommendations were not 'arbitrary, capricious, an abuse of
discretion, or otherwise not in accordance with law' because he 'considered the relevant factors'
and acted within his authority." (Id. (citing United States v. Int'l Bhd. of Teamsters, 170 F.3d
136, 142 (2d Cir. 1999).)

The IM's determination that Daly received benefit payments for hours he did not work
meets the substantial evidence standard and was not arbitrary or capricious. See Willoughby,
2010 WL 5297747, at *6 (where the RO's veto of a shop steward for involvement in a bribery
scheme was supported by substantial evidence); Passero, 2013 WL 2451737, at *3 (where the
RO's veto of a local union president for improperly disclosing confidential information was
supported by substantial evidence); Bilello, 2013 WL 3974046, at *4 (where the RO's veto of
the District Council Executive Secretary Treasurer for violating District Council bylaws and
failing to cooperate in an investigation by the RO was supported by substantial evidence).

Among other evidence, the IM considered the Mitchell Declaration which, in turn, was based in part upon a review of "District Council and Benefit Fund records including shop steward reports, remittance reports, collective bargaining agreements, sign-in sheets, transcripts of District Council proceedings and financial records." (Mitchell Decl. at ¶ 2; IM Mem. at 9.) After "Daly provided a document entitled, 'John Daly's Actual Hours,'" purporting to "account for each day, demonstrating how he worked the hours for which he was paid by coming in early or returning to the job after going to the District Council," the IM determined to conduct a further investigation. (IM Mem. at 9-10.) The IM "subpoenaed Mr. Daly's cellsite information to obtain actual evidence of the time that Mr. Daly could have possibly been working at the jobsite." (Id. at 10.) "The [IM] studied Mr. Daly's account of the days in question and compared it with the subpoenaed records," and concluded as follows:

Mr. Pryce's representation that Mr. Daly sometimes came to work earlier than 7 a.m. is accurate though the records demonstrate that he did not come in as early as 6 a.m. on the days as Mr. Daly claimed.

Mr. Pryce's representation that Mr. Daly sometimes returned to the jobsite after attending to union business at the District Council is also accurate, though on many days in question he did not return for the requisite number of hours or even at all.

**While working unconventional hours may have been a general practice of Mr. Daly's . . . the cellsite evidence reveals that Mr. Daly's account of the days in question is inaccurate with respect to most of the days.**

More specifically, the cellsite records reveal that even a conservative reading of the time Mr. Daly spent away from the jobsite demonstrates a **greater discrepancy** between the hours worked and the hours for which he accepted payment than originally charged.

Accordingly, Mr. Daly did not work the hours that he has represented. Specifically, of the 21 days for which there are sufficient telephone records, the records of 17 days reveal a discrepancy of at least an hour, and on most of those days, the cellsite evidence shows that Mr. Daly was present at the jobsite for anywhere from two to seven hours **less than he claimed**. Further the evidence is incontrovertible that Mr. Daly did not return to the job after leaving the District Council as he claimed on five of the days in question.

10

(IM Mem. at 10 (emphasis added).)[6]

The IM's recommendation was not arbitrary or capricious. The IM afforded Daly appropriate and legally sufficient notice and opportunity to contest the charges against him (with counsel). See Willoughby, 2010 WL 5297747, at *5. The RO and/or the IM provided Daly and his counsel: (1) an opportunity to respond to the Notice; (2) the March 10, 2015 letter summarizing the IM's position and a spreadsheet containing his analysis of the cellsite information for the dates on which it was alleged Mr. Daly was paid benefits for more hours than he worked (MacGiollabhui Declaration at ¶ 12); (3) cellsite information for specific dates requested by Daly's counsel (id. at ¶ 13); and (4) "an opportunity to consider the [additional] evidence and respond" (IM March 10, 2015 Letter at 1.). This all occurred before the IM communicated his recommendation to the Executive Committee. (Id.)

The Court finds that the IM's recommendation was supported by substantial evidence and was not arbitrary or capricious.

