Case 1:90-cv-05722-VM   Document 1783   Filed 02/22/18   Page 1 of 5

# Law Offices of Thomas D. Gearon, P.C.

185 Montague St. Suite 1201 Brooklyn, NY 11201 | Tel: 347-391-3443 | Fax: 347-823-1805
Email: tgearonlaw@gmail.com | Web: www.gearonlaw.net

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/22/18

RECEIVED
JAN 26 2018
CHAMBERS OF
JUDGE MARRERO

January 22, 2018

**Via: UPS Overnight**
Hon. Victor Marrero
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 11-B
New York, NY 10007-1312

Re: 2017 Election of the Officers of the New York City District Council of Carpenters/*Notice of Appeal*    90 Cv. 5722

Dear Judge Marrero:

I am counsel to William McKenna, Kevin Corrigan, and John DeFalco (the "Candidates"), each of whom is a candidate for election to an office of the District Council. (Capitalized terms used in this letter, unless otherwise defined, have the meanings ascribed to them in the Final Rules for the 2017 Election of the Officers of the New York City District Council of Carpenters (the "Election Rules")).

I am writing on behalf of the Candidates to appeal, pursuant to Paragraph 5 of Section Six of the Election Rules, the decision of the Independent Monitor, dated January 10, 2018, (the "Decision") denying the Protest of the Candidates dated November 30, 2017 (the "Protest") regarding violations of the Election Rules by certain candidates of the "Solidarity Slate" ("Solidarity").

## Appeal Procedure

Neither the Election Rules nor the November 18, 2014 Stipulation and Order in *United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America, et al.*, 90 Civ. 5722 (VM) (S.D.N.Y. 1994), which was extended on April 18, 2016 and April 24, 2017 (the "Stipulation") specifies a procedure governing an appeal under the Election Rules. The Candidates respectfully submit that the procedure applicable to a review of a decision by the Secretary Labor under the Labor-Management Reporting and Disclosure Act of 1959, 29 U. S. C. § 481 *et seq.* (the "LMRDA") provides a reasonable first step. As the Court is aware, the LMRDA provides for judicial review of the Secretary's decision on a complaint regarding a union election. The Secretary is required to provide a Statement of Reasons for a

The Honorable Victor Marrero
January 22, 2018
Page 2

refusal to require a new election, and that Statement is subject to an "arbitrary and capricious" standard of review. *See, generally, Dunlop v. Bachowski*, 421 U.S. 560 (1975), and *Ellis v. Chao*, 336 F.3d 114 (2nd Cir. 2003). This scope of review is consistent with Section 5 j. of the Stipulation, which expressly references the LMRDA, and with Section 10 of the Stipulation, which provides for judicial review in the manner provided under the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*.

The Candidates set forth a brief statement of argument below rather than presume that the Court desires full-argument at this time. The Candidates respectfully request that the Court enter an order setting a briefing schedule and specifying the length of briefs. The usual length for motion practice before the Court, as specified in the Court's Individual Rules of Practice, should provide sufficient opportunity for the parties to fully address the issues.

### Decision Appealed From

The Candidates appeal from the Decision to the extent it holds the Protest to be without merit. A true and correct copy of the Decision is attached as **Exhibit A**, and a true and correct copy of the Protest is attached as **Exhibit B**. Counsel for Solidarity filed a response to the Protest, and the Candidates replied to that response True and correct copies of those letters are attached as **Exhibits C and D**, respectively.

### Issues on Appeal

The Candidates present the following issues on Appeal:

1. Is the Decision a sufficient "Statement of Reasons" to permit effective judicial review as required by *Dunlop v. Bachowski*, 421 U.S. 560 (1975), and *Ellis v. Chao*, 336 F.3d 114 (2nd Cir. 2003)?

