590 Madison Avenue, 20th Floor, New York, NY  10022-2524 ∎ p212 223-4000 ∎ f212 223-4134



Glen Garrett McGorty
(212) 895-4246
GMcGorty@crowell.com

February 28, 2018

**VIA ECF**

Honorable Victor Marrero
United States District Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007-1312

     Re:    **United States v. District Council of the United Brotherhood of Carpenters, 90 Civ. 5722 (VM)**

Dear Judge Marrero:

    As the Court is aware, I am the appointed Independent Monitor ("IM") in the above-referenced matter.  On January 22, 2018, District Council members William McKenna, Kevin Corrigan, and John DeFalco (the "Candidates"), who recently sought election to the District Council leadership as part of the "Members Voice Slate," wrote to the Court regarding my January 10, 2018 denial of their formal election protest (and my simultaneous denial of their opponent's election protest of their conduct).  Specifically, the Members Voice Slate had sought to disqualify or otherwise sanction the incumbent candidates (Joseph Geiger, Stephen McInnis, and Michael Cavanaugh, running for re-election as part of the "Solidarity Slate") for alleged violations of the Election Rules (the "Appeal").

    On February 22, 2018, the Court issued an Order directing the Government and interested parties to respond by February 28, 2018 to the Appeal.  I have endeavored to do so below, although the complexities presented by this Appeal and my desire to fully apprise the Court of all relevant facts and circumstances have necessitated a response that exceeds the Court's requested five-page limit, which I respectfully request the Court allow for this filing.

    For the reasons set forth below, I respectfully request that Your Honor deny the Candidates' Appeal.

Honorable Victor Marrero
February 28, 2018
Page 2

## I.

## Background

In December 2017, the District Council held an election for the offices of Executive-Secretary Treasurer ("EST"), President, and Vice President pursuant to a mail-in ballot process intended to involve the entire District Council membership. The nomination process for this election commenced in August 2017 and at its conclusion, my office approved four candidate slates, each of which was comprised of two or more District Council members, and one independent candidate to run for office. Under the Election Rules that had been previously reviewed by the parties, recommended by my office, and approved by the Court (the "Election Rules," *see* Exhibit 1), campaigning officially commenced on October 4, 2017 and almost immediately, my office began receiving tips from various members related to potentially improper campaign conduct. Despite these various complaints, only two formal protests were filed with my office, one on November 30, 2017, from the Members Voice Slate (the "Nov. 30th Protest," *see* Exhibit 2) and a second on December 11, 2017 from the incumbent Solidarity Slate (the "Dec. 11th Protest," *see* Exhibit 3).

The Nov. 30th Protest raised several complaints concerning text messages sent by the incumbent Solidarity Slate to members of the District Council in furtherance of the Solidarity Slate's election campaign. Specifically, the Nov. 30th Protest alleged that the Solidarity Slate violated provisions of Section 3 of the Election Rules because the text messages (i) were "false and defamatory"; (ii) were sent to members in violation of the FCC's Telephone Consumer Protection Act ("TCPA"); and (iii) were sent to members' personal telephone numbers which were illicitly obtained from District Council databases. On December 6, 2017, my office received a supplemental response from counsel for the Members Voice Slate further detailing the allegations contained in their Nov. 30th Protest; this included sworn, factual affidavits from each of the Candidates. On December 11, 2017, the Solidarity Slate, also acting through counsel, provided materials answering a series of questions that my office raised during its investigation of the Nov. 30th Protest. *See* Exhibit 4.

The Dec. 11th Protest similarly alleged that the Members Voice Slate violated the Election Rules. This protest alleged that the Members Voice Slate: (i) provided false statements to my office in connection our investigation into the Nov. 30th Protest (*e.g.*, alleging that certain statements contained in the December 6, 2017 affidavit of Members Voice Slate candidate John DeFalco were false); (ii) submitted improper financial disclosures (in violation of Section 4.2(c) of the Election Rules); (iii) received unlawful contributions (in violation of Section 4.2(c) of the Election Rules); and (iv) made false and misleading statements as part of their campaign concerning the Solidarity Slate's stance on politicized union issues. On December 15, 2017, the Members Voice Slate, acting through counsel, submitted a written response to inquiries it received from my office as part of our investigation into the allegations contained in the Dec. 11th Protest. *See* Exhibit 5.

