```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------- X
UNITED STATES OF AMERICA,         :
                                  :
            Plaintiff,            :
                                  :      90 Civ. 5722 (VM)
      - against -                 :
                                  :      DECISION AND ORDER
DISTRICT COUNCIL OF NEW YORK      :
CITY AND VICINITY OF THE          :
UNITED BROTHERHOOD OF             :
CARPENTERS AND JOINERS            :
OF AMERICA, et al.,               :
                                  :
            Defendants.           :
-------------------------------- X
```

**VICTOR MARRERO, United States District Judge.**

By letter dated January 22, 2018, William McKenna, Kevin Corrigan, and John DeFalco (the "Candidates") appealed the decision of the Independent Monitor ("IM") denying the Candidates' protest regarding alleged violations of the Final Rules for the 2017 Election of the Officers of the New York City District Council of Carpenters ("Election Rules"). ("Appeal," Dkt. No. 1783.) On February 28, 2018, the IM responded, requesting that the Court deny the Candidates' Appeal. ("February 28 Letter," Dkt. No. 1784.) Also on that date, the Government wrote to the Court, agreeing with the IM that the Appeal should be denied.[1] (Dkt. No. 1785.)

---

[1] The Court notes that in its letter, the Government also stated that the Candidates did not provide a copy of the Appeal to the Government, and that the Government "objects to the filing of any motions without service on the parties in accordance with Fed. R. Civ. P. 5." (Dkt. No. 1785 n.1.) The Court reminds the parties of their obligations under the Federal

For the reasons outlined below, the Candidates' Appeal is DENIED.

## I. BACKGROUND

In light of this case's nearly three-decades-long history, the Court assumes familiarity with the factual background and lengthy procedural developments in this litigation.

This appeal arises from the December 2017 election for the offices of Executive-Secretary Treasurer, President, and Vice President for the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America ("District Council"). On November 30, 2017, the Candidates, who sought election as part of the Members Voice Slate, filed a formal protest with the IM regarding alleged violations of the Election Rules by Solidarity Slate candidates (the "Protest," Dkt. No. 1784, Ex. 2). In the Protest, the Candidates alleged that text messages sent by or on behalf of the Solidarity Slate (1) were false and defamatory in nature and therefore in violation of the Election Rules; (2) violated the Telephone Consumer Protection Act and a Federal Communications Commission

---

Rules, but does not find that any prejudice resulted in this instance warranting further action by the Court.

("FCC") Telemarketing Rule, see 47 U.S.C. § 227(b)(1)(A)(iii)[2] and 47 CFR § 64.1200(a)(1)(iii)[3]; and (3) constituted breaches of fiduciary duties because the Solidarity Slate purportedly used union information to obtain the cellphone numbers of members. (See Appeal at 2-3.) The purported basis for the Protest is Paragraph 4 of Section 6 of the Election Rules, which provides that if the IM "determines that the Rules or any law have been violated or that any other conduct has occurred that may prevent or has prevented a fair, honest and open election, the IM may take whatever remedial action is appropriate." (See Protest at 1-2 (quoting Election Rules § 6 ¶ 4).)

On January 10, 2018, the IM denied the Protest, finding that it -- along with a protest filed by the Solidarity Slate against the Members Voice Slate -- was "without merit or

---

[2] "It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-- (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C.A. § 227(b)(1)(A)(iii).

[3] "No person or entity may: (1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 C.F.R. § 64.1200(a)(1)(iii).

3

otherwise not actionable under the Election Rules." ("Decision," Dkt. No. 1784, Ex. 8 at 5.) The Candidates filed this Appeal on January 22, 2018, pursuant to the Election Rules, which permit individuals aggrieved by a decision of the IM to seek review by this Court within thirty calendar days after the IM's decision. (Election Rules § 6 ¶ 5.)

## II. DISCUSSION

As a threshold matter, the parties dispute the appropriate standard of review by the Court. The Candidates contend that the legal standard relevant to the Court's review of the Decision is the standard applicable to a review of a decision by the Secretary of Labor under the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 481 et seq., namely an "arbitrary and capricious" standard as interpreted by the United States Supreme Court in Dunlop v. Bachowski, 421 U.S. 560 (1975), and by the Court of Appeals for the Second Circuit in Ellis v. Chao, 336 F.3d 114 (2d Cir. 2003). (See Appeal at 1-2.) In accordance with this line of authority, the Candidates propose that a decision by the IM must "be adequate to enable the court to determine whether the . . . decision was reached for an impermissible reason or for no reason at all" and must "make explicit the basis upon which discretionary action is taken." (Id. at 4 (quoting Dunlop, 421 U.S. at 572-73).)

