590 Madison Avenue, 20th Floor, New York, NY  10022-2524 ▪ p212 223-4000 ▪ f212 223-4134



**Glen G. McGorty**
(212) 895-4246
GMcGorty@crowell.com

June 25, 2018

<u>VIA ECF AND HAND DELIVERY</u>

Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007-1312

      RE:    **United States v. District Council of the
                    United Brotherhood of Carpenters, 90 Civ. 5722 (VM)**

Dear Judge Marrero:

      Pursuant to Your Honor's memo endorsement regarding the June 15, 2018 letter submitted to Your Honor on behalf of Union members Michael Donnelly and Peter Corrigan (the "June 15 Letter"), the Office of the Independent Monitor ("IM") respectfully responds.

      As Your Honor is aware, on December 18, 2017, an employee of the New York City District Council of Carpenters ("District Council") reported an incident to the District Council Human Resources ("HR") Director, alleging a potential personnel policy violation by Stephen McInnis, the President of the District Council, occurring in or about April 2015.  The IM's office promptly conducted an investigation into the allegations led by David C. Burroughs of Lemire LLC, our chief investigator and former supervisory special agent of the FBI, the details of which were summarized for the Court in a letter filed <u>under seal</u> on March 5, 2018.  Upon conclusion of our review, we determined that Mr. McInnis had indeed committed a violation of the District Council's personnel policy and accordingly, should be terminated or given an opportunity to resign.  Joseph Geiger, the Executive Secretary-Treasurer of the District Council, concurred with these findings.  On February 16, 2018, Mr. Geiger requested Mr. McInnis's resignation from his elected position as President and from all related appointments, and McInnis subsequently complied.

      The June 15 Letter claims that, in the "months prior to the time frame indicated in the District Council's letter to the membership and the IM's Interim Report to your Honor advising of Mr. McInnis's resignation," allegations against Mr. McInnis had been reported to the IM's office, and that the leadership of the District Council and the IM's office failed to conduct an earlier investigation, exhibiting "negligence, misrepresentation, and conflict of interest."  These allegations mirror those made by Mr. Corrigan at the last District Council Delegate meeting on June 13, 2018, when he moved for the resignations of Mr. Geiger, Vice President Michael Cavanaugh, and Director of Operations Matthew

Hon. Victor Marrero
June 25, 2018
Page 2

Walker.  In his motion, Mr. Corrigan claimed that the leadership covered up Mr. McInnis's conduct and had not been truthful with the Delegate Body about the nature of its settlement with Mr. McInnis.[1]

As an initial matter, I want to be clear that the IM's office has never publicly provided details of the investigation or even the nature of the claims against Mr. McInnis, and any statements on this topic – including those in the June 15 Letter – are purely speculative.  We have maintained the confidentiality of all those involved and interviewed as part of the investigation, as that is crucial to our investigative function going forward.  The only exception was when we provided the Court with a brief summary of this investigation in our letter filed under seal on March 5, 2018.  So the Court is aware of all the details of the investigation, we are providing the Court ex parte with a full copy of the IM's confidential investigative report under separate cover.  We ask that it be maintained under seal for the same reasons.

Turning to the substance of the June 15 Letter, the claim that the District Council leadership and the IM's office were aware of Mr. McInnis's transgression but covered it up is simply untrue.  Based on my now over three years' experience as the IM, I have come to realize that certain small populations of Union members regularly propagate conspiracy theories and rumors and bring them to our attention.  When they are investigated and proven baseless, the complaining members more often than not complain that, as the system failed to yield the result they sought, it must be "corrupt."  As we have indicated repeatedly over the years of serving this role, action requires credible proof and our ability to take action is limited by the quality of the supporting evidence we can find.

Such was the case here.  During the period from May through December 2017, the IM's office received scores of allegations from members, many of which related to the incumbent officers of the District Council, including Mr. McInnis, and often from individuals with clear agendas and biases.  On the instant matter, both Messrs. Donnelly and Corrigan contacted Mr. Burroughs earlier in 2017 to make generalized and non-specific claims against Mr. McInnis.  For example, in late June 2017, Mr. Donnelly sent Mr. Burroughs a text stating, in substance, that Mr. Donnelly had "heard" (emphasis added) that a current District Council employee "made a formal complaint" to the District Council HR department about an incident involving Mr. McInnis "not too long ago. I do not know if this is true. Talk soon."  Two weeks prior to Mr. Donnelly's text, Mr. Donnelly also alleged, according to "word on the street," that Mr. McInnis had engaged in certain conduct involving a former employee.  At the same time, Mr. Burroughs heard similar allegations by Mr. Corrigan about this conduct, who also claimed that "secret payments" (possibly insurance payments) were made to the former employees to "keep them quiet."

