UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA,

          Plaintiff,

                             90 Civ. 5722 (VM)

     v.

DISTRICT COUNCIL OF NEW YORK CITY
AND VICINITY OF THE UNITED
BROTHERHOOD OF CARPENTERS AND
JOINERS OF AMERICA, et al.,

          Defendants.
------------------------------------------------------------ x

## THE DISTRICT COUNCIL'S FIRST ANNUAL REPORT
## TO THE INDEPENDENT MONITOR AND THE COURT

**BRACEWELL LLP**
**31 West 52nd Street, Suite 1900**
**New York, NY 10019**

**SPIVAK LIPTON LLP**
**1040 Avenue of the Americas, 20th Floor**
**New York, NY 10018**

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................................1

OVERVIEW OF THE DISTRICT COUNCIL .................................................................3

    1.   The District Council's Role as a Labor Organization .......................................3

    2.   The District Council's Role as a Membership Association ...............................5

    3.   The District Council's Role as an Employer ....................................................7

CIVIL LITIGATION AND ADMINISTRATIVE AGENCY PROCEEDINGS...........................8

STRUCTURE AND CULTURE OF COMPLIANCE .............................................................11

    1.   Audit Committee, Accounting Department, and Union Trustees' Activities.................11

    2.   Amendments to the Bylaws ...........................................................................12

    3.   IT System Upgrades ......................................................................................13

    4.   The Coordination of Specialty Training ........................................................13

THE INCREASING ROLE OF THE INSPECTOR GENERAL AND THE OFFICE OF THE INSPECTOR GENERAL..........................................................................................15

    1.   IG Investigation of Barred Persons/Organized Crime Activity .....................16

    2.   IG Investigation and Successful Hearing and Determination of Expulsion from Union Membership of an Organized Crime Captain ...............................17

    3.   IG Investigation of District Council Representative Directly Referring Members to Jobs.........................................................................................17

    4.   Member Resigns from Union's Executive Committee following IG Investigation..........18

    5.   The IG is Able to Police Itself and Quickly Remedy Misconduct...................18

NEXT STEPS ..................................................................................................................20

## INTRODUCTION

This is the first annual report being submitted by the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Jointers of America (the "District Council" or the "Union") to the Independent Monitor and the Court under paragraph 5.h.ii. of the Stipulation and Order Regarding Extension of the Independent Monitor's Term and Modifications to Procedures filed on July 1, 2022 (ECF Dkt. 1877) (the "Stipulation and Order").  This report reviews "the implementation, effectiveness, and sustainability of [the District Council's] Compliance Structure and its programs and ongoing activities."  This report covers the period from July 1, 2022 through the date of filing, with additional information about future initiatives.

The Union's Compliance Structure includes:

(1) Bylaws that define the roles and responsibilities of District Council Officers, governing bodies, and, among other controls, establishes and maintains (a) the Office of the Inspector General, (b) Director of Operations, (c) Chief Accountant, (d) Director of Human Resources, and (e) Chief Compliance Officer; (2) a Code of Ethics, together with written policies and procedures including (a) an Accounting Manual that limits expenditures and establishes approval and documentation processes, (b) Personnel Policy Manual that governs hiring, discipline, and employee termination processes, and establishes behavioral expectations for all District Council employees, agents, and representatives, (c) Council Representative Manual that governs the conduct and daily activities of Council Representatives, (d) Investigative Guidelines that govern the conduct of the Inspector General's Office, (e) Job Referral Rules (a/k/a Out of Work List ("OWL") rules) governing nondiscriminatory job referrals, (f) Trial Procedures that govern the conduct of internal Union disciplinary proceedings brought by the Inspector General's Office and members of the District Council, (g) Shop Steward Code of Ethics, together with rules establishing the qualifications to become a Certified Shop Steward and procedures for reviewing whether a Shop Steward's responsibilities have been met, (h) procedures governing required daily electronic or telephonic reporting by Shop Stewards of District Council represented employees employed by signatory contractors and the hours they work, (i) rules establishing the qualifications for candidates for elected Union offices together with procedures for their election; and (3) processes to ensure that policies, procedures, and controls are effective, operating as intended, and are enhanced when required, including (a) the Audit Committee, charged with overseeing operation of the District Council's financial controls that includes employment of an accounting firm that is independent from the District Council's regular

accounting firm, (b) the Compliance Committee comprised of the District Council's officers, directors, managers, IG, Chief Compliance Officer, and counsel charged with overseeing, and enhancing when needed, the District Council's overall compliance program, (c) the establishment of an Independent Hearing Officer and related procedures to prevent and remedy organized crime activity among the membership, and (d) the establishment of oversight authority by the Executive Secretary-Treasurer and the Chief Compliance Officer of affiliated Local Unions and membership admission and transfer procedures. Each of these and other reforms, together with the ongoing enhancement of information and technology resources and mechanisms, were put in place and are being maintained and continually enhanced to safeguard against racketeers regaining influence over the District Council.

Stipulation and Order, 6th Whereas clause, at 2.

The structural and operational efforts and successes of the District Council are summarized in the Stipulation and Order, 7th Whereas clause at 2-3, providing in relevant part that:

WHEREAS, as described in the Eighth Interim Report of the Independent Monitor, dated and filed December 31, 2021 (Docket No. 1866) (the "Eighth Interim Report"), the District Council has continued to make progress towards self-governance under the Consent Decree. By way of summary, that progress includes (1) the appointment of an Independent Hearing Officer and the anti-corruption measures overseen by the District Council's Executive Secretary-Treasurer in conjunction with the Chief Compliance Officer under the Supplemental Stipulation and Order with Respect to the Independent Monitor's Authority Over Union Membership and the District Council's Oversight of Affiliated Local Unions filed February 1, 2021 (Docket No. 1857), the material provisions of which are incorporated into this Stipulation and Order; (2) the enhancement of the Office of the Inspector General, with the successful implementation of anti-corruption programs and the successful conduct of investigations; (3) the compliance review of the Business Representative Center; and (4) ongoing monitoring of the job referral system (a/k/a the OWL"), including updating procedures along with skills and certifications available for those on the list so that staffing requests from signatory employer-contractors can be more efficiently made; (5) the continued roles of the Compliance Committee and the Audit Committee; and (6) ongoing training of District Council officers, employees, and Shop Stewards. See Eighth Interim Report at respectively 10, 18-22, 22-23, 25, 27-28, and 28-30 [filed December 31, 2021 (ECF Dkt. 1866)].

This report will review the continuing efforts by the District Council to move forward in such a way as to be free from corruption and, if and when corruption is discovered, those

responsible are quickly sanctioned and the lessons learned are incorporated into structures, training, and enhanced self-monitoring.  The goal is to transition sooner rather than later to self-governance where the elected officers and appointed officials of the District Council, with the guidance of the District Council's Director of Operations, the Chief Compliance Officer, Inspector General and his office, and Counsel, will be able to function without needing the oversight of the Independent Monitor and his team.

## OVERVIEW OF THE DISTRICT COUNCIL

The District Council has three separate but intertwined roles.  What follows are brief descriptions of those roles and the District Council's compliance structures and procedures in each.

1.    <u>The District Council's Role as a Labor Organization</u>

The District Council's most obvious role as an unincorporated labor organization is to organize and represent carpenters and related skilled workers in collective bargaining with contractors and multiemployer associations representing contractors.  Collective bargaining involves organizing unrepresented carpenters and specialty crafts, primarily in the private sector building and construction industry, into the District Council through bottom-up organizing of workers under Section 9 of the National Labor Relations Act ("NLRA") and top-down organizing of contractors to execute individual collective bargaining agreements ("CBAs") or to join existing signatory multiemployer associations under the building and construction industry pre-hire proviso of Section 8(f) of the NLRA.  Both types of organizing involve the Area Standards Department and the Representation Center.  The staff of both are Council Representatives ("Council Reps"), with the staff of the latter commonly known as business agents.

The District Council must negotiate successor agreements for the CBAs that expire by their terms.  Negotiations are spearheaded by the three executive officers (i.e., the Executive Secretary-Treasurer, the President, and the Vice President).  These officers are required under the 1994 Consent Decree (ECF Dkt. 410) and the District Council's Bylaws to be elected by secret ballot every four years by the entire membership.  Working with those executive officers are Executive Delegates, one elected every three years from each of the nine Local Unions affiliated with the District Council.  They, along with the executive officers, constitute the Executive Committee.

The Executive Committee has the responsibility, under other mandates of the Bylaws, to negotiate CBAs.  But the Council Representatives, along with counsel, are also involved in negotiations.  The Executive Committee's recommendations for the ratification of new and successor CBAs must be referred to the District Council's Delegate Body, consisting of 100 members, with the positions apportioned among the nine Local Unions and elected by secret ballot from their own Local Union for three-year terms.  The Delegate Body has the final say in ratifying or rejecting CBAs.

CBAs also need to be enforced and breaches need to be remedied.  The front line defense are the shop stewards, who are rank-and-file working journeypersons who must pass background checks, a written test, and execute declarations attesting to the fact that they have no criminal convictions under Section 504 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 504, and they are not and have never been a member or associate of a criminal group or a "Barred Person" under the Consent Decree.  They must also successfully complete a 28-hour training course to become certified.  Shop stewards are regularly dispatched to most jobs (exceptions being in certain specialty crafts of specified job sizes and durations) from the job referral system (the Out of Work List (the "OWL")), so that their loyalty is first to the District

Council rather than the contractor for whom they might be working.  Shop stewards are the eyes and ears of the Union on each job.

The Council Representatives are assigned to visit job sites to meet with the working members, confer with the shop stewards and the contractors, follow up on adherence to the CBAs and health and safety requirements, and investigate non-union work in the geographical areas to which they are assigned.  Along with the Council Representatives, the investigators of the Office of the Inspector General (the "OIG") visit job sites to follow up on tips about possible breaches of CBAs or safety and health laws.

Alleged breaches of CBAs that cannot be addressed at the job site are formally processed in writing as grievances tracked through the Grievance Department.  The Grievance Department is composed of District Council staff members who review filed grievances with the Grievance Committee and schedule grievance meetings with member(s) of the Grievance Committee, representatives of contractors, Council Representatives and/or or staff of the OIG, and members involved.  If a grievance meeting is unsuccessful in resolving the grievance, and the Grievance Committee determines the grievance is meritorious and should be further processed, it is submitted to an outside professional labor arbitrator for hearing with the contractor and the District Council where the District Council and the members it represents are represented by counsel.  Grievances are generally settled with the consent of the members involved and reviewed by the Grievance Committee.

2.    The District Council's Role as a Membership Association

As an unincorporated membership association that is a labor organization, the District Council's governing documents are its Bylaws and the Constitution of its parent international union, the United Brotherhood of Carpenters and Joiners of America (the "UBC").  The current Stipulation and Order supplements those governing documents.  The primary statutory

requirements of labor organizations and their members are under the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 et seq. (the "LMRDA").

The District Council's elections are governed by the Bylaws and Election Rules promulgated by the Independent Monitor under the Stipulation and Order ¶ 5(f), with reference to the election provisions under Title IV of the LMRDA, 29 U.S.C. § 481, et seq.  The elections conducted by the nine Local Unions affiliated with the District Council are governed under the Bylaws, the UBC Constitution, and Title IV of the LMRDA.

Internal membership disciplinary proceedings are handled under two tracks.  Most commonly they involve charges brought by rank-and-file members, Council Representatives, the OIG, or officers against other members under the Bylaws, the District Council's Trial Committee Procedures (first adopted by the Delegate Body in August 2013 and revised in March 2019), the UBC Constitution, and the LMRDA's internal union disciplinary safeguards under 29 U.S.C. § 411(a)(5) & § 529.  First readings of charges and trials are conducted before two rotating Trial Chairs who are outside attorneys with years of experience as labor arbitrators and hearing officers in a variety of settings.  The trial juries are members elected by secret ballot from their respective Local Union.  Those elected from the same Local Union(s) as the member filing charges and the member respondent are automatically recused from serving on the jury for that case.

A member found guilty and disciplined may appeal the verdict under the UBC Constitution.  Over at least the past half-decade, lawsuits brought under the LMRDA by members (and former members who were expelled from membership) contesting their discipline under these procedures have been dismissed by the federal district court.

The second track involves the adjudication of charges against a member for being a Barred Person under the Consent Decree because of membership in or an association with

members of an organized criminal enterprise.  Charges may be filed by the Independent Monitor

or the IG under paragraph 10 of the current Stipulation and Order (entered 7/1/2022; ECF Dkt.

1877) under the Rules for the Conduct of Hearings by the Independent Hearing Officer entered

by the Court on May 16, 2023 (ECF Dkt.  1884) (the "Rules").  Once the role of Independent

Hearing Officer was established, the District Council, working closely with the Independent

Monitor, conducted a search and ultimately former federal prosecutor Sharon McCarthy was

selected for that role.  As described more fully below, the first charges were recently filed under

the Rules, an inquest hearing was held when the charged person and his attorney refused to

attend, and he was ultimately expelled from membership.

3.      The District Council's Role as an Employer

        The District Council employs over 100 people in various management, technical, Council

Representative, and administrative positions.  All employees are subject to the Personnel Policy

Manual and the other policies and procedures, such as Accounting Policies and Procedures and

Code of Ethics, incorporated by reference into the District Council's Bylaws.

        The District Council recently hired a new Human Resources Director with years of

experience working for employers larger than the District Council.  Her work is overseen by the

Director of Operations and the Executive Secretary-Treasurer.  Under the District Council's

Bylaws, the Executive Secretary-Treasurer has the ultimate authority in disciplining or

terminating employees subject to the procedures in the Personnel Policy Manual.  District

Council Representatives who are Delegates have additional protection against adverse

employment action related to their exercising rights as a Delegate under Bylaws Section 5(F).

        The District Council through the Chief Compliance Officer and the HR Director

continues to provide ethics training for new employees and refresher courses for current

employees.  Employees have easy access to the Chief Compliance Officer and the IG to request

ethics guidance and to report incidents of misconduct.  To buttress the roles of the Chief

Compliance Officer and the IG, neither may be terminated from their positions except for "good

cause" subject to review and consent of the United States Attorney.  See Stipulation and Order at

¶ 1.g. ("termination [of the IG] must have the consent of the Office of the United States Attorney

for the Southern District of New York"); District Council Bylaws Sections 27(C) ("No such

proposed termination [of the Inspector General] may be finalized if, upon receiving notice as

required by this section, the United States Attorney objects.") and 28(H) (same with respect to

the Chief Compliance Officer).

## CIVIL LITIGATION AND ADMINISTRATIVE AGENCY PROCEEDINGS

In its three roles as a labor organization, membership association, and employer, the

District Council has been subject to civil litigation and administrative agency matters where it is

a defendant or respondent.  See Independent Monitor's First Interim Report at 37-40 (filed

7/1/2015, ECF No. 1628); Second Interim Report at 24-26 (filed 1/14/2016, ECF No. 1650);

Third Interim Report at 9-10 (filed 9/16/2016, ECF No. 1704); Fourth Interim Report at 11-13

(filed 4/7/2012, ECF No. 1755); Fifth Interim Report at 21-22 (filed 3/6/2018, ECF No. 1786);

Sixth Interim Report at 3-6 (filed 12/31/2018, ECF No. 1828); Seventh Interim Report at 13-18

(filed 6/8/220, ECF No. 1848); Eighth Interim Report at 11-18.

Below are summaries of recent proceedings since the beginning of 2022:

**Federal Court Actions**

Peter V. Corrigan v. United Brotherhood of Carpenters and Joiners of America, et al., 20-cv-
1336 (VM) (S.D.N.Y.), appeal filed May 17, 2022, Index No. 22-1090 (2d Cir.)  Plaintiff Peter
Corrigan, a former business agent employed by the District Council, filed suit on February 14,
2020 against the District Council, the United Brotherhood of Carpenters, and District Council
Local 212.  Corrigan challenged his termination in May 2018 for referring apprentices to job
sites in violation of the District Council Bylaws and the Consent Decree.  The case was filed in
the Southern District of New York as a related case to United States v. District Council, 90 cv-
5722 (VM), and was assigned to Judge Marrero.  On April 21, 2022, Judge Marrero issued a

Decision and Order in which he granted the District Council's motion to dismiss the Amended Complaint in its entirety.  On May 17, 2022, Corrigan appealed the dismissal to the Second Circuit Court of Appeals.  On January 13, 2023, the Second Circuit denied the appeal and affirmed the District Court's judgment in a summary order.

Peter Marsalisi v. United Brotherhood of Carpenters and Joiners of America, et al., 20-cv-1806 (S.D.N.Y.), appeal filed May 17, 2022, Case No. 22-1097 (2d Cir.).  On February 28, 2020, former Office of Inspector General ("OIG") investigator Peter Marsalisi filed suit in federal court alleging that his termination from the OIG violated the LMRDA.  (Mr. Marsalisi also challenged his termination in New York State Supreme Court, New York County under state law, Index No. 159707/2019 (N.Y. Sup. Ct., N.Y. Cty.).)  On November 3, 2021, the parties filed a stipulation of discontinuance without prejudice in the state court action.  Marsalisi filed his federal case as a related case to United States v. District Council, 90-cv-5722, appeal filed May 17, 2022 (2d Cir.).  On April 21, 2022, Judge Marrero issued a Decision and Order in which he granted the District Council's motion to dismiss the Amended Complaint in its entirety.  On May 17, 2022, Marsalisi appealed the dismissal to the Second Circuit Court of Appeals.  On January 13, 2023, the Second Circuit denied the appeal and affirmed the District Court's judgment in a summary order.

Edward Saunders v. New York Convention Center Operating Corporation, d/b/a Jacob K. Javits Convention Center, and the New York City District Council of Carpenters, 20-cv-5805 (GWT) (S.D.N.Y.).  On July 27, 2020, Plaintiff Edward Saunders filed suit in federal court alleging that he was discriminated against by the District Council in violation of 42 U.S.C. § 1981, and that he was discriminated against by his former employer, the Jacob K. Javits Convention Center ("Javits") in violation of 42 U.S.C. § 1983.  Plaintiff was terminated by Javits on April 11, 2018 following an altercation with another employee.  Plaintiff alleged that he was "terminated on the basis of his race or color, and in retaliation for his prior complaints about discriminatory disparate treatment and harassment" and that the District Council violated Section 1981 "by allowing or encouraging the Javits Center to terminate Plaintiff's employment."  Saunders filed an Amended Complaint on November 5, 2020, and by Memorandum Opinion and Order dated September 23, 2021, the Court granted in full the District Council's motion to dismiss.  On October 21, 2021, Saunders filed a Second Amended Complaint.  On December 23, 2021, the District Council filed a motion to dismiss the Second Amended Complaint, which was granted in full on August 19, 2022.  No appeal was filed.

Patrick Brendan Spillane, et al. v. New York City District Council of Carpenters and Joiners of America, et al., 21-cv-8016 (AT) (S.D.N.Y.)  On September 27, 2021, Patrick Spillane ("Spillane"), a former retired member of the District Council and his wife Debra Spillane, filed suit in federal court against the District Council and its Director of Area Standards, Eddie McWilliams ("McWilliams") (collectively, the "Union Defendants") and the New York City District Council of Carpenters Annuity, Pension, and Welfare Funds (the "Funds"), as well as Joseph A. Geiger, as a Trustee of the Pension and Welfare Funds (collectively, the "Funds Defendants").  Plaintiffs brought a prima facie tort claim against the Union Defendants. Plaintiffs claimed that Spillane was "falsely accus[ed]" of working in covered employment in the Union's jurisdiction for a non-union contractor, resulting in Spillane's expulsion from the Union and a fine, as well as the loss of certain benefits.  Plaintiffs filed an Amended Complaint on December 10, 2021.  Among other things, the Amended Complaint added a cause of action for alleged violation of the Labor-Management Reporting and Disclosure Act ("LMRDA").  On

March 8, 2022, both the Union Defendants and Funds Defendants filed motions to dismiss the Amended Complaint.  On June 6, 2022, Plaintiffs filed a motion for leave to file a Second Amended Complaint to add allegations regarding the Obligation of the UBC Constitution.  In addition, as required by the Court, a mediation session was held on May 5, 2022.  The mediation session did not result in a resolution of the case.  By Order dated January 3, 2023, the Court granted the Defendants' motions to dismiss as to the federal claims, declined to exercise supplemental jurisdiction over the state law claim, and denied the Plaintiffs' motion for leave to amend.  Judgment was entered on January 30, 2023.  On February 25, 2023, Plaintiffs appealed the Judgment to the Second Circuit Court of Appeals.  The appeal was fully briefed on July 27, 2023 and oral argument was held on January 3, 2024.  On January 22, 2024, the Second Circuit denied the appeal and affirmed the District Court's judgment in a summary order.

Peter Fitzsimons, Regina Ann Devlin Fitzsimons, Bernadette Eileen Fitzsimons, and Caitlin Patricia Fitzsimons v. New York City District Council of Carpenters and Joiners of America, et al., 21-cv-81151 (AT) (S.D.N.Y.)  On December 29, 2021, Peter Fitzsimons ("Fitzsimons"), a retired former member of the District Council, and his wife and two adult children, filed suit in federal court against the District Council; Joshua Leicht ("Leicht"), the Chief Compliance Officer of the District Council; and the New York City District Council of Carpenters Pension, and Welfare Funds (the "Funds"), as well as Joseph A. Geiger, as a Trustee of the Pension and Welfare Funds, and Kristin O'Brien, Executive Director of the Funds (collectively, the "Funds Defendants").  Plaintiffs claimed that Fitzsimons was "falsely charged" with working in covered employment in the Union's jurisdiction for a non-union contractor, resulting in Fitzsimons's expulsion from the Union and a fine, as well as the loss of certain benefits.  Plaintiffs filed an Amended Complaint on March 23, 2022.  On May 16, 2022, all Defendants filed motions to dismiss the Amended Complaint.  Leicht's motion to dismiss was unopposed and the Court dismissed Leicht as a Defendant on August 2, 2022.  By Amended Order dated April 24, 2023, the Court granted in full the District Council's and Funds Defendants' motions to dismiss with prejudice.  On May 18, 2023, Plaintiffs appealed the Amended Judgment to the Second Circuit Court of Appeals.  The appeal was fully briefed on August 28, 2023 and oral argument was held on January 3, 2024.  On January 22, 2024, the Second Circuit denied the appeal and affirmed the District Court's judgment in a summary order.

Jodie Ann Beatty v. New York City District Council of Carpenters and Joiners of America, Case No. 23-cv-2126 (ALC)(SN) (S.D.N.Y.).  Jodie Ann Beatty, who worked as a Council Representative beginning in March 2016 and was laid off in May 2022, filed suit in the New York State Supreme Court, New York County (Index No. 151384/2023), alleging that during her employment with the District Council she was subject to a hostile work environment and gender discrimination, in violation of Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law.  The District Council removed the action to federal court on March 13, 2023, and answered the complaint on March 20, 2023.  Discovery concluded on November 17, 2023 and the deadline to file pre-motion letters for summary judgment is March 5, 2024.  The Magistrate Judge will be conducting a mandatory settlement conference on February 27, 2024.

**State Court Actions**

Michael Donnelly v. The New York City and Vicinity District Council of the United Brotherhood of Carpenters and Joiners of America, et al., Index No. 152197/2019 (N.Y. Sup.

Ct., N.Y. Cty.). Michael Donnelly, a former employee of the District Council, brought several causes of action against the District Council, EST Joseph Geiger, and former President Stephen McInnis, (collectively, the "District Council Defendants") and various contractors and their principals. Mr. Donnelly's Amended Complaint asserted violations of N.Y. Labor §§ 215, 201-d, and alleged misrepresentation/deceit/fraud and tortious interference with economic and/or contractual right to economic advantage. (The tortious interference cause of action was not asserted against the District Council.) On January 16, 2020, the Court granted the District Council Defendants' motion to dismiss the Amended Complaint in its entirety as against them. Donnelly filed a notice of appeal on February 11, 2020. He did not perfect his appeal. On November 12, 2020, Donnelly filed a motion for leave to file a Second Amended Complaint before the trial Court to bring a retaliation claim under the New York City Human Rights Law. The Court granted that motion by Decision and Order dated April 20, 2021. On May 12, 2021, the District Council Defendants filed a motion to dismiss the Second Amended Complaint. By Decision and Order dated October 1, 2021, the Court denied the motion to dismiss as to the District Council and Stephen McInnis and granted the motion as to EST Geiger. Pursuant to a Stipulation and Order dated January 23, 2024 and docketed January 25, 2024, a status conference is scheduled for May 7, 2024, and the deadline to file the Note of Issue is June 26, 2024. The District Council Defendants anticipate filing within 60 days of the filing of the Note of Issue a dispositive motion for summary judgment to dismiss the remaining claim under the Second Amended Complaint.

**Administrative Agency Actions**

<u>Etienne L. Leader v. New York City District Council of Carpenters, David Cabalouso [*sic*]</u>, NYSDHR Case No. 10227862, Federal Charge No. 16GC305215, New York State Division of Human Rights ("NYSDHR"). District Council bargaining unit member Etienne Leader filed a complaint with the NYSDHR, which was simultaneously filed with the U.S. Equal Employment Opportunity Commission. The complaint alleges that the District Council and its Vice President David Caraballoso violated the New York State Human Rights Law and Title VII of the Civil Rights Act by discriminating against complainant on the basis of gender and retaliation for opposing discrimination. Complainant, however, makes no factual allegations that refer to gender or engaging in activity protected by the cited State or Federal anti-discrimination statues. The District Council Respondents have filed a position statement with the NYSDHR seeking dismissal of the complaint.

**STRUCTURE AND CULTURE OF COMPLIANCE**

The District Council's compliance structure relies on interwoven systems of oversight and robust investigatory capabilities all designed to ensure that decisions are made and actions are taken fairly and without corrupt influences. Here are a few examples.

1.   <u>Audit Committee, Accounting Department, and Union Trustees' Activities</u>

The District Council's Audit Committee is coordinated by the OIG and includes the IG, two Delegates elected to serve by the Delegate Body, the UBC District Vice-President or

designee, counsel, and members of an outside accounting firm separate from the District

Council's regular outside accounting firm.  The Audit Committee meets quarterly to review the

District Council's quarterly and annual financial statements and drafts of the annual form 990

filings with the Internal Revenue Service and the annual form LM-2 financial report to the US

Department of Labor.  The Audit Committee recently upgraded its Policies and Procedures

manual to provide for quarterly meetings under the District Council's Bylaws, authorizing

meetings using secure remote platforms, and receiving from the District Council's IT

Department regular reports on cybersecurity efforts and safeguard implementations.

The Audit Committee interacts with the District Council's accounting department.  That

department has recently upgraded its accounting software to make it more user friendly and

better to assist the District Council's Trustees in their ongoing review of District Council bank,

expense, and payment records.  With the assistance of the accounting department, the Trustees

review and reconcile all bank records and examine the underlying documentation for all

expenses.  Such thorough review of expenses is beyond the sampling procedures required of the

Office of Labor Management Standards ("OLMS") of the US Department of Labor (see, e.g.,

Conducting Audits in Unions: A Guide to Trustees (U.S. Dept. of Labor, OLMS (2021)) at 5, 9,

10, and 53).

2.    Amendments to the Bylaws

In early December 2022, the District Council completed the lengthy process of amending

its Bylaws.  The amending process involves the input from all nine Local Unions, review by

various Union committees, review and approval by the UBC and the U.S. Attorney's Office, and

adoption at a special convention of the Delegates.  The amendments mainly dealt with updating

and making fairer members' working dues obligations to correct legacy issues involving

members working at New York City related agencies as Civil Service Carpenters and those

12

members employed in Shops.  The working dues formula for Civil Service Carpenters has been updated and better defined.  And members employed in Shops did not directly pay working dues, which was a legacy holdover from when those members were members of the Industrial Council that was merged into the District Council.  The amendments also updated the Union Participation obligation, which also involved updating a Stipulation and Order from 2001 addressing the obligation and the related crediting of an annual assessment for members who fulfill the annual Union Participation obligation.  (ECF Dkt. 1880, filed March 31, 2023.)  The amendments will provide more income for the District Council to pursue initiatives described below while allowing for a fair and equitable working dues structure that recognizes the different financial circumstances under which members are employed.

3.    IT System Upgrades

The District Council's IT department continues to be staffed by three full-time IT technical professionals.  They continue the oversight of upgrades to the Union's IT infrastructure, software applications, and security.  The IT department works with all departments of the District Council, providing audio-visual and remote platform links for meetings, data searches and retrievals in support of the District Council's grievance handling and litigation discovery, and internal communications and document sharing.  The IT department is currently upgrading the District Council's disaster recovery capabilities should the need arise to continue operations outside the Union's current location.

4.    The Coordination of Specialty Training

Some of the training required to prepare members to work on the many infrastructure construction projects financed by the federal government's Bipartisan Infrastructure Law and the Inflation Reduction Act is beyond the scope of individual training centers like the District Council's Carpenters Training Center.  To remedy limitations and promote advanced training,

the District Council is partnering with other building and construction labor organizations, contractors, and outside training centers.  An example is that, beginning in 2023, Royal Boskalis, an international marine contractor, started coordinating under a Project Labor Agreement with the UBC and other United States based international unions the training and deploying of Dockbuilders and other trades to construct off-shore wind turbines.  The District Council developed a procedure by which Dockbuilder journeymen would be selected for training and assignment for the project.  The training involves unique skill sets already possessed (e.g., welding certifications) as well as health and physical qualifications for ocean work and airborne logistics.  Some planned training would include time and courses given in the Netherlands (requiring a valid passport).  The training also requires an agreement by trainees to spend four to six weeks at a time at sea on jobsites.

The OWL is not equipped to refer Dockbuilders to programs with such requirements because the OWL's purpose is to refer those registered on the OWL with the certain certifications and skills to available jobs, not to unique and specialized training opportunities. With the approval of the Independent Monitor, the District Council consequently developed the following procedures to address this issue and select appropriate volunteers for the training:

- A Dockbuilder Council Rep is assigned to do the initial screening of applicants, along with the Director of Operations, a Lead Manager (a Dockbuilder by trade), and the Chief Compliance Officer.  The screening involves reviewing the amount of time the prospective trainee worked for maritime contractors in the past, possession of skills in addition to the certification training that signatory contractors will require for such maritime-based work, and any verifiable work history that reflects on the member's capacity to successfully complete the specialty training and subsequently perform the required work.

14

- Written records of all screening activities and subsequent referrals are maintained, allowing the IG and, if necessary, the Independent Monitor to review each step of the selection and referral process.

- Following the institution of this process, twenty-two (22) Dockbuilder journeypersons have successfully completed an initial multicourse training regime.

In May 2023, the IG investigated a complaint from a Dockbuilder passed over for this training. The OIG thoroughly investigated the complaint, interviewing participants and reviewing correspondence and key documents. The IG determined that, notwithstanding the complainant's disappointment about not being selected, there were no violations of the procedures or unfair or inappropriate conduct in the decision-making process. The IG advised the Independent Monitor of this investigation and finding, and the complainant himself contacted the Independent Monitor to challenge the results. The Independent Monitor ultimately concurred with the IG's findings.

## THE INCREASING ROLE OF THE INSPECTOR GENERAL
## AND THE OFFICE OF THE INSPECTOR GENERAL

The IG and his office continue to provide increasing oversight of all of the District Council's activities. The initiatives introduced by IG Richard Green since his beginning with the District Council in November 2020 have included the following: The Deputy IG now has the formal leadership over the Chief Investigator (a retired NYPD Detective Sergeant) who in turn directly supervises the Investigators (Carpenter Investigators and former law enforcement Investigators). The Deputy IG also oversees the office's internal administrative functions, including two administrative employees. The IG's office also performs jobsite inspections of one and two-person jobs that were previously performed by job site inspectors (retired members limited to 39 hours per month) at a savings of nearly $250,000 annually with no loss in coverage.

15

The Chief Investigator performs daily review of pending cases. The IG, Deputy IG, and Chief Investigator daily review statistics on members' employment and contractors' work projects for anomalies and unusual patterns for possible follow up investigation. And they monthly randomly review cases of each investigator with the particular investigator.

As described by the Independent Monitor in his Eighth Interim Report, the IG and his office were instrumental in developing the facts that supported the successful prosecution of Salvatore Tagliaferro and John DeFalco, former Union leaders who solicited cash bribes in exchange for Union membership. The IG and his office have increasingly played a more active role in investigating and combating this kind of corruption. The descriptions that follow omit some details of the investigations to protect sources, investigatory methods, confidentiality agreements, and follow-on investigations by the IG and his office. Should the Court wish to receive more details, they will be filed under seal.

1.   IG Investigation of Barred Persons/Organized Crime Activity

As detailed in the IM's November 21, 2021 letter to the Court (ECF Dkt. 1864) and his Eighth Interim Report at 10-20, the IG and his office conducted a lengthy investigation into allegations that multiple Union members and employees, and specifically, a "Senior Individual," who had fraternized with and a potentially sponsored known Barred Person at an annual charity golf event in September 2020 on Long Island. The Barred Person had been expelled from the Union in the mid-1990s for associating with the Columbo organized crime family. In the face of charges drafted by the IG, the "Senior Individual" member resigned from his positions at the District Council. A year later, the entire leadership of the Columbo organized crime family— some of whom had attended the golf outing—were indicted on federal labor racketeering, extortion, and money laundering charges. United States v. Andrew Russo a/k/a Mush, et al., 21-

CR-466 (ERK)(JRC), Indictment (E.D.N.Y., Sept. 8, 2021).  To date, most have entered guilty pleas and are in various stages of sentencing.

2.      IG Investigation and Successful Hearing and Determination
        of Expulsion from Union Membership of an Organized Crime Captain

        With respect to organized crime, the IG successfully prosecuted the first case under the Independent Hearing Officer procedures of Paragraph 10 of the Stipulation and Order and the Rules for the Conduct of Hearing by the IHO (so ordered and filed on May 16, 2023, ECF No. 1884).  The charged member, Thomas Ficarotta, was found by the Independent Hearing Officer, while a member of the District Council to have been "a member and Captain in the Genovese Crime Family, and that he participated in illegal activities of the Genovese Crime Family, including illegal gambling and extortionate collection of loans, all in violation of the Consent Decree."  In re: Thomas Ficarotta, Decision of Independent Hearing Officer and Order (Sept. 30, 2023) ("Decision and Order") at 7.  The sanction imposed was expulsion from membership.  A copy of the Independent Hearing Officer's Decision and Order is annexed as Exhibit A.

        This proceeding was the first one conducted directly under procedures provided in the Consent Decree since member Anthony Fiorino was expelled by the then Independent Hearing Committee under the Consent Decree nearly 30 years ago in 1995.  United States v. District Council, et al., 941 F.Supp. 349 (S.D.N.Y. 1996).

3.      IG Investigation of District Council Representative Directly Referring Members to Jobs

        The OIG conducted a year-long investigation into allegations that a Council Representative was regularly directly referring members to jobs in violation of the job referral requirements under the Consent Decree and the District Council's Bylaws.  This investigation involved numerous interviews and analysis of electronic communications records.  When confronted with the overwhelming evidence, the member admitted to directly referring individuals to jobs outside the job referral system and resigned from his Union employment.

The investigation concluded that the Council Representative was not motivated by personal financial gain and his membership rights were consequently unaffected.

4.    <u>Member Resigns from Union's Executive Committee following IG Investigation</u>

The IG investigated a member running for an Executive Delegate position on the District Council's Executive Committee (after being appointed to the role prior), in connection with a possible conflict of interest due to his upper level managerial position with a signatory contractor.  The IG concluded that the member's position with the contractor presented a clear conflict of interest, making him ineligible to run for or serve on the Executive Committee.  A union member cannot serve in the upper managerial hierarchy of an employer and also serve as an officer or representative of District Council or one of its affiliated local unions.  The IG's conclusion was based upon the clear requirements of Section 44(G) of the Constitution of the United Brotherhood of Carpenters and Joiners of America ("UBC"), the international union to which the District Council is affiliated.  And the conclusion was affirmed by counsel to the UBC. As a result, the member was compelled to resign from his role as Executive Delegate and withdraw from the upcoming election.

5.    <u>The IG is Able to Police Itself and Quickly Remedy Misconduct</u>

Recently the IG investigated activities of one of its own Investigators.  The investigation involved a confidential complainant and issues with a contractor laying off a shop steward.  The complaint alleged that a Council Representative failed to represent the shop steward and enforce the provisions of the applicable collective bargaining agreement.  The routine internal review of the Investigator's work on the investigation found that the Investigator had improperly provided an unfair advantage to the shop steward with respect to acquiring employment dispatches through the OWL.  This Investigator admitted his actions that compromised the appearance and reality of impartiality of the Office of the Inspector General.  The Investigator resigned his

position.  The Chief Compliance Officer was briefed on this matter and agreed with the conclusion and result.  The Union's executive staff was also briefed on the matter and immediate debriefing and additional training were provided to the IG's staff.  The original underlying complaint was closed as unsubstantiated given that the Council Representative fully enforced the collective bargaining agreement.

## NEXT STEPS

Under the current Stipulation and Order, the term of the Independent Monitor runs through January 31, 2024.  The parties plan on filing an agreement to extend the current Stipulation and Order through March 2024 to provide time to discuss and enter into a successor Stipulation and Order.  The District Council's leaders are in ongoing discussions with the Independent Monitor and the Government regarding the further transition of the IG and his office fully assuming the responsibilities of the Independent Monitor and his staff in the successor Stipulation and Order.  The District Council contemplates then entering into a Final Agreement and Order with the Government,

Date:      January 26, 2024
           New York, NY

                                        Respectfully submitted,

                                        BRACEWELL LLP
                                        Special Counsel to the District Council
                                        31 West 52nd Street, Suite 1900
                                        New York, NY 10019
                                        212-508-6100

                                        By:_____/S/_____
                                                Barbara S. Jones
                                                barbara.jones@bracewell.com

                                        SPIVAK LIPTON LLP
                                        Counsel to the District Council
                                        1040 Avenue of the Americas, 20th Floor
                                        New York, NY 10018
                                        212-765-2100

                                        By:_____/S/_____
                                                James M. Murphy
                                                jmurphy@spivaklipton.com

cc:   BY ECF & E-MAIL
      Benjamin H. Torrance, Esq.
      Assistant United States Attorney
      U.S. Attorney's Office
      Southern District of New York
      86 Chambers Street
      New York, NY 10007
      212-637-2703
      benjamin.torrance@usdoj.gov


      Glen G. McGorty, Esq.
      Independent Monitor
      Crowell & Moring LLP
      Two Manhattan West
      375 Ninth Avenue
      New York, NY 10001
      212-223-4000
      gmcgorty@crowell.com