UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

UNITED STATES OF AMERICA,

Plaintiff,

v.

DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al.,

Defendants.

-----------------------------------------------------------x

90 Civ. 5722 (VM)

**JOINT MEMORANDUM IN SUPPORT OF APPROVAL OF THE FINAL AGREEMENT AND ORDER**

BRACEWELL LLP

BARBARA S. JONES
THOMAS F. KOKALAS
RACHEL B. GOLDMAN
31 West 52nd Street
New York, New York 10019-6118
212.508.6100

*Attorneys for the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America*

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York

BENJAMIN H. TORRANCE
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Phone: 212.637.2703
Fax: 212.637.2702

*Attorneys for the United States*

September 23, 2026

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................................1

Procedural History ........................................................................................................1

Progress Since the Consent Decree.............................................................................3

THE PROPOSED FINAL AGREEMENT AND ORDER ..............................................................5

ARGUMENT ..........................................................................................................................9

The Final Order Should Be Approved .........................................................................9

CONCLUSION......................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bano v. Union Carbide Corp.*,
273 F.3d 120 (2d Cir. 2001)....9

*Brown v. Plata*,
563 U.S. 493 (2011)....11

*City of New York v. Exxon Corp.*,
697 F. Supp. 677 (S.D.N.Y. 1988) ....9

*Digit. Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994)....10

*eBay, Inc. v. MercExchange*,
547 U.S. 388 (2006)....10

*Janneh v. GAF Corp.*,
887 F.2d 432 (2d Cir. 1989)....9, 10

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009)....9

*New York State Assn. for Retarded Children, Inc. v. Carey*,
706 F.2d 956 (2d Cir. 1983)....11

*Patterson v. Newspaper and Mail Deliverers' Union of N.Y. and Vicinity*,
514 F.2d 767 (2d Cir. 1975)....9

*Rufo v. Inmates of Suffolk County Jail*,
502 U.S. 367 (1992)....11

*United States S.E.C. v. Citigroup Global Market, Inc.*,
752 F.3d 285 (2d Cir. 2014)....10, 11, 12

*United States v. Hooker Chemical & Plastics Corp.*,
776 F.2d 410 (2d Cir. 1985)....9

*United States v. IBM Corp.*,
14 Civ. 936 (KMK), 2014 WL 3057960 (S.D.N.Y. July 7, 2014) 2014 WL 4626010 (Aug. 7, 2014) ....11

*United States v. Int'l Bhd. of Teamsters*,
941 F.2d 1292 (2d Cir. 1991)....10

*United States v. Int'l Bhd. of Teamsters*,
No. 1:88-cv-04486-LAP (S.D.N.Y. Sept. 3, 2026), Dkt. No. 5657........................................10

*Wellman v. Dickinson*,
497 F. Supp. 824 (S.D.N.Y. 1980), *aff'd*, 647 F.2d 163 (2d Cir. 1981)...................................9

**Statutes**

18 U.S.C. § 1961..........................................................................................................1, 2

18 U.S.C. § 1964..........................................................................................................11

LMRDA..........................................................................................................................8

RICO..............................................................................................................................1

**Rules**

Federal Rule of Civil Procedure 60(b)...........................................................................11

The United States of America (the "Government") and the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "District Council" or "Union") (together, the "Parties") respectfully submit this memorandum in support of their joint application for approval of the proposed Final Agreement and Order (the "Final Order"), attached as Exhibit 1 to the Notice of Motion. The Parties agree, that after more than three decades of Court oversight, the Final Order is fair, reasonable, and consistent with the public interest. The Parties therefore respectfully request that the Court enter the proposed Final Order.

## BACKGROUND

### Procedural History

On September 6, 1990, the Government commenced this action seeking relief against the District Council and certain individual defendants pursuant to the civil remedies provisions of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 et seq., alleging that the District Council and its constituent local unions had been controlled and influenced by organized crime. A supplemental complaint followed on July 16, 1991, naming additional defendants. Trial of the action began on September 13, 1993 and continued through October 18, 1993, when it was recessed to permit the parties to conclude settlement negotiations.

On March 4, 1994, the Court approved a consent decree that resolved the Government's claims against the District Council and the individual defendants (the "Consent Decree"). The Consent Decree enjoined certain activity and instituted institutional reforms of the District Council's disciplinary, electoral, and job referral practices. The Consent Decree, among other things:

- Permanently enjoined all current and future officers, employees, and members of the District Council and its constituent locals from engaging in any act of racketeering activity

as defined in 18 U.S.C. § 1961; knowingly associating with any member or associate of any La Cosa Nostra crime family or any other criminal group, or with any person prohibited from participating in union affairs (collectively, "Barred Person(s)"); and obstructing or interfering with the work of the officers described in the Consent Decree;

- Established (a) an Investigations and Review Officer and (b) a committee of five persons (the "Independent Hearing Committee"), from which panels of three Independent Hearing Committee members were to be drawn.

Over the ensuing years, the Court has entered various stipulations or orders that have modified the measures put in place by the Consent Decree. Of particular note, on June 3, 2010, the Court entered a Stipulation and Order (Docket No. 941), which created the position of Review Officer with broad authority to investigate the District Council, veto certain of its actions, and oversee implementation of job referral and election rules, among other responsibilities.

On May 27, 2014, after four years during which the District Council implemented numerous reforms under the Review Officer's oversight, the Government and the District Council moved to appoint an Independent Monitor with reduced authority relative to the Review Officer, in order to allow the District Council to continue demonstrating its capacity for self-governance while sustaining the reforms already achieved. The Court entered the Stipulation and Order Regarding Appointment of an Independent Monitor on November 18, 2014. (Docket No. 1595).

The Independent Monitor's term was thereafter extended by agreement of the Parties. On February 1, 2021, the Court entered a Supplemental Stipulation and Order granting the Independent Monitor and the District Council's Inspector General additional authority over union disciplinary matters. (Docket Nos. 1857 and 1877).

On December 4, 2024, following the implementation of several compliance and disciplinary initiatives, the Government and the District Council, with the concurrence of the Independent Monitor, entered into a Stipulation and Order terminating the Independent Monitor's role (Docket No. 1903). Additionally, the December 4, 2024 Stipulation and Order authorized the District Council's Inspector General to assume the duties and responsibilities of the Independent Monitor with respect to disciplinary matters, appointed an Independent Integrity Officer to assume the Independent Monitor's remaining oversight functions with respect to internal matters, and appointed an Election Officer to maintain oversight and supervision of District Council elections. The December 2024 Stipulation and Order further provided that, if the District Council continued to demonstrate its capacity for self-governance over the following year, the Consent Decree would be superseded by a Final Agreement and Order entered between the Government and the District Council – the Final Order now before the Court.

On July 21, 2026, District Council's Delegate Body approved the terms of the proposed Final Order. The proposed Final Order was then submitted to the full membership for a review and comment period that concluded on August 31, 2026. No objections to the proposed Final Order were received from the membership during that period, and the proposed Final Order was thereby fully approved by the District Council.[1]

**Progress Since the Consent Decree**

The Parties agree that circumstances have changed significantly since 1994, and that the District Council has made substantial and sustained progress in eliminating organized crime and corruption from its operations. As part of these institutional changes, the District Council has developed, implemented, and continually strengthened an organizational structure and compliance

[1] One objection was received after the deadline and will be submitted to the Court along with the District Council's response.

program designed to ensure that the District Council is run democratically, is free from organized criminal influence, and operates for the sole benefit of its membership. That structure includes, among other things: (1) Bylaws that established the Office of the Inspector General, a Director of Operations, and a Chief Compliance Officer; (2) a Code of Ethics and related policies governing accounting, personnel, job referrals, shop steward conduct, and internal disciplinary trial procedures; (3) an Independent Hearing Officer, an Independent Integrity Officer, and an Election Officer; and (4) standing Audit and Compliance Committees charged with oversight of the District Council's financial controls and overall compliance program. This structure has been supplemented over time by amendments to the District Council's Bylaws, enhancements to its information technology and business practices, and ongoing training of officers, employees, and shop stewards.

As set forth above, the Review Officer's oversight transitioned to an Independent Monitor in 2014, whose term was extended multiple times before being terminated upon entry of the December 4, 2024 Stipulation and Order (Docket No. 1903), at which point an Independent Integrity Officer and an Election Officer were appointed to resolve internal matters and supervise elections, respectively. During this period, the District Council also developed and obtained Court approval for rules governing hearings before the Independent Hearing Officer, and contested disciplinary hearings have been successfully completed, including those that resulted in the expulsion of a member determined to be a captain in an organized crime family and the expulsion of a former local union officer and District Council employee determined to have associated with a barred person. The District Council's progress in reforming the Union and maintaining fairness in elections and job referrals has continued without interruption since the termination of the Independent Monitor position.

Since entry of the Consent Decree, the District Council has succeeded in curtailing corruption within the District Council, in establishing a fair and equitable job referral system, and in conducting free, open, and democratic elections with increasingly limited Court and government oversight. The Parties recognize that, although this progress has been substantial, the threat posed to the District Council by organized crime and other corrupting influences, while substantially diminished, may still exist, and that continued vigilance remains necessary. The Final Order is designed to preserve the gains achieved to date while permitting the District Council to assume full responsibility for maintaining them.

**THE PROPOSED FINAL AGREEMENT AND ORDER**

The Government and the District Council have negotiated extensively over the past several years to arrive at the proposed Final Order, which has been drafted to preserve the progress the District Council has made since the Consent Decree was first put in place. The Final Order ensures the District Council's institutional organization has the structure, rules, and independent personnel to continue its efforts to eliminate corruption and other misconduct while reducing the Government's and the Court's oversight of the District Council's operations. Its major provisions include the following:

- *Dismissal*. The Parties agree that the above-captioned action shall be dismissed, and the March 4, 1994 Consent Decree superseded, upon the effective date of the Final Order, subject to the terms of the Final Order. (*See* Final Order ¶¶ 81-82). The Parties also agree that the Court will retain continuing jurisdiction to enter any lawful and appropriate order to deter, discover, determine, sanction, or remedy any violation of the Final Order. (*See* Final Order ¶ 7).

- *Permanent Injunctions*. The Final Order preserves all permanent injunctions set forth in the Consent Decree, including, but not limited to, permanently enjoining all District Council members, officers, employees, and agents from committing acts of racketeering activity and knowingly associating with any Organized Crime Family of La Cosa Nostra or any other criminal group, or persons otherwise enjoined from participating in union affairs, interfering with the work of persons appointed to effectuate the Final Order, and knowingly permitting any member or associate of any criminal group to exercise any control in the affairs of the District Council. (*See* Final Order ¶¶ 1-6).
- *Union Discipline*. The District Council has established an independent disciplinary enforcement system ("IDS"), which has authority to discipline District Council members and require compliance with the Final Order and the UBC Constitution. (*Id.* ¶ 9). The District Council will maintain an Inspector General, Director of Operations, Chief Compliance Officer, Independent Hearing Officer, and Independent Integrity Officer (collectively, "IDS Officers"). (*Id.* at ¶¶ 10-12). The District Council has established qualifications designed to ensure that each IDS Officer is experienced, effective, and independent from the District Council and free from any actual or apparent conflict of interest. (*Id.* at ¶ 13).
- *IDS Officers' Duties*.
    - The Inspector General's duties include (a) investigating misconduct; (b) taking, or recommending, all necessary and lawful action in circumstances requiring intervention; (c) assisting the Chief Compliance Officer with ensuring compliance with the Final Order; (d) developing investigative procedures and guidelines; (e) maintaining a hotline for reports of misconduct; (f) assisting with development

and administration of policies to ensure compliance with the Final Order; (g) ensuring job referrals are being conducted fairly; and (h) regularly reporting on efforts to fulfill the mission of the Office of the Inspector General. (*Id.* at ¶ 22). The Inspector General may apply to the Independent Hearing Officer for emergency relief. (*Id.* at ¶ 23).

- The Director of Operations' duties include (a) assisting the Chief Compliance Officer with ensuring compliance with the Final Order and the Job Referral Rules; (b) conducting the administration of District Council elections; (c) ensuring reasonable funding, resources, and staffing for the IDS Officers and compliance with the Final Order; and (d) ensuring implementation of IDS Officer decisions. (*Id.* at ¶ 27).
- The Chief Compliance Officer's duties include (a) overall responsibility for daily operations of the compliance department; (b) ensuring development and operation of an effective compliance and ethics program; (c) attending District Council committee meetings and maintaining audio recordings of Delegate Body proceedings; (d) reviewing records to ensure job referrals are conducted in compliance with the Job Referral Rules; and (e) reporting on efforts in fulfilling the mission of the Chief Compliance Officer. (*Id.* at ¶¶ 28-33).
- The Independent Hearing Officer's duties include (a) handling disciplinary matters in accordance with the Independent Hearing Officer Procedures; (b) granting emergency relief; and (c) approving settlements of charges proposed by the Inspector General. (*Id.* at ¶¶ 34-36).

- The Independent Integrity Officer's duties include (a) hearing and deciding appeals of Independent Hearing Officer and Election Supervisor decisions; (b) procuring subpoenas as necessary; (c) reviewing recommendations for, and approving, IDS Officer appointments; and (d) reviewing and approving proposed changes to the IDS, Election Rules, and other District Council rules. (*Id.* at ¶ 40).
- Decisions issued by the Independent Hearing Officer may be appealed to the Independent Integrity Officer. Decisions of the Independent Hearing Officer not appealed to the Independent Integrity Officer, and decisions of the Independent Integrity Officer, are final, subject to the right of any interested person or entity adversely affected by a final disciplinary determination to seek review under the LMRDA or petition the Court for further relief. (*Id.* at ¶¶ 38, 78).

- *District Council Elections*. The District Council will permanently retain the structural electoral reforms of the Consent Decree and subsequent Stipulations and Orders relating to the election of District Council officers. (*Id.* at ¶ 48). Every District Council officer election will be conducted in accordance with rules and procedures designed to ensure fair, free, and democratic elections. (*Id.* at ¶ 50). Candidates must comply with the Election Rules and must not have been convicted of a crime that would make them ineligible to hold union office under applicable federal labor law. (*Id.* at ¶¶ 51-52). Every such election will continue to be supervised by an Election Supervisor with experience in union election procedures who will ensure a commitment to transparency and fairness in the election process. (*Id.* at ¶¶ 54-55). The Election Supervisor may not be a member of the District Council or the Delegate Body, or be a candidate for District Council office. *(Id.* at ¶ 56). Each election will be conducted by secret ballot, and every eligible member has the right

to vote for or otherwise support the candidate or candidates of his or her choice, without being subject to penalty, discipline, improper interference, or reprisal of any kind. (*Id.* at ¶ 57). Following each election, the District Council will make available to the membership a report by the Election Supervisor containing the results of the election, assessing the successes and shortcomings of the election process, identifying trends compared to prior election cycles, and recommending changes to the Election Rules if appropriate. (*Id.* at ¶ 63).

- *Job Referral Rules*. The District Council will continue to maintain a non-exclusive and non-discriminatory referral system for individuals seeking work with signatory contractors or contractors otherwise bound to a collective bargaining agreement with the District Council. (*Id.* at ¶ 65).

## ARGUMENT

### The Final Order Should Be Approved

There is a "strong judicial policy in favor of settlements." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (internal quotation marks omitted); *United States v. Hooker Chemical & Plastics Corp.*, 776 F.2d 410, 411 (2d Cir. 1985); *Patterson v. Newspaper and Mail Deliverers' Union of N.Y. and Vicinity*, 514 F.2d 767, 771 (2d Cir. 1975). Settlement is particularly favorable where, as here, "'a government agency committed to the protection of the public interest' has participated and endorsed the agreement." *City of New York v. Exxon Corp.*, 697 F. Supp. 677, 692 (S.D.N.Y. 1988) (quoting *Wellman v. Dickinson*, 497 F. Supp. 824, 830 (S.D.N.Y. 1980), *aff'd*, 647 F.2d 163 (2d Cir. 1981)). Settlements also help avoid needless and costly litigation, which promotes "financial and judicial economy." *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001) (internal quotation marks omitted); *Janneh v. GAF Corp.*,

887 F.2d 432, 434-35 (2d Cir. 1989) (under “strong judicial and public policies favoring out-of-court settlement . . . costs of litigation are reduced and crowded dockets are relieved”), *abrogated on other grounds*, *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863 (1994).

The Final Order here is aligned with these policy goals, minimizing wasteful and unnecessary litigation over the ongoing viability of the Consent Decree. Further, the preference for settlement extends to agreements that strongly implicate the public interest, including the Final Order in this case. Its strong anti-corruption and anti-racketeering measures are undeniably pro-public interest and are of paramount importance. *See United States v. Int’l Bhd. of Teamsters* (“*Senese & Talerico*”), 941 F.2d 1292, 1297 (2d Cir. 1991). *See also United States v. Int’l Bhd. of Teamsters*, No. 1:88-cv-04486-LAP, (S.D.N.Y. Sept. 3, 2026), Dkt. No. 5657 (granting joint motion to amend).

The Second Circuit’s decision in *United States S.E.C. v. Citigroup Glob. Mkt., Inc*. set forth the standard for approval of settlements containing ongoing injunctive provisions. 752 F.3d 285 (2d Cir. 2014). The *Citigroup* test establishes a highly deferential approach to reviewing the Government’s substantive settlement decisions, acknowledging that the district court should determine whether the settlement is “fair and reasonable, with the additional requirement that the ‘public interest would not be disserved,’” in the event the settlement includes injunctive relief. *Id*. at 294 (quoting *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)). Indeed, “[a]bsent a substantial basis in the record” for concluding that these elements are not satisfied, “the district court is required to enter the order.” *Id*.

Four main factors are relevant to the Court’s assessment of whether the Final Order is fair and reasonable: (1) its “basic legality”; (2) whether its terms, “including its enforcement mechanism, are clear”; (3) whether it “reflects a resolution of the actual claims in the complaint”;

and (4) whether it "is tainted by improper collusion or corruption of some kind." *Id*. at 294-95 (citations omitted). But the "primary focus" of the Court's inquiry "should be on ensuring the consent decree is procedurally proper . . . taking care not to infringe on the [Government's] discretionary authority to settle on a particular set of terms." *Id*. at 295.

The Final Order here easily satisfies these factors. First, the Court has the authority to enter the Final Order pursuant to its inherent power, Federal Rule of Civil Procedure 60(b), and 18 U.S.C. § 1964. *Citigroup*, 752 F.3d at 294. It is well established that courts possess broad equitable powers to modify consent decrees. *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 381 n.6 (1992) ("[T]he power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible.") (*quoting New York State Assn. for Retarded Children, Inc. v. Carey*, 706 F.2d 956, 967 (2d Cir. 1983)); *see also Brown v. Plata*, 563 U.S. 493, 542 (2011) (court "retains the authority, and the responsibility, to make further amendments to [an] existing order or any modified decree it may enter as warranted by the exercise of its sound discretion").

Second, the terms of the Final Order and its enforcement mechanisms are clear. *Citigroup*, 752 F.3d at 295; *see also United States v. IBM Corp.*, 14 Civ. 936 (KMK), 2014 WL 3057960, at *3 (S.D.N.Y. July 7, 2014) ("By 'clear,' the Second Circuit appears to mean that decree 'properly define[s]' its key provisions." (brackets omitted), *order clarified*, 2014 WL 4626010 (Aug. 7, 2014)). The Final Order describes the permanent injunctions that survive dismissal of the action; the Court's continuing authority to enforce the agreement; the terms that will permanently govern the Union's electoral and disciplinary mechanisms; the standards by which the Government may seek further equitable relief from the Court; and the continued applicability of Consent Decree precedent, among other things.

Third, the Final Order resolves the claims in this lawsuit. *Citigroup*, 752 F.3d at 295. As reflected in the Final Order's permanent injunctions and provisions addressing permanent structural features of the Union's electoral and disciplinary mechanisms, the Parties expressly re-commit themselves to the original objectives of the Consent Decree, as well as to preserving the gains achieved under the Consent Decree and continuing the commitment to eliminate criminal elements, organized crime, and corruption that prompted the Government's lawsuit.

Finally, the Final Order is the product of extensive negotiations that have occurred over the course of many years, facilitated by the Court's involvement, and undisputably the result of arms-length negotiations.

The Parties agree that the Final Order advances their shared interest in preserving the District Council's successes and reforms implemented over more than three decades while scaling back and ultimately eliminating the Government's and the Court's role in the District Council's internal disciplinary and electoral functions, except as provided in the Final Order. The terms of the proposed Final Order are fair, reasonable, and, as described above, strongly benefit the public interest.

**CONCLUSION**

For the foregoing reasons, the Government and the District Council respectfully request that the Court approve and enter the Final Order and dismiss the above-captioned action subject to the provisions therein.

Dated: New York, New York
September 23, 2026

Respectfully submitted,

JAMES M. McDONALD
United States Attorney for the
Southern District of New York

By: ______________________
Benjamin H. Torrance
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Tel: (212) 637-2703
Fax: (212) 637-2702

*Attorneys for the United States*

BRACEWELL LLP

By: ______________________
Barbara S. Jones
Thomas F. Kokalas
Rachel B. Goldman
31 West 52nd Street, 19th Floor
New York, New York 10019
(212) 508-6100

*Attorneys for the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America*