## B. Daly's Conduct Violated the Law

The Notice alleged that Mr. Daly was paid benefits corresponding to hours he spent "engaged in activities as a delegate to the Executive Committee." (Daly Mem. at 11.) Daly argues that the payment of benefits "does not constitute a violation of the [Taft-Hartley Act,] 29 U.S.C. § 186 . . . for two reasons: (1) the Second Circuit has held that payments, whether of wages or benefits, to an employee for time engaged in union business are exempt under 29

---

[6] Daly also argued that the IM's determination "depends on the assumption that John possessed his cellphone at all times . . . . Unless [the IM] can prove that John possessed his cellphone at all times, the location of the phone does not prove John's location." (Daly April 1, 2015 Letter at 4.) From the data uncovered, it is a fair inference that Daly possessed his phone. See United States v. Cavera, 550 F.3d 180, 205 (2d Cir. 2008) (en banc) (Raggi, J., concurring). In any case, "the substantial evidence standard may be met despite the possibility of drawing two inconsistent conclusions from the evidence." Fiorino, 941 F. Supp. at 362.

U.S.C. § 186(c)(1), which allows for payments made 'as compensation for, or by reason of, his service as an employee of such employer,' and (2) benefit payments such as those paid to Mr. Daly are exempt under 29 U.S.C. § 186(c)(5)." (Id. at 10-11.)

## 29 U.S.C. § 186

Section 186(a) of the Taft-Hartley Act, 29 U.S.C. § 141 et seq., provides that: "It shall be unlawful for any employer . . . to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value (1) to any representative of any of his employees who are employed in an industry affecting commerce." Section 186(b) provides that: "It shall be unlawful for any person to request, demand, receive, or accept, or agree to receive or accept, any payment, loan, or delivery of any money or other thing of value prohibited by subsection (a) of this section."

These provisions are intended "to prevent unions and union officials from demanding that employers contribute to 'welfare funds' under the control of the union which the union's officials could use as they saw fit." Indep. Ass'n of Mutuel Emp. of New York State v. New York Racing Ass'n, 398 F.2d 587, 591 (2d Cir. 1968) (citing Arroyo v. United States, 79 S. Ct. 864 (1959); United States v. Ryan, 76 S. Ct. 400 (1956)). They circumscribe payments to an employee (i.e. Executive Delegate and a Shop Steward) like Daly. "Congress believed that if welfare funds were established which did not define with specificity the benefits payable thereunder, a substantial danger existed that such funds might be employed to perpetuate control of union officers, for political purposes, or even for personal gain." Arroyo, 79 S. Ct. at 868 (citations omitted). "Any erosion of the strict requirements of this section could provide an unintended loophole for the unscrupulous, and could result in a diversion of funds away from the proper parties as had occurred before [29 U.S.C. § 186] was enacted." Tr. of the Nat. Automatic

12

Sprinkler Indus. Pension Fund v. Fairfield County Sprinkler Co., Inc., 243 F.3d 112, 116 (2d Cir. 2001) (quoting Moglia v. Geoghegan, 403 F.2d 110, 116 (2d Cir. 1968)).

Section 186(c) of the Taft-Hartley Act carves out certain exceptions; Daly contends that his receipt of benefits for hours spent on union business falls under two such exceptions, namely § 186(c)(1) and (5). (Daly Mem. at 11.)

Section 186(c)(1) provides that § 186 shall not be applicable "in respect to any money or other thing of value payable by an employer to . . . any representative of his employees, . . . who is also an employee or former employee of such employer, as compensation for, or by reason of, his service as an employee of such employer." Section 186(c)(5) provides that § 186 shall not be applicable "with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents . . . Provided, That . . . the detailed basis on which such payments are to be made is specified in a written agreement with the employer . . . ."

## 29 U.S.C. § 186(c)(1)

Daly contends that United States Court of Appeals for the Second Circuit has found, in BASF Wyandotte Corp. v. Local 227, that "paid time off for the conduct of the union business is designed to permit the union official to service his fellow workers" (Daly Reply Mem. at 7 (quoting BASF Wyandotte Corp. v. Local 227, 791 F.2d 1046, 1049 (2d Cir. 1986)), and that compensation for attending to union business, "regardless of whether it was time spent in meetings with management or other union-related activities," qualifies as compensation under 29 U.S.C. § 186(c)(1) by reason of his services as an employee. (Id. (citing BASF Wyandotte Corp., 791 F.2d at 1053).) Daly also argues that United States v. Local 1804-1, 812 F. Supp. 1303 (S.D.N.Y. 1993), held that 29 U.S.C. § 186 does not apply to payments made to a "bona

13

fide employee," and that "there is no dispute that Mr. Daly was a bona fide employee" of Regal USA. (Daly Mem. at 12.)

The IM counters persuasively that BASF Wyandotte Corp. is distinguishable from this case because BASF Wyandotte Corp. entailed "a provision in the collective bargaining agreement requiring employers to allow union officials paid time off to conduct union business." (IM Mem. at 13.) By contrast, "[h]ere, Mr. Daly cannot and does not argue that he is entitled to the benefits he received pursuant to [any] provision in a collective bargaining agreement." (Id. (citing the Cement League Collective Bargaining Agreement ("CBA"), dated Oct. 11, 2013).) And, the IM points out correctly that nowhere in the Local 1804-1 case "did the Court indicate that the recipient's status as a bona fide employee is the only requirement for a payment to qualify under the exception." (Id. (citing Local 1804-1, 812 F. Supp. at 1344-45.) "The employee's receipt of payment must also be on account of his employment." (Id.) "In passing a statute intended to prevent union bribery, Congress could not have possibly intended to allow employers to make unrestricted payments to union representatives as long as the representatives were bona fide employees of the employer." (Id. at 14.)

The Court finds that BASF Wyandotte Corp. is clearly distinguishable from the present case. In BASF Wyandotte Corp., the Second Circuit held that "an employer's payment to [an employee], pursuant to a no-docking provision in a collective bargaining agreement, for time off to permit him to tend to union duties" was not a violation of 29 U.S.C. § 186. 791 F.2d at 1049; see also Trustees of the Nat. Automatic Sprinkler Indus. Pension Fund, 243 F.3d at 116; Moglia, 403 F.2d at 116. "Under [29 U.S.C. § 186], any payment made by an employer to an employee representative . . . and the receipt of such payments by an employee representative are absolutely forbidden unless there is a written agreement between the employer and the union specifying the basis upon which the payments are made." Moglia, 403 F.2d at 116. Daly points to no language

14

in the CBA which authorizes him to receive from his employer benefit payments for time spent off the job-site performing union duties. (See Cement League CBA.) The benefit payments he received do not fall under the exception in 29 U.S.C. § 186(c)(1).

## 29 U.S.C. § 186(c)(5)

The Court also finds that Daly's receipt of benefits for time spent engaging in union activities does not fall under the 29 U.S.C. § 186(c)(5) exception. The statute makes clear that "the detailed basis on which such [benefit payments] are to be made [must be] specified in a written agreement with the employer." 29 U.S.C. § 186(c)(5)(B). As noted, the CBA does not provide that union representatives may receive benefit payments for time engaged in union business. (See Cement League CBA, Art. XVI.) The benefit payments Daly received do not fall under the 29 U.S.C. § 186(c)(5) exception.

## C. The IM Had Authority to Recommend Daly's Removal as Shop Steward

Daly argues that the "[IM] exceeded his authority in taking action against Mr. Daly as a Shop Steward" pursuant to paragraph 5.b.iii of the 2014 Stipulation.[7] (Daly Mem. at 4-5.) Daly contends that "his position as shop steward was neither an office of, nor employment by, the District Council . . . and thus to take action against him in this capacity, the IM was required to proceed under paragraph 5.f [of the 2014 Stipulation] by filing disciplinary charges." (Daly Mem. at 5.)

The IM responds persuasively that he "did not exceed his authority by recommending Mr. Daly's removal as shop steward and executive delegate." (IM Mem. at 16.) He contends that "the [IM] had the authority to take action against Mr. Daly in his capacity as Shop

---

[7] It is conceded that "Mr. Daly's position as delegate to the Executive Committee was subject to the IM's authority under both paragraph 5.b and 5.f of the 2014 Stipulation and Order." (Daly Mem. at 5.)

15

Steward under Paragraph 5.b.iii [of the 2014 Stipulation] because the position of Shop Steward is an 'office' under the 2014 Stipulation and Order." (Id. at 17.) The IM argues that "Shop Stewards perform the crucial, and historically corruptible, function of reporting the hours worked by District Council members so that the Benefit Funds can ensure that the correct amount is remitted. Excluding Shop Stewards from the [IM's 2014 Stipulation,] Paragraph 5.b.iii authority would run counter to the 2014 Stipulation and Order's purpose of ensuring compliance with the Consent Decree." (Id. at 18-19.)

The Court finds that the IM has authority to recommend that a Shop Steward such as Daly be removed. See Willoughby, 2010 WL 5297747, at *5. In Willoughby, the Court held that the position of Shop Steward is included under "persons currently holding office or employment," and upheld the RO's veto of a shop steward who had participated in a scheme "to convey bribe money from a construction contractor" to a District Council Benefit Funds employee "to defraud said Benefit Funds of contributions which should have been paid by the contractor." 2010 WL 5297747, at *2. The Court rejected the argument that "the position of shop steward [does not] constitute an office of, or employment by, the District Council." Id. at *4. District Council, the Court found, includes "all constituent local unions" (id. at *5 (citing 2010 Stipulation ¶ 1.b.)), and that "[a]s the RO has the authority to 'review the persons currently holding office or employment' with the District Council, such authority extends to Willoughby's positions with respect to his constituent local union, Local 157" (id. (citing 2010 Stipulation ¶ 5.b.i.(3)).[8]

---

[8] Willoughby appealed the Court's decision to the Second Circuit on January 3, 2011, but withdrew his appeal on May 20, 2011. (United States Court of Appeals for the Second Circuit Mandate, dated May 20, 2011, at 1.)

The language in the 2014 Stipulation is identical to that of the 2010 Stipulation with regard to "[t]he Independent Monitor['s] authority to review persons currently holding office or employment" with the District Council. (Compare 2010 Stipulation ¶¶ 1.b and 5.b.i with 2014 Stipulation ¶¶ 1.b and 5.b.i.) District Council includes "all constituent local unions." (2014 Stipulation ¶ 1.b.) And, as in Willoughby, the IM has the authority to "review persons currently holding office or employment" with the District Council, including shop stewards. (2014 Stipulation ¶ 5.b.i.)

The IM did not exceed his authority in recommending to the Executive Committee that Daly be removed from his position as Shop Steward.

## D. The Subpoena Was Lawful

Daly argues "that the subpoena issued by the [IM] to obtain Mr. Daly's historical cell-site data was unlawful." (Daly Mem. at 6.) Specifically, he contends that (1) "[w]hile the All Writs Act allows the Court to issue subpoenas, it does not allow it to grant the right to issue subpoenas to a non-party" (Daly Mem. at 6-7); and (2) the subpoena violated the Stored Communications Act, 18 U.S.C. § 2701 et seq. (see Daly Mem. at 7-8).

Courts have provided court-appointed monitors with subpoena power under appropriate circumstances. See, e.g., U.S. v. Dist. Council of New York City, 618 F.Supp.2d 326, 329 (S.D.N.Y. 2009) ("The Court-appointed Independent Investigators, charged with insuring compliance with the Job Referral Rules, routinely caused the issuance to contractors of subpoenas requiring the production of company documents and the depositions of company officers."); United States v. Amodeo, 44 F.3d 141, 143 (2d Cir. 1994) ("The Consent Decree provides Ms. Little with the authority to subpoena witnesses and documents and to take testimony under oath in carrying out her duties.")

17

## The All Writs Act Does Not Apply

Paragraph 11.g of the 2014 Stipulation states that "[t]he Government or the [IM] may apply to this Court at any time pursuant to the All Writs Act, 28 U.S.C. § 1651(a), for relief as against non-parties to the Consent Decree or this Stipulation and Order." As the IM correctly argues, the subpoena here was not issued pursuant to Paragraph 11.g of the 2014 Stipulation. This is "**not** the paragraph governing the subpoena at issue because the [IM] requested the subpoena to obtain information for a review action before the Executive Committee of the District Council, not to support a request for relief from the Court." (IM Mem. at 20 (emphasis added).) The subpoena in this case is governed by paragraph 5.d.ii of the 2014 Stipulation, which gives the IM "the right, with authorization of the Court, to issue subpoenas for testimony or documents from any person or entity." (2014 Stipulation ¶ 5.d.ii.)

## The Subpoena Did Not Violate the Stored Communications Act, 18 U.S.C. § 2701 et seq.

While Daly acknowledges that "the mere appointment by the Court of a union monitor such as the IM does not make him a state actor" (Daly Mem. at 7), he contends that "[t]he Court, by giving the IM subpoena power and authorizing his use of it in this case, supplied the state action component that brings the subpoena within the ambit of the Stored Communications Act." (Id. at 8.)[9] If there is state action, then it "is subject to constitutional restraints." Lugar v. Edmondson Oil Co., 102 S. Ct. 2744, 2756 (1982). Daly cites In re Application of United States,

---

[9] The Stored Communications Act provides that "[a] governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity (A) obtains a warrant . . . [or] (B) obtains a court order for such disclosure . . . ." 18 U.S.C. § 2703(c). The warrant or court order "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." Id. § 2703(d).

18

809 F. Supp. 2d 113 (E.D.N.Y. 2011), arguing that the IM's effort "to obtain [Daly's] location information over nine months with only a subpoena, and without a search warrant, was blatantly unconstitutional." (MacGiollabhui April 1, 2015 Letter at 2.)

The IM counters that "[t]he [IM's] actions do not constitute state action because his position was established by the 2014 Stipulation and Order, a private agreement, and not by a provision of federal or state law" (IM Mem. at 22.), and also that "[t]he private agreement that created the position of Independent Monitor, the 2014 Stipulation and Order, refers to the 'the Government' and 'the Court' separately from 'the Independent Monitor' throughout." (Id. (citing 2014 Stipulation).) The IM contends that "[t]here is no basis to conclude that the [IM] is . . . a governmental entity." (Id.) "[N]either the 2014 Stipulation and Order, nor the specific endorsement by the Court or the subpoena itself, transforms the issuance of the subpoena into 'state action,' in any sense of the words." (Id.) "[T]he [IM] lawfully obtained the cellsite data pursuant to a subpoena." (IM Mem. at 22.)

The IM is not a "governmental entity" and the subpoena was lawful. The Court previously held in the Willoughby case that "consistent with clear precedent, [] the RO is not a state actor and, therefore, constitutional arguments may not be leveled at actions by the RO." 2010 WL 5297747, at *5. "It is well settled that the actions of an officer appointed by a federal district court to oversee the implementation of a union consent decree do not constitute 'state action' for constitutional purposes." United States v. Mason Tenders Dist. Council, No. 94 Civ. 6487 (RWS), 1998 WL 23214, at *7 (S.D.N.Y. Jan 13, 1998) (citing United States v. Int'l Bhd. of Teamsters, 981 F.2d 1362, 1371 (2d Cir. 1992), United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292, 1296 (2d Cir. 1991), United States v. Int'l Bhd of Teamsters, 870 F. Supp. 577, 560 (S.D.N.Y. 1994)).

19

That the Court authorized the subpoena is insufficient to transform the IM's action into state action. (See 2014 Stipulation ¶ 5.d.ii.) The IM "acted solely pursuant to the authority [he] derives from the Consent Decree" and the 2014 Stipulation. See Int'l Bhd. of Teamsters, 870 F. Supp. at 560.

## E. The Executive Committee Determination

Daly argues that the Executive Committee did not follow the 2014 Stipulation and Order in holding an "up-or-down" vote on the IM's recommendation that Daly be removed from his positions as Local 157 Delegate to the Executive Committee and Shop Steward. (Daly Mem. at 13.) Daly claims the Executive Committee was required to consider other discipline(s) short of removal by virtue of the phrase "or face other action" in paragraph 5.b.iii.(1) of the 2014 Stipulation.[10] (Daly Mem. at 14-15.)

Daly also argues that "[t]he Executive Committee based its decision upon illegitimate factors" because the "presence of the District Council's Inspector General and Chief Compliance Officer alongside the IM during his presentation" amounted to an "endorse[ment]" and Committee members "were given an ultimatum during their deliberations that, unless they voted to uphold the recommendation, their failure in this regard would be brought before the Court." (Daly Mem. at 17.) Daly's counsel, Niall MacGiollabhui, claims he "learned of this ultimatum from some of those present" at the Executive Committee meeting. (MacGiollabhui Decl. ¶ 18.)

The IM stated that he "closely follow[ed] the actions of the Executive Committee in connection with this matter" and counters that Daly's allegations regarding the Executive Committee's decision "have absolutely no merit." (IM Mem. at 23-24.) The District Council

---

[10] Paragraph 5.b.iii.(1) of the 2014 Stipulation states that "[t]he Executive Committee will determine if there is substantial evidence to support the conclusion of the [IM] and will make a final decision on . . . whether an individual should or should not be removed from office or employment or face other action." (2014 Stipulation ¶ 5.b.iii.(1).)

argues that, under the 2014 Stipulation, the question before the Court is whether "there is substantial evidence to support the IM's recommendation" and that the language "or face other action" "does not provide a mechanism for de novo determination by the Executive Committee of any findings and recommendations of the IM." (Dist. Council Let. at 1, 6). The District Council also contends that Daly's claim of an "ultimatum" is "speculation based upon hearsay" and that "tellingly, Daly's counsel failed to offer a declaration from any Executive Committee member." (Dist. Council Letter at 7.)

Under the 2014 Stipulation, "[i]n reviewing the decision, the Court will apply the same standard of review of final agency action under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. to the decision or recommendation of the Independent Monitor at issue." (Id.) Thus, the Court here is concerned with whether the IM's recommendation to the Executive Committee to discharge Daly – which recommendation was accepted by the Executive Committee on or about April 6, 2015 – satisfies the standards of the APA. That is, the Court determines whether the IM recommendation is supported by substantial evidence and is not arbitrary or capricious. (2014 Stipulation ¶ 10.) If the Court "concludes that the determination of the IM was not arbitrary or capricious or otherwise met the standards of the APA, [the Court] would affirm that determination." (2014 Stipulation, Ex. A at 2.)[11] The Executive Committee, following its

---

[11] In a letter, dated November 17, 2014, the District Council's counsel, former U.S. District Judge Barbara S. Jones, described what she believed the Court's role to be under the 2014 Stipulation as follows:

> [The Court's] review is analogous to the procedure followed by the Court of Appeals in reviewing district court decisions reviewing final agency action. In such cases, the Court of Appeals 'gives no deference to the lower court but reviews de novo whether the agency action satisfies the standards of the APA. In other words, like the district court, the Court of Appeals reviews the record to determine whether the agency considered the relevant factors and acted within its discretion.' So too here, [the Court] does not defer to the Executive Committee determination, but would review the record to determine whether the IM considered the relevant factors and acted within his discretion. If [the

21

review of the record presented by the IM, accepted the IM's recommendation to remove Daly as an Executive Delegate and a Shop Steward, finding that the IM's recommendation was based upon substantial evidence. (Dist. Council Letter at 6.)

The Court has, as noted, also concluded that the recommendation of the IM to remove Daly as an Executive Delegate and a Shop Steward was supported by substantial evidence and was not arbitrary or capricious. (See supra Part IV.A.) Assuming, arguendo, that it were appropriate to evaluate Daly's allegations regarding the Executive Committee's process, the Court would likely find that the Executive Committee's actions were in accordance with the 2014 Stipulation; the Executive Committee determined "that the recommendation of the IM was supported by substantial evidence" after having reviewed "all documents related to the IM's investigation," including Daly's "response and reply submissions to the IM." (See Dist. Council Letter at 2.) The Court would also likely find that the Executive Council properly followed the procedure set forth in the 2014 Stipulation by accepting the "recommendation of the IM to remove Mr. Daly as an Executive Delegate and Shop Steward" and that no evidence had been submitted to support the contention that "untoward factors compelled" the Executive Committee to vote in favor of accepting the IM's findings and recommendations. (See 2014 Stipulation ¶ 5.b.iii.(1); Dist. Council Letter at 5-7.)

---

Court] concludes that the determination of the IM was not arbitrary or capricious or otherwise met the standard of the APA, [the Court] would affirm that determination.

(2014 Stipulation, Ex. A at 2.)

22

## V.    Conclusion & Order

For the reasons stated herein, the IM's recommendation that Daly be removed from his positions as Local 157 Delegate to the Executive Committee and Shop Steward was supported by substantial evidence and was not arbitrary or capricious. As the Court initially determined on September 16, 2015, John Daly's Petition for review [#1613] is denied.

Dated: New York, New York
        October 7, 2015

**RICHARD M. BERMAN, U.S.D.J.**

23