2. Is the Decision in accordance with the Election Rules and the Stipulation?

3. Is the Decision arbitrary and capricious?

### Case Background

The Protest arose out of a "robo-text" sent by or on behalf of Solidarity on or about November 28, 2017 (the "Message") to the cellphones of an undetermined number of Members without the Members' prior written consent. In sending the Message, Solidarity violated the Telephone Consumer Protection Act (the "TCPA") and the FCC's Telemarketing Rule. *See*, 47 U.S.C. § 227(b)(1)(A)(iii) and 47 CFR § 64.1200(a)(1)(iii) (prohibiting unsolicited texts to "any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service which the called party is charged for the call"). In addition, the Protest argued that the contents of the Message were defamatory, and therefore not legitimate content for a "fair election" as required by the Election Rules. In addition, the Protest asserted the Candidates' belief that Solidarity violated Section Three of the Election

Rules and breached their fiduciary duties by using Union information to obtain the cellphone numbers of Members.

The Protest set forth the relevant facts and the relevant law and requested a hearing. *See,* Exhibit B and the attachments thereto.

The analysis of the Decision with respect to the Protest consists of five paragraphs, occupying a little more than one page. *See,* Decision, Exhibit A, at 2-3. The first paragraph summarizes the Protest, and the last summarizes the IM's conclusions. The second simply states the conclusion that the IM advised the parties that he did not believe that even defamatory statements violated the Election Rules; and the third states in similar conclusory fashion that the IM did not believe he needed to determine whether the Message violated federal law and that, even if it did, that Solidarity "ran afoul of the Election Rules." Only the fourth paragraph contains any substantive discussion—the IM reports the findings of his "investigation", which is described in vague generalities, and states his conclusion that Solidarity did not abuse their positions as incumbents in obtaining telephone numbers.

## Argument

With all due respect, the Decision is nothing more than the IM's *ipse dixit* with respect to the Candidates' Protest with respect to defamation and illegal activity. As to the claim of breach of access to Union records, the general description of the IM's investigation and conclusory findings provides neither this Court nor the Candidates with any means to evaluate whether that investigation did discover, or was even likely to discover, the truth.

### A. *The Relevant Legal Standard*

The relevant legal standard that applies to the Protest is set forth in Paragraph 4 of Section Six of the Rules (emphasis added):

> If as a result of any protest filed with the IM, or as a result of any investigation undertaken by the IM either in response to a protest or on their [sic] own initiative, the IM determines that the Rules or *any law have been violated or that any other conduct has occurred that may prevent or has prevented a fair, honest and open election*, the IM may take whatever remedial action is appropriate.

As Paragraph 4 explicitly states, members are entitled to a fair and honest election conducted without violation of laws. The Decision, however, neither quotes, cites, nor refers to the standard of the Paragraph in its analysis of the Protest. Neither this Court nor the Members are given the slightest hint why defamation—which is not protected speech under the First Amendment—and uncontested violations of the TCPA and FCC regulations are not conduct that "may prevent …a fair, honest, and open election." Rather, the Decision simply states the IM's personal opinions. There is no legal or policy analysis whatsoever.

### B. *The Scope of Review*

The Decision does not refer to any cases involving unions under federal oversight or even to any cases under the LRMDA. Certainly, the standards for a "fair, honest, and open election" should be higher in a union under federal judicial oversight than in a union subject only to the LMRDA. After all, in the context of federal oversight, union democracy is already weakened, and acts that might not be as prejudicial to the election process in a union with a history of fair elections, can easily be the death knell to union democracy in a union where corruption has prevailed.

The Supreme Court set the standard for the IM's burden in *Dunlop, supra*. In that case, the Court held that, although a letter of decision by the Secretary may have sufficed as a brief statement of the grounds for denial' for the purposes of the Administrative Procedure Act:

> [P]lainly it did not suffice as a statement of reasons required by the LMRDA. For a statement of reasons must be adequate to enable the court to determine whether the Secretary's decision was reached for an impermissible reason or for no reason at all. For this essential purpose, although detailed findings of fact are not required, the statement of reasons should inform the court and the complaining union member of both the grounds of decision and the essential facts upon which the Secretary's inferences are based.

421 U.S. at 573-574. Thus, "[I]t is necessary for [the Secretary] to delineate and make explicit the basis upon which discretionary action is taken, particularly in a case such as this where the decision taken consists of a failure to act after the finding of union election irregularities.'" *Id.* at 572, citing *DeVito v. Shultz*, 300 F. Supp. 381, 383 (D.D.C 1969). Here, the IM's Decision may have stated the reasons he denied the Protest, but he did not give this Court the information it needs for the required judicial review.

The Second Circuit followed *Dunlop* in *Ellis v. Chao, supra*; and its opinion crystalizes the standard of review:

> Accordingly, *Dunlop* instructs that the Secretary must sue where she finds that the violation may have affected the outcome of the election. This interpretation—that the Secretary must sue whenever her investigation leads her to conclude that the outcome of a union election may have been affected by unlawful election irregularities—is consistent with *Dunlop*'s assumption that if the Secretary did not sue it would be either because "no violations occurred or ... they did not affect the outcome of the election."
> *Id.* at 573, 95 S.Ct. 1851.

336 F.3d at 120, footnote omitted. The reason for this rule is simple: the IM "nevertheless does have a duty to protect the union member's legitimate right to a fair election." *Id.* at 121.

The Second Circuit then held that the Statement of Reasons proffered by the Secretary was deficient because it did not allow the court to determine whether she had acted arbitrarily and capriciously in not bringing suit to void an election. 336 F.3d 114, at 123-124.

### C. The Decision Does Not Satisfy *Dunlop* and *Ellis*.

The Decision should be vacated whether this Court follows the procedures of the LRMDA or a higher standard. By failing to state any reasoning for his conclusions that Solidarity could freely engage in defamation and violations of federal laws, the IM breached his obligation to demonstrate to this Court that his denial of the Protest was not arbitrary and capricious.

The Decision suffers from the same defects that led *Ellis* to reject the Secretary's decision in that case. The principal defect is that the Decision consists of conclusory statements. As here, the entire statement in *Ellis* consisted of six pages, most of which had nothing to do with the merits. As here, no explication was given in *Ellis* as to the details of the evidence or the Secretary's reasoning. As here, the Secretary's investigation in *Ellis* was described only in the most general terms.

### D. The IM Should Be Required To Supplement The Decision.

Both *Dunlop* and *Ellis* hold that the remedy for an inadequate statement of reasons is to require the IM to prepare a statement that will allow this Court to determine whether the IM performed his duty in applying the Election Rules or whether he acted arbitrarily and capriciously in denying the Protest for reasons not consistent with or authorized by the Election Rules.

Because a "remand" to the IM is the appropriate first step on this appeal, argument regarding the second and third issues, whether the Decision is in accordance with the provisions of the Stipulation and the Election Rules and whether it is arbitrary and capricious can only be addressed efficiently and sufficiently after the IM issues a supplemented Decision.

### CONCLUSION

Federal oversight of the Carpenters' Union has not restored union democracy. When only 5,000 [number of votes cast] votes are cast in an election with 16,500 [number of eligible voters], the only possible conclusion is that Members do not have faith in the legitimacy of the process. And they will not have faith, and new candidates will not run, if the Election Rules are not vigorously enforced. The Decision ignores the importance of the Election Rules and denies the respect the Candidates and the Members deserve. What they both deserve is a thorough and well-reasoned disposition of the Protest.

The Candidates request a hearing on this appeal.

Respectfully submitted,

/s/ Thomas D. Gearon

Counsel for Candidates McKenna, Corrigan, and DeFalco

---

*parties are* The Government and interested [parties are] directed to respond by 2-28-18. by letter not to exceed five (5) pages, to the matter set forth above by the appealing Candidates.

SO ORDERED.

2-21-18
DATE — VICTOR MARRERO, U.S.D.J.