Honorable Victor Marrero
February 28, 2018
Page 3

In accordance with the Election Rules, within seven (7) days of receiving these protests, my office commenced an investigation into the various allegations, although I deferred taking action until my team could complete its investigation and fact gathering. In the interim, while my office's investigation proceeded, the mail-in ballot election concluded on December 21, 2017. All ballots received by that date were tallied in accordance with the Election Rules by the American Arbitration Association ("AAA") in coordination with my office and under the supervision of representatives selected by each of the candidates and slates. On December 22, 2017, designated representatives for all candidates (and slates) and I were present at the AAA's offices for its counting of the mail-in ballots and tabulation of the results. The AAA generated its own certification of the election results, which indicated that the incumbent Solidarity Slate would continue in office. *See* Exhibit 6. On January 3, 2018, I formally certified those results by providing the AAA certification to the parties in this case (the Government and the District Council). *See* Exhibit 7.

Thereafter, on January 10, 2018, at the conclusion of my team's investigation, I issued a written ruling in which I advised the District Council of my determination that neither the Nov. 30th Protest nor the December 11th Protest presented an actionable violation of the Election Rules (the "Jan. 10th Decision") and therefore, the election results would stand. *See* Exhibit 8.

As permitted by the Election Rules, by letter dated January 22, 2018, counsel for the Members Voice Slate filed the instant Appeal with this Court seeking the Court's review of my January 10th Decision and requesting that I be required to "prepare a statement that will allow the Court to determine whether the IM performed his duty in applying the Election Rules or whether he acted arbitrarily and capriciously in denying the Protest for reasons not consistent with or authorized by the Election Rules." *See* Exhibit 9, at 5.

**II.**

**Standard of Review**

I must first address the Candidates' misunderstanding regarding the standard of review applicable to their Appeal and any other action or decision that I may take under the authority vested in me by this Court. In their Appeal, the Candidates assert incorrectly that neither the Election Rules nor the relevant Stipulation and Order "specifies a procedure governing an appeal under the Election Rules." (Exhibit 9, at 1). Counsel for the Candidates then proceeds to submit that this Court should therefore adopt the standard of review set forth in the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §481 *et seq.* (the "LMRDA") as interpreted by

the U.S. Supreme Court in *Dunlop v. Backhowski* and its progeny. I submit that both the LMRDA and the cases interpreting it are inapposite to the issues presently before the Court.[1]

The Stipulation and Order entered on April 24, 2017 (the "2017 Stipulation and Order"), which incorporated by reference key provisions set forth in the earlier Stipulation and Order entered on April 18, 2016 (the "2016 Stipulation and Order"), is quite clear regarding the applicable standard of review for any appeal to this Court in relation to my decisions rendered and actions taken thereunder, including, specifically, during the course of any District Council election. In fact, Section 10 of the 2016 Stipulation and Order, as incorporated by reference into the 2017 Stipulation and Order, explicitly addresses judicial review in the context of District Council elections, providing:

> **Judicial Review.** Final decisions pursuant to Paragraph 5.b.iii of this Stipulation and Order[2], **and the IM's certification of election results pursuant to paragraph 5.j of this Stipulation and Order**, may be reviewed by the Court upon a petition for review by the District Council, the Government, the Independent Monitor, or any aggrieved person. Any such petition must be filed within 30 days of the decision for which review is sought. **In reviewing the decision, the Court will apply the same standard of review of final agency action under the Administrative Procedures Act, 5 U.S.C. §701 *et seq.*** to the decision or recommendation of the IM at issue….

*See* 2016 Stipulation and Order, at §10 (emphasis added). As incorporated in the 2017 Stipulation and Order, the Administrative Procedures Act, 5 U.S.C. §701 *et seq.* (the "APA"), provides the applicable standard of review, not the LMRDA. Under §706 of the APA:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall –
>
> …

---

[1] Nevertheless, to the extent that Your Honor believes that the LMRDA has any application to the Candidates' Appeal, I respectfully submit that my January 10th Decision satisfies the LMRDA.

[2] Paragraph 5.b of the 2016 Stipulation and Order, as incorporated into the 2017 Stipulation and Order, outlines the IM's authority to investigate and determine that certain conduct violates federal law or is otherwise inconsistent with the objectives of the 2017 Stipulation and Order.

Honorable Victor Marrero
February 28, 2018
Page 5

    (2) hold unlawful and set aside [the IM's] actions, findings, and conclusions found to be -

        (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

        (B) contrary to constitutional right, power, privilege, or immunity;

        (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

        (D) without observance of procedure required by law;

        (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

        (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

    In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

*See* APA, 5 U.S.C. §706(2).

As this Court recently recognized in *United States v. District Council of New York City (Daly)*, while the IM's conclusions of law are subject to *de novo* review, the IM's "findings of fact 'are entitled to affirmance on review if they are reasonable and supported by substantial evidence in the record as a whole;' they may be 'set aside only if they are unsupported by substantial evidence.'" *United States v. Dist. Council of New York City*, No. 90 CIV. 5722 RMB, 2015 WL 5916738, at *4 (S.D.N.Y. Oct. 7, 2015), aff'd sub nom. *Daly v. United States*, 669 F. App'x 19 (2d Cir. 2016), *citing United States v. Dist. Council of New York City*, 941 F.Supp 349, 362 (S.D.N.Y. 1996).

The Second Circuit has also recently addressed this standard of review in relation to the District Council. In affirming this Court's decision in the *District Council of New York City (Daly)*, the Second Circuit opined that "substantial evidence" in the context of reviewing the IM's decisions is intended to be a deferential standard. *See Daly v. United States*, 669 F. App'x 19, 20-21 (2d Cir. 2016). Specifically, the Second Circuit explained that the "… bar is not especially high; it is met by 'less than a preponderance, but more than a scintilla of evidence' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *See id.*

Put differently, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's [or as here, the IM's] finding from being supported by substantial evidence." *See United States v. Int'l Bhd. of Teamsters,* 170 F.3d 136, 143 (2d Cir. 1999); *see also United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 379-80 (2d Cir. 2001) (discussing the "extremely deferential standard of review" incorporated into the Teamsters' Consent Decree by way of reference to the Administrative Procedures Act). The Court must defer to the IM's conclusions and avoid substituting its own judgment for that of the IM. *See Watsontown Trucking Co. v. U.S. Dep't of Labor,* No. 16 CIV. 9166 (KPF), 2018 WL 456300, at *3 (S.D.N.Y. Jan. 17, 2018), *quoting Judulang v. Holder,* 565 U.S. 42, 53 (2011).

I respectfully submit that the weight of the evidence reviewed by my office in connection with its investigation into the two protests identified above supported my determination that neither protest identified an actionable violation of the Election Rules.[3]

---

[3] On Monday, February 5, 2018, my office received a copy of a letter, dated January 26, 2018, addressed to the General President, Mr. Douglas J. McCarron, at the United Brotherhood of Carpenters ("UBC") Headquarters in Washington, D.C. In this letter, the Candidates of the Members Voice Slate make additional allegations of Election Rules violations by the Solidarity Slate, beyond those included in their Nov. 30th Protest, and appeal to the UBC my certification of the 2017 election results. As the Election Rules and Stipulation and Order make clear, the IM retains exclusive authority, subject only to this Court's review, to interpret and enforce the Election Rules and to certify the results of any election. *See* Election Rules, Section One (Ex. 1). The Election Rules do not vest any authority in the UBC to monitor, review, or overturn any decision that I may render in my capacity as IM. To its credit, in a February 20, 2018 response to the Candidates, the UBC acknowledged all of this and respectfully requested that my office review and consider responding to the January 26, 2018 letter. As some of the claims raised in that letter were not part of a formal protest, or otherwise came to light at the close of the election, I have asked my investigative team to conduct a review of the facts alleged therein. After the review, I will consider issuing a written response and copy the UBC at their request. In any event, the issues raised by the Members Voice Slates' January 26, 2018 letter bear no relevance to the current issues before Your Honor, which are limited to their Nov. 30th Protest and my ruling upon it.

Honorable Victor Marrero
February 28, 2018
Page 7

### III.

### Denial of the Nov. 30th Protest

The Nov. 30th Protest raised three issues for my consideration:

- <u>Issue 1</u>: Whether the text messages sent by the Solidarity Slate were "false and defamatory;"

- <u>Issue 2</u>: Whether the text messages sent by the Solidarity Slate were sent to members in violation of the FCC's Telephone Consumer Protection Act ("TCPA"); and

- <u>Issue 3</u>: Whether the Solidarity Slate illicitly obtained from District Council databases Union members' personal telephone numbers used to send campaign-related text messages.

### Issue 1: Alleged Defamation

Shortly after receiving the Members Voice Slate's Nov. 30th Protest, I preliminarily advised the Candidates, by email dated December 5, 2017, that my team disagreed with their contention that its role under the Election Rules extended to evaluating allegations of "defamation" or "slander," or similar concerns regarding alleged violations of Federal communications law (as addressed below). *See* Exhibit 10.

My team received numerous allegations of improper campaigning over the course of the 2017 election process – both against the Solidarity Slate and against the Members Voice Slate in their respective campaign materials and speeches, involving the candidates themselves as well as by their numerous surrogates. A great number of the complaints centered around the underlying truth of the statements, whether they took the form of criticisms of or attacks on the character of people running for office, or factual assertions about contract negotiations or other prior leadership decisions which one side offered as criticism and the other declared to be untrue. Not long after this back-and-forth began, my team ultimately concluded that the resources necessary to effectively pin down these campaign statements – especially those which were not relegated to print – and then conduct a mini-trial on the veracity of every such statement was simply untenable and unlikely to serve any purpose intended by the Consent Decree or the Election Rules. Furthermore, from the standpoint of ensuring a fair, honest, and open election process, my team concluded that the sheer number and scope of these statements, combined with the overall negative atmosphere of the election campaign process, supported our belief that no one statement or grouping thereof had the potential of materially impacting any one member's, including the Candidates', chances of being elected.

Honorable Victor Marrero
February 28, 2018
Page 8

Nevertheless, had my team found any statement to be so egregiously false on its face or more importantly, made in glaringly bad faith with an awareness it was wholly false, I may have had a different view; however, that was not the case here at all.  No matter how distasteful or negative many of the statements may have been, none rose to the level that I believed had the potential of materially impacting the election process.  For these reasons, my team concluded that none of the allegedly actionable statements violated the Election Rules in any way.[4]

I will note, however, that I was so disappointed with the tenor of the campaign that the Nov. 30th Protest – which focused on a particularly pointed and personal attack from the Solidarity Slate on the Members Voice Slate in the form of a "poster" which was sent via text message to Union members – did prompt me to issue my only mid-election ruling, which went beyond the Election Rules themselves.  In a December 5, 2017 e-mail to all candidates, I chastised the nature of this negative campaigning, directed the Solidarity Slate to immediately discontinue the use of the offending material, and directed all candidates and slates that all material had to be specifically approved by me before it could be used.  *See* Exhibit 10.  With some exceptions – notably a member of the Members Voice Slate who posted videos without my approval and who ceased posting the videos when I raised a concern – the candidates followed my directive and I approved materials for the remainder of the campaign.

### Issue 2: Alleged Violation of Federal Communications Law

We similarly declined to conclude that the Solidarity Slate's text messages violated Federal communications law (*e.g.*, TCPA).  As I explained in my email of December 5th to all candidates and slates (*see* Exhibit 10), it was my belief that whether or not the commercial use of a text messaging service to send campaign text messages to members' personal mobile phones violated these regulations was not a question ripe for consideration in the context of alleged violations of the Election Rules.

The basis for my decision was that even if the Solidarity Slate's use of a commercial text messaging service did violate Federal communications law, thereby possibly establishing a basis for a legally cognizable cause of action for the recipients of such text messages, those facts alone would not necessitate any finding that the Solidarity Slate violated the Election Rules.  Two primary considerations drove my decision.  First, even if I were qualified to adjudicate such a violation, it was not clear that such conduct was remotely willful or done in bad faith – concerns that *may* impact my authority under the Election Rules.  In fact, the Solidarity Slate's use of a *commercial* text messaging service and further, doing so under *advice of counsel* – which I determined to be the case – undermined any claim that the members of the Solidarity Slate flagrantly and willfully violated Federal communications law.  Had I concluded that this was not

---

[4] The Election Rules are also silent on policing the content of campaign content generally and make no reference to any intent to have the IM investigate and resolve alleged defamation or slander.

the case, evidence of character ill-suited to run a corruption-free and compliant District Council would have been far more concerning to me as the election monitor than any technical violation of Federal communication rules (assuming one took place). But I do not believe that is what happened here.

Second, not unlike the negative campaigning that I witnessed throughout the 2017 election, I determined that the intrusive robo-text messaging presented as much a danger of turning off voters as it did securing voters. For that reason as well, I also did not believe the use of such text messaging, whether consistent with or somehow violating Federal communications law, presented any risk of disrupting an otherwise "fair, honest, and open election."

### Issue 3: Misuse of District Council Property

Unlike the Members Voice Slate's other two allegations, however, this allegation presented clear concern of a potential Election Rules violation and I immediately directed my team to undertake a comprehensive and thorough investigation into its merits. My team's investigation consisted of: (1) interviewing District Council employees; (2) reviewing District Council databases and other electronic data in the District Council's possession and control; and (3) collecting information from the Solidarity Slate, its members, and their counsel in response to a series of questions regarding the methodology employed to gather members' personal telephone numbers.

Based on these investigative efforts, my team concluded that the Solidarity Slate did not obtain any member's personal cellphone number from District Council property, but rather acquired this information directly from their personal files and the personal files of surrogates, campaign workers, and supporters. This was corroborated by our review of the list of numbers itself, which we determined clearly was not from the District Council's databases based on our review of the District Council's systems and related interviews of District Council personnel to confirm that fact. Furthermore, the Solidarity Slate produced receipts evidencing their use of a private, commercial service to send the campaign robo-text messages, summarily disproving any allegation that the Solidarity Slate used District Council facilities for this purpose. Based upon the foregoing, we determined that the Nov. 30th Protest – or at least the matters which we believed were properly considered under the Election Rules – was without merit.

## Conclusion

      Based on the foregoing, which I previously outlined for the Candidates in my January 10th Decision, I ask the Court to affirm my finding that the Nov. 30th Protest failed to present an actionable violation of the Election Rules and accordingly, deny the Candidates' Appeal.

Respectfully submitted,

Glen G. McGorty
Independent Monitor

cc:    **VIA E-MAIL OR FIRST CLASS MAIL**

    AUSA Benjamin Torrance
    United States Attorney's Office
    Southern District of New York
    86 Chambers Street, 3rd Floor
    New York, NY 10007

    Honorable Barbara Jones
    Rita K. Maxwell, Esq.
    Bracewell LLP
    1251 Avenue of the Americas, 49th Floor
    New York, NY 10020

    James M. Murphy, Esq.
    Spivak Lipton LLP
    1700 Broadway
    New York, NY 10019

    Thomas D. Gearon, Esq.
    Law Offices of Thomas D. Gearon, P.C.
    185 Montague St., Suite 1201
    Brooklyn, NY 11201