4

According to the Candidates, the Decision fails under this standard of review because it "is nothing more than the IM's ipse dixit with respect to the Candidates' Protest with respect to defamation and illegal activity." (Appeal at 3.) Moreover, with respect to the claim "of breach of access to Union records," the Candidates argue that the IM's description of his investigation was insufficiently vague, that his findings were merely conclusory, and that the Decision "provides neither this Court nor the Candidates with any means to evaluate whether th[e] investigation did discover, or was even likely to discover, the truth." (Id.)

By contrast, the IM contends, and the Government concurs, that the April 2017 Stipulation and Order (Dkt. No. 1757) provides the applicable standard of review. (See February 28 Letter at 4; Dkt. No. 1785.) The April 2017 Stipulation and Order calls for the continuation of all provisions of the April 2016 Stipulation and Order except as specified, and the April 2016 Stipulation and Order provides that when reviewing petitions regarding the IM's certification of election results, the "Court will apply the same standard of review of final agency action under the Administrative Procedure Act, 5 U.S.C. § 701 et seq. to the decision . . . of the Independent Monitor at issue." (Dkt. No. 1678 § 10.) The Court agrees that this is the appropriate

5

standard of review because the Appeal concerns a decision by the IM relating to his supervision and certification of election results.

The standard of review, as defined under the Administrative Procedure Act ("APA") is as follows:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be--
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

The Court of Appeals for the Second Circuit has described the APA standard of review as "an extremely deferential standard of review." United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 379 (2d Cir. 2001) (quoting United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 19 F.3d 816, 819 (2d Cir. 1994)). As previously described by this Court,

> The IM's findings of fact are entitled to affirmance on review if they are reasonable and supported by substantial evidence in the record as a whole; they may be set aside only if they are unsupported by substantial evidence. Substantial evidence is more than a mere scintilla but something less than the weight of the evidence, and the substantial evidence standard may be met despite the possibility of drawing two inconsistent conclusions from the evidence. The court must consider the reasonableness of an agency action based on the record in existence at the time of the decision; it will not engage in an evidentiary hearing or a de novo review. In considering a relevant question of law under the APA, the reviewing court asks whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

United States v. Dist. Council of New York City, No. 90-cv-5722, 2015 WL 5916738, at *4 (S.D.N.Y. Oct. 7, 2015), aff'd sub nom. Daly v. United States, 669 F. App'x 19 (2d Cir. 2016)(internal quotation marks and citations omitted).

A. Allegedly Defamatory Statements

In the Decision, the IM stated that he did not believe any of the statements that allegedly constituted defamation or slander -- "no matter how distasteful or negative -- were

7

in violation of any of the Election Rules (which are silent on issues of defamation and slander, or campaign content in general)." (Decision at 2-3.) In his February 28 Letter, the IM added that it would have been "untenable" and unlikely to serve the purposes of the Consent Decree or Election Rules to "conduct a mini-trial" regarding the truth of every allegedly defamatory and slanderous statement. (February 28 Letter at 7.) Moreover, the IM concluded that no one statement would have had a material effect on the outcome of the election process because many negative statements from both sides were brought to his attention, and the election had taken on an overall negative tone. (Id.)

The IM also noted that although he ultimately denied the Protest, he did issue a mid-election ruling, which banned all candidates from making personal, negative attacks; ordered the Solidarity Slate to cease and desist using the offending campaign material in question; and required all candidates to receive the IM's approval on future election materials. (See Dkt. No. 1784, Ex. 10.)

The Court finds that the IM's Decision regarding alleged defamation was "reasonable and supported by substantial evidence in the record as a whole," and not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Dist. Council of New York City,

2015 WL 5916738, at *4. First, the Court notes that the section of the Election Rules upon which the Candidates base their Protest states that "[i]f as a result of any protest . . . the IM determines that the Rules or any law have been violated or that any other conduct has occurred that may prevent or has prevented a fair, honest and open election, the IM <u>may</u> take <u>whatever</u> remedial action is appropriate." (Election Rules § 6 ¶ 4 (emphasis added).) This permissive and broad language grants the IM discretion in deciding whether to act and what action to take as a result of a suspicion of unlawful behavior. Such discretion is in line with "the presumption of trust and good faith embodied in the parties' agreed-to selection of this [IM], which entitle[s] the [IM] to some latitude in basing decisions upon his own perceptions, conclusions, and assertions regarding the information he has received." <u>United States v. Dist. Council of New York City</u>, No. 90-cv-5722, 2011 WL 5116583, at *5 (S.D.N.Y. Oct. 26, 2011) (internal quotation marks and citation omitted).

Second, although the IM ultimately denied the Protest, he did take "remedial action" in the form of issuing a ruling addressing the negative tone of the election in general and certain offending materials in particular, and requiring

9

approval of election material going forward. (See February 28 Letter at 8; Dkt. No. 1784, Ex. 10.)

Third, that the IM decided that it was not practical to hold a mini-trial with respect to the falsity and defamatory nature of every offending statement is understandable and well-reasoned. After reviewing the Protest, as well as supplemental submissions from the parties (see Dkt. No. 1784 Ex. 4; February 28 Letter at 2), the IM determined that no statement was "so egregiously false on its face" or "made in glaringly bad faith with an awareness it was wholly false" to have "the potential of materially impacting the election process." (February 28 Letter at 8.) The Court is persuaded that it was reasonable for the IM to come to this conclusion and agrees that it would have been unnecessary under the Election Rules and the purpose of the Consent Decree -- which included safeguarding against District Council members engaging in racketeering activity or associating with affiliates of any La Cosa Nostra crime family (see Dkt. No. 1678 at 1) -- to "pin down" every allegedly improper statement (February 28 Letter at 7).

B. Alleged Violations of Federal Communications Law

Similarly, the IM found that "whether or not the commercial use of a texting service to send campaign texts to members violated the [FCC] regulations was not a question I

10

needed to address under the Election Rules" because even if the use of a texting service did violate an FCC regulation, "I do not believe that means the Solidarity Slate ran afoul of the Election Rules." (Decision at 3.)

For similar reasons to those stated above, the Court is persuaded that the IM's Decision with respect to this issue was reasonable, supported by substantial evidence, and was not arbitrary or capricious. The Candidates do not cite to any Election Rule that specifies in what manner and to what extent the IM is required to look into alleged violations of law. The Election Rule cited by the Candidates dictates only that if the IM determines that a law has been violated, he "may take whatever remedial action is appropriate." (Election Rules § 6 ¶ 4.) This does not mean that the IM must expend unlimited efforts to determine if a violation of a federal communications law or regulation occurred if the IM has determined that such violation would not have materially affected the election.

In the February 28 Letter, the IM explained that he obtained receipts showing that the Solidarity Slate members used a commercial text messaging service, and did so on the advice of counsel, which "undermined any claim that the members of the Solidary Slate flagrantly and willfully violated Federal communications law." (February 28 Letter at

11

8.) Moreover, the IM did not believe that text messages posed a risk of disrupting a "fair, honest, and open election" because of the likelihood that receiving a robo-text message would turn off voters rather than attract them. (See id. at 9.)

The Court is persuaded that it was reasonable for the IM to decide not to expend additional resources to investigate a violation of a federal regulation that (i) was not related to organized crime, racketeering, corruption, or other crimes more directly relevant to the purposes underlying the Consent Decree, and (ii) was unlikely to materially influence the election results.

C. Alleged Use of Union Information to Obtain Cellphone Numbers

Finally, with respect to whether the Solidarity Slate candidates abused their positions as incumbent District Council officers to obtain union members' cellphone numbers, the IM conducted an investigation that included: interviewing a number of District Council employees, reviewing electronic data at the District Council, and requesting additional information from the Solidarity Slate and their counsel -- including receipts demonstrating that the Solidarity Slate used a private service, not the District Council facilities, to send the text messages in question. (See Decision at 3.)

According to the IM, unlike the first two allegations in the Protest, this allegation of misuse of District Council property posed a "clear concern of a potential Election Rules violation." (February 28 Letter at 9.) However, based on his investigation, the IM determined that "the Solidarity Slate did not obtain the members' personal cellphone numbers from District Council databases, but rather from the members of the Slate, their surrogates, campaign workers, and supporters." (Decision at 3.)

With respect to this issue as well, the Court is persuaded that the IM's Decision was reasonable and supported by substantial evidence, and not arbitrary, capricious, or an abuse of discretion. For example, the IM provided to the Court a letter dated December 11, 2017, in which counsel for the Solidarity Slate provided answers to fifteen questions regarding how and by whom the lists used in disseminating campaign materials were created. (See Dkt. No. 1784, Ex. 4.) The Court need not "engage in an evidentiary hearing or a de novo review" of the factual determination by the IM that the allegations were without merit. Dist. Council of New York City, 2015 WL 5916738, at *4.

### III. ORDER

For the reasons stated above, it is hereby

**ORDERED** that the appeal of the Independent Monitor's

13

decision dated January 10, 2018 by William McKenna, Kevin Corrigan, and John DeFalco (Dkt. No. 1783) is DENIED.

**SO ORDERED.**

Dated:   New York, New York
         4 May 2018

                                        VICTOR MARRERO
                                            U.S.D.J.