It is notable that, at this time, both Mr. Donnelly and Mr. Corrigan had ample personal reasons to discredit Mr. McInnis.  Mr. Donnelly blamed Mr. McInnis for his recent termination, and leveled many

---

[1] Among other things, Mr. Corrigan claimed in his motion that the leadership had deliberately failed to disclose and seek approval for three months of COBRA health care payments provided to Mr. McInnis in connection with his resignation.  This is a complete fabrication.  I was present for the Delegate Meeting on March 14, 2018, when the Delegate Body was specifically informed about the McInnis investigation and the COBRA payments.  Mr. Corrigan was also present for the meeting and during the meeting sent a text to Mr. Burroughs discussing the relatively peaceful nature of the meeting and Mr. McInnis's resignation.  Mr. Corrigan commented in his text, "Very quiet.  If it only costs me a couple months of cobra I'm all good."  This text demonstrates Mr. Corrigan was not truthful with the Delegate Body on June 13, 2018, when he suggested the COBRA payments were hidden from the Delegates.

Hon. Victor Marrero
June 25, 2018
Page 3

allegations against Mr. McInnis which proved to be false (including specific claims regarding the reasons for his own firing, which were also fully investigated by the IM's office).  At the same time, Mr. Corrigan was preparing to campaign on behalf of the slate on which his uncle was running for President of the District Council (the same office that Mr. McInnis occupied at that time and for which he was running).  Notwithstanding these biased sources, the IM's office investigated all reasonable allegations it received during this period – including those referenced in the June 15 Letter – and did not find any corroborative evidence to confirm the veracity of any of them.  For example, based upon Mr. Donnelly's statement that a complaint had been made to the District Council HR Department, we immediately contacted the HR Director and learned that no one had ever lodged such a complaint against Mr. McInnis.[2]  Similarly, the idea of "secret payments" made to some unidentified complaining victim was determined to be completely unfounded.  In sum, the rumors of allegations against Mr. McInnis reported to the IM at any time prior to December 18, 2017, including those from Messrs. Donnelly and Corrigan, did not lead to any information upon which findings could be made, despite our efforts to investigate the claims wherever possible.[3]  Of equal importance, as with all confidential investigations, these unsubstantiated claims and the IM office's inquiries on the subject were <u>not</u> shared with the District Council leadership, contrary to Mr. Corrigan speculative claims at the Delegate meeting on June 13, 2018.  Mr. Corrigan is again mistaken, as the first time my office ever discussed these allegations with Mr. Geiger or any member of the District Council leadership was in connection with the official complaint lodged on December 18, 2018.

When allegations regarding Mr. McInnis's conduct finally came to light in a sufficiently credible, specific, and actionable manner – following the employee's notification on December 18, 2018 – they were immediately reported to my office and the matter was fully investigated.  District Council leadership was notified upon the conclusion of the investigation conducted by my office and swift action was taken.  The leadership was completely cooperative throughout the process and did not hesitate to act.  Simply, there was no cover-up.

Finally, it seems necessary to address an underlying concern alluded to in the June 15 Letter.  After Mr. Corrigan was terminated from the District Council's Business Representative Center for violating the Consent Decree, he learned that the IM's Office was reviewing his eligibility to remain an elected District Council delegate and local union officer.  Aware of this potential action against him, Mr. Corrigan appears, through the June 15 Letter, to attempt to preempt such action by claiming it to be "retaliation" for making these specious claims against the District Council leadership and my office.  Mr.

---

[2] When the IM later interviewed the employee following the complaint on December 18, 2017, it was confirmed that that individual had not previously brought a complaint to HR or anyone else in District Council leadership, despite what Mr. Donnelly had suggested.

[3] It is particularly outrageous that Mr. Corrigan chooses to personally bring the instant allegations of a cover-up.  When Mr. Burroughs and Mr. Corrigan discussed these rumors earlier in 2017, Mr. Corrigan claimed he had no specific information to substantiate his allegation against Mr. McInnis.  Then, after his termination, when Mr. Corrigan began to complain about a cover-up, he was reminded by Mr. Burroughs that he himself had offered no actual supportive facts, Mr. Corrigan stated, in substance, that, in his earlier interviews, he "had not told [Mr. Burroughs] everything."  It is ironic Mr. Corrigan now claims the IM failed to act earlier when he admittedly chose not to provide fulsome information when interviewed as part of that investigation.

Hon. Victor Marrero
June 25, 2018
Page 4

Corrigan will not be permitted to avoid the consequences of his conduct while a Business Representative. If and when the IM initiates action against Mr. Corrigan for his conduct pursuant to Section 5.b.ii of the Stipulation and Order in this matter, it will in no way be based on the matters raised in the June 15 Letter or any matter other than his violation of the Consent Decree.

      Should you require any additional information, please do not hesitate to notify me at Your Honor's convenience, including if you would any more detailed information in a supplemental response filed <u>under seal</u>.

Respectfully submitted,

Glen G. McGorty
Independent Monitor

cc:    **BY ECF/E-MAIL**
      AUSA Benjamin Torrance
      James Murphy, Esq.
      Barbara Jones, Esq.
      Joseph Geiger, EST
      Graham McHugh, President
      Michael Cavanaugh, Vice President
      Matthew Walker, Dir. of Operations
      Josiah Leicht, Chief Compliance Officer
      Donna Clancy, Esq.