USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/13/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
UNITED STATES OF AMERICA,

Plaintiff,

v.

DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al.,

Defendants.
----------------------------------------------------------x

90 Civ. 5722 (VM)

**FINAL AGREEMENT AND ORDER**

WHEREAS, on September 6, 1990, the United States of America (the "Government") commenced this action seeking relief against the District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America (the "District Council" or "Union") and others pursuant to the civil remedies provisions of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*;

WHEREAS, on March 4, 1994, this Court approved a consent order that resolved the Government's claims against the District Council defendants (the "Consent Decree") attached as Exhibit A to this order;

WHEREAS, the Government and the District Council (the "Parties") entered into the Consent Decree with the objectives of ridding the District Council of any criminal element or organized crime and corruption and establishing a culture of democracy to maintain the Union for the sole benefit of its members;

WHEREAS, to achieve those objectives, the Consent Decree enjoined certain activity and instituted institutional reforms of the District Council's disciplinary, electoral, and job referral practices. The Consent Decree, among other things, permanently enjoined all current and future

officers, employees, and members of the District Council and its constituent locals from engaging in any act of racketeering activity as defined in 18 U.S.C. § 1961; knowingly associating with any member or associate of any La Cosa Nostra crime family or any other criminal group, or with any person prohibited from participating in union affairs (collectively, "Barred Person(s)"); and obstructing or interfering with the work of the officers described in the Consent Decree;

WHEREAS, following a series of events including the August 2009 indictment of Michael Forde, who was the District Council's Executive Secretary-Treasurer and a trustee of the Benefit Funds, as well as the indictment of local union officials, shop stewards, and a contractor, by Order dated June 3, 2010, the Court entered a Stipulation among the Government and the District Council and Benefit Funds which created the position of Review Officer, and during the term of the Review Officer the District Council implemented numerous reforms and made significant progress in advancing the objectives of the June 2010 Stipulation and Order (Docket No. 941);

WHEREAS, following the term of the Review Officer, the Government and the District Council agreed that the continuing presence of an independent monitor was advisable in order for the District Council to operate free from the influence of racketeering and corruption, demonstrate its ability to sustain the implemented reform measures, and progress toward self-governance;

WHEREAS, on November 18, 2014, the Court entered a Stipulation and Order Regarding Appointment of an Independent Monitor in the above captioned action, between the Government and the District Council (the "November 2014 Stipulation and Order;" Docket No. 1595), which, among other things, appointed an Independent Monitor;

WHEREAS, beginning in 2010 and continuing through the present, the District Council has developed, implemented, and continually improved upon an effective and sustainable organizational structure and compliance program designed to ensure that the District Council is run democratically, is free from the influence of organized criminal activity and other corrupt

influences, and remains solely focused on promoting the best interests of the Union and its membership (collectively referred to as the "District Council Compliance Structure");

WHEREAS, by way of summary, the District Council Compliance Structure includes: (1) Bylaws that define the roles and responsibilities of District Council Officers, governing bodies, and, among other controls, establish and maintain (a) the Office of the Inspector General, (b) Director of Operations, (c) Chief Accountant, (d) Director of Human Resources, and (e) Chief Compliance Officer; (2) a Code of Ethics, together with written policies and procedures including (a) an Accounting Manual that limits expenditures and establishes approval and documentation processes, (b) a Personnel Policy Manual that governs hiring, discipline, and employee termination processes, and establishes behavioral expectations for all District Council employees, agents, and representatives, (c) a Council Representative Manual that governs the conduct and daily activities of Council Representatives, (d) Investigative Guidelines that govern the conduct of the Inspector General's Office, (e) Job Solicitation, Registration, and Referral System Out of Work List (OWL) Rules ("Job Referral Rules") governing nondiscriminatory job referrals, (f) Trial Procedures that govern the conduct of internal Union disciplinary proceedings brought by the Inspector General's Office and members of the District Council, (g) a Shop Steward Code of Ethics, together with rules establishing the qualifications to become a Certified Shop Steward and procedures for reviewing whether a Shop Steward's responsibilities have been met, (h) procedures governing required daily electronic or telephonic reporting by Shop Stewards of District Council-represented employees employed by signatory contractors and the hours they work, (i) rules establishing the qualifications for candidates for elected Union offices together with procedures for their election; and (3) processes to ensure that policies, procedures, and controls are effective, operating as intended, and are enhanced when required, including (a) the Audit Committee, charged with overseeing operation of the District Council's financial controls that include employment of an

accounting firm that is independent from the District Council's regular accounting firm, (b) the Compliance Committee comprising the District Council's officers, directors, managers, Inspector General, Chief Compliance Officer, and counsel charged with overseeing, and enhancing when needed, the District Council's overall compliance program, (c) the establishment of an Independent Hearing Officer and related procedures to prevent and remedy organized crime activity among the membership, and (d) the establishment of oversight authority by the Executive Secretary-Treasurer and the Chief Compliance Officer of affiliated Local Unions and membership admission and transfer procedures. Each of these and other reforms, together with the ongoing enhancement of information and technology resources and mechanisms, were put in place and are being maintained and continually enhanced to safeguard against racketeers regaining influence over the District Council;

WHEREAS, the District Council continued to make progress toward self-governance under the Consent Decree. By way of summary, that progress included (1) the appointment of an Independent Hearing Officer and the anti-corruption measures overseen by the District Council's Executive Secretary-Treasurer in conjunction with the Chief Compliance Officer under the Supplemental Stipulation and Order with Respect to the Independent Monitor's Authority Over Union Membership and the District Council's Oversight of Affiliated Local Unions filed February 1, 2021 (Docket No. 1857), the material provisions of which are incorporated into the Stipulation and Order Regarding Extension of the Independent Monitor's Term and Modifications of Procedures filed July 1, 2022 (Docket No. 1877); (2) the enhancement of the Office of the Inspector General, with the successful implementation of anti-corruption programs and the successful conduct of investigations; (3) the compliance review of the Business Representative Center; and (4) ongoing monitoring of the job referral system, including updating procedures along with skills and certifications available for those on the list so that staffing requests from signatory

employer-contractors can be more efficiently made; (5) the continued roles of the Compliance Committee and the Audit Committee; and (6) ongoing training of District Council officers, employees, and Shop Stewards;

WHEREAS, by Stipulation and Order dated December 4, 2024 (the "December 2024 Stipulation and Order") (Docket No. 1903), the Government, District Council, and Independent Monitor noted the progress described above and the District Council's functioning under the applicable Stipulation and Order as described in the District Council's Annual Report filed with the Court on January 26, 2024 (Docket No. 1888) with respect to the continuing robust enforcement of its Compliance Structure, including amendments to its Bylaws; development and Court approval of rules governing hearings before the Independent Hearing Officer, before whom were successfully completed the first two hearings that resulted, respectively, in the expulsion of a member who was determined to be a captain in the Genovese organized crime family and the expulsion of a member who was a former Local Union officer and employee of the District Council who was determined to have associated with a Barred Person under the Consent Decree; and continued improvement of the Union's Information Technology resources and enhancement of the personnel and functioning of the Office of the Inspector General without the continuing oversight of an Independent Monitor;

WHEREAS, pursuant to the December 2024 Stipulation and Order, the Government and District Council agreed that, provided the District Council demonstrated its continuing ability to self-govern as described above during the following year, the Consent Decree should be superseded and replaced by a Final Agreement and Order entered between the Government and the District Council to be so ordered by the Court;

WHEREAS, the Parties agree that implementation of the disciplinary, electoral, and job referral provisions of the Consent Decree and subsequent Stipulations and Orders has resulted in

significant and positive change in the culture and processes of the District Council, and that there has been substantial progress toward achieving the objectives of the Consent Decree and subsequent Stipulations and Orders;

WHEREAS, the Parties agree that there has been success in eliminating corruption from within the District Council, in establishing a fair and equitable job referral system, and in conducting free, open and democratic elections;

WHEREAS, the Parties recognize that, although significant progress has been made under the Consent Decree and subsequent Stipulations and Orders, the threat posed to the District Council by organized crime and other corrupting influences, while substantially diminished, persists;

WHEREAS, the Parties acknowledge that, given the nature of the threat posed to the District Council by organized crime and other corrupting influences, continued vigilance is necessary to ensure that the objectives of the Consent Decree and subsequent Stipulations and Orders are achieved;

WHEREAS, by entering into this Final Agreement and Order (the "Final Order"), the Parties re-commit themselves to the objectives of the Consent Decree and subsequent Stipulations and Orders, which remain the objectives of this Final Order;

WHEREAS, the additional objectives of this Final Order are to preserve the gains achieved by the Consent Decree and subsequent Stipulations and Orders; limit the Government's role in the affairs of the District Council and permit the District Council to self-govern; continue to foster and promote democracy and fair elections; ensure job referrals are handled fairly and appropriately; continue to safeguard the District Council against criminal elements, organized crime, and corruption; and prevent the re-emergence of criminal elements, organized crime, and corruption that have been eliminated from the District Council;

WHEREAS, the parties agree that these objectives can best be achieved by implementation of this Final Order;

WHEREAS, it is imperative that the District Council be maintained democratically, with integrity, for the sole benefit of its members, and without unlawful outside influence;

WHEREAS, this Final Order does not purport to outline all of the responsibilities of the District Council and its representatives under the law, or to limit the applicability of those other legal obligations, recognizing that the District Council is governed, among other things, by the National Labor Relations Act, 29 U.S.C. § 151 *et seq*., the Labor Management Relations Act, 29 U.S.C. § 141 *et seq*., and the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 401 *et seq*. ("LMRDA");

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the Government and the District Council, as follows:

## I. PERMANENT INJUNCTIONS

1. All permanent injunctions entered in this action shall survive the dismissal of this action and shall continue to be fully viable and effective.

2. All current and future members, officers, agents, representatives, employees, and persons holding positions of trust in the District Council and any of its constituent entities are permanently enjoined from:

   a. committing any act of racketeering activity, as defined in 18 U.S.C. § 1961;

   b. knowingly associating with any member or associate of any Organized Crime Family of La Cosa Nostra or any other criminal group ("Organized Criminal Group");

   c. knowingly associating with any person enjoined from participating in union affairs;

   d. obstructing, or otherwise interfering, directly or indirectly, with the work of any person appointed to effectuate the terms of this Final Order; and

e. knowingly permitting any member or associate of any criminal group, or any person otherwise enjoined from participating in union affairs, to exercise any control or influence, directly or indirectly, in any way or degree, in the affairs of the District Council or any of its constituent entities.

3. As used in this Final Order, the term "constituent entities" shall include all existing and future forms of the District Council and entities subordinate to the District Council, including local unions within the District Council.

4. For purposes of this Final Order, and for purposes of any disciplinary action taken by the District Council pursuant to the District Council Bylaws or the United Brotherhood of Carpenters and Joiners of America ("UBC") Constitution, the phrase "knowingly associate" shall have the same meaning under this Final Order as under the Consent Decree, as construed by the United States Court of Appeals for the Second Circuit and this Court.

5. For purposes of this Final Order, and for purposes of any disciplinary action taken by the District Council pursuant to District Council Bylaws or the UBC Constitution, the phrase "otherwise enjoined from participating in union affairs" shall have the same meaning under this Final Order as under the Consent Decree, as construed by the United States Court of Appeals for the Second Circuit and this Court, and shall include any person who was permanently barred, who was permanently expelled, who permanently resigned, or who was otherwise permanently removed from membership in the District Council pursuant to, following, or in response to disciplinary charges instituted or recommended under the procedures enacted under the Consent Decree, subsequent Stipulations and Orders, or this Final Order, which include decisions issued by the Independent Hearing Officer.

6. All persons who were enjoined from participating in union affairs under the Consent Decree or subsequent Stipulations and Orders, and all persons who are permanently enjoined from participating in union affairs under the mechanisms established by this Final Order, are

permanently enjoined from knowingly associating with any member or employee of the District Council or any of its constituent entities.

## II. JURISDICTION AND ENFORCEMENT

7. This Court shall retain exclusive jurisdiction to enter any lawful and appropriate order to deter, discover, determine, sanction, and remedy any violation of this Final Order. The Government shall have the authority to apply to this Court, upon notice to the District Council, for such process and such equitable orders and sanctions as are lawful and appropriate to deter, discover, determine, sanction, or remedy any violation of this Final Order. This Final Order shall bind all current and future members, officers, agents, representatives, and employees of the District Council and its constituent entities to the same extent and to the same degree as the Consent Decree bound such entities and individuals.

## III. ALL WRITS INJUNCTION

8. Pursuant to 28 U.S.C. § 1651, the District Council and its constituent entities, and all members, officers, representatives, agents, and employees of the District Council or any District Council constituent entity, are permanently enjoined from filing or taking any legal action that implicates the Consent Decree or this Final Order in any court or forum in any jurisdiction other than this Court. Upon discovering that an action that implicates the Consent Decree or this Final Order has been filed in any forum other than this Court, the District Council shall promptly give notice to the United States Attorney for the Southern District of New York (the "United States Attorney").

## IV. UNION DISCIPLINE

### A. INDEPENDENT DISCIPLINARY SYSTEM

9. The District Council has established and shall permanently maintain in full force and effect an independent disciplinary enforcement system with full authority to investigate and adjudicate

charges against, and impose discipline on, District Council officers, members, employees, agents, representatives, and constituent entities, as well as ensure compliance with the Final Order, the District Council Bylaws, and the UBC Constitution (the "Independent Disciplinary System" or "IDS").

10. The Independent Disciplinary System shall be implemented and maintained by an Inspector General ("IG"), Director of Operations ("DOO"), and Chief Compliance Officer ("CCO").

11. Certain disciplinary, election, appointment, and other matters, as set out in the Final Order and District Council Bylaws, shall be referred to the Independent Hearing Officer ("IHO") and Independent Integrity Officer ("IIO") for review, adjudication, or appeal, as applicable.

12. The Inspector General, Director of Operations, Chief Compliance Officer, Independent Hearing Officer, and Independent Integrity Officer shall be collectively referred to as "IDS Officers" and each shall have his or her own respective duties and responsibilities under the Final Order.

13. The District Council shall establish qualifications for service as an IDS Officer. Such qualifications shall be designed to ensure that each IDS Officer is experienced, effective, and independent from the District Council and free from any actual or apparent conflict of interest. At a minimum:

a. Each IDS Officer must have a reputation for honesty, integrity, impartiality, and independence. Current and former members of the District Council and its constituent entities shall be ineligible to serve. The IDS Officers shall not hold another employment position with, or be an officer or steward of, the District Council.

b. The Inspector General must have a background in law enforcement or other relevant government experience.

c. The Director of Operations must have a background in law enforcement or other relevant government experience or other substantial experience in the operations and management of a labor union.

d. The Chief Compliance Officer must have substantial experience overseeing an effective ethics and compliance program.

e. The Independent Hearing Officer and the Independent Integrity Officer must each be an attorney admitted to practice law in the State of New York and before the Southern District of New York and have substantial prior experience with enforcing labor laws or other relevant governmental experience, or have prior experience as a federal or state judge.

14. The Executive-Secretary Treasurer ("EST"), in consultation with the IG, DOO, and CCO, shall recommend appointments to fill vacancies of the IDS Officer positions. The EST shall provide notice of the recommended appointments to the Independent Integrity Officer. If the Independent Integrity Officer does not object to the appointments, then the EST shall provide notice of the recommended appointments to the Executive Committee. If the Executive Committee approves the appointments, then the Council Delegate Body shall vote to approve or reject the appointments of the IDS Officers. In the event of a vacancy of the position of the Independent Integrity Officer, the same process will apply except that notice of the recommended appointment shall be submitted to the Independent Hearing Officer.

15. IDS Officers may not be removed from office absent good cause. "Good cause" means significant and reliable evidence that the Officer has substantially failed to fulfill the requirements of the position in which he or she serves.

16. The District Council must give reasonable written notice of, and the reasons for, the proposed termination of an IDS Officer to the UBC Eastern District Vice President and the

Independent Integrity Officer. In the event of the proposed termination of the Independent Integrity Officer, such notice shall be provided instead to the IG, DOO, and CCO. No proposed termination of any IDS officer may be finalized if, upon receiving notice as required by this section, the UBC Eastern District Vice President or the IIO, or IG, DOO, CCO, as applicable, objects.

17. The IDS Officers shall be empowered to employ such staff and other assistants as reasonable, necessary, and appropriate to effectively execute the officers' duties and responsibilities.

**1. INSPECTOR GENERAL**

18. The Inspector General shall oversee a staff, which shall include a Deputy Inspector General, investigators, and clerical personnel in the Office of the Inspector General. The Inspector General shall be the senior executive official for the Office of the Inspector General and shall have overall responsibility for the daily operations of the Office of the Inspector General. Investigators employed in the Office of the Inspector General may only be terminated with the consent of the Chief Compliance Officer.

19. The Inspector General's jurisdiction shall extend to the District Council, its constituent entities, including the District Council's affiliated local unions, and their departments, internal operations, field operations, employees, and membership. The District Council's Chief Accountant shall report to the Inspector General as requested. The Inspector General and his or her designee(s) under the Inspector General's authority shall have the same authority as a Council Representative of the District Council, as set forth in the Council Representative Manual, including, to conduct job site visits, file grievances, and review shop stewards.

20. The Inspector General shall have access to all records in the custody and control of the District Council and its constituent entities. Failure of the District Council or any of its constituent entities, or any member, officer, agent, representative, employee, or person holding a position of

trust in the District Council or any of its constituent entities to comply in a timely manner with a request for documents or information from the Inspector General shall constitute a violation of this Final Order and shall be subject to disciplinary action.

21. The Inspector General's discretion and authority to carry out the duties and responsibilities described in this section shall not be limited in any way by the District Council or any of its constituent entities, or any member, officer, agent, representative, employee, or person holding a position of trust in the District Council or any of its constituent entities.

22. The Office of the Inspector General shall have the duty, responsibility, and authority to:

a. Investigate (i) all allegations of corruption, illegal or unethical conduct, and any other misconduct including Major Violations (defined below) and violations of the Final Order, UBC Constitution, or the District Council Bylaws; (ii) violations of collective bargaining agreements, and (iii) other matters as may be assigned by the Delegate Body to protect the lawful interests of the District Council and which relate to conduct engaged in by, or pertaining to, the District Council, its constituent entities, or members;

b. Take, or recommend, all necessary and lawful action, including filing disciplinary charges with the Trial Committee or the Independent Hearing Officer, filing a criminal complaint, reporting conduct to the appropriate authorities for further action, assisting counsel in preparing legal action, recommending to the Delegate Body appropriate remedial or preventive measures, and notifying the General President of the UBC of circumstances which may require his or her intervention;

c. Assist the District Council in complying with the requirements of the Final Order and other orders entered in this action;

d. Develop investigative procedures and guidelines, which may address, but not be

limited to, (i) conducting investigative interviews of members, including Delegates and Officers, and employees of the District Council and affiliated local unions, (ii) document and data review, (iii) legal and fact research, (iv) surveillance, (v) monitoring of employee communications occurring on District Council phones, computers, and other equipment, (vi) obtaining and securing evidence, (vii) conducting lawful searches and (viii) lawfully entering jobsites where work is performed pursuant to District Council collective bargaining agreement(s);

e. Maintain a confidential and anonymous hotline to enable anyone to report allegations of corruption, unethical or illegal conduct, or misconduct by Officers, members, or employees of the District Council or by persons conducting business with or seeking to influence the District Council or persons affiliated with the District Council;

f. Assist the Chief Compliance Officer in ensuring that the District Council has in place and administers programs and/or policies to ensure compliance with the Final Order; develops, implements, and enforces an effective compliance and ethics program; and identifies risks and vulnerabilities to corruption, misconduct, and unethical conduct;

g. Review with the Chief Compliance Officer on a periodic basis, as appropriate and necessary, and at a minimum annually, the District Council's records to determine that job referrals are being conducted fairly and properly, in accordance with the Job Referral Rules; and

h. Report on a regular basis to the EST and DOO with respect to the efforts of the Office of the Inspector General in fulfilling its mission. The Inspector General shall also report to the Executive Committee and District Council Delegate Body on a monthly basis. When circumstances warrant, and in the discretion of the Inspector General, reports may be made directly to the Eastern District Vice President or General President of the

UBC.

23. In the event of ongoing misconduct, if the Inspector General determines in consultation with the Executive Secretary Treasurer, Director of Operations, and Chief Compliance Officer, or other District Council officers as may be necessary, that irreparable harm is likely to occur absent immediate intervention, the Inspector General may apply to the Independent Hearing Officer for emergency relief, including the temporary suspension of an officer, employee, agent, or representative, or any other appropriate form of interim relief consistent with applicable law, until the investigation concludes. In order to obtain such interim relief, the Inspector General must establish by a preponderance of the evidence, at a hearing before the IHO, that irreparable harm is occurring or will likely occur absent such relief and demonstrate a reasonable basis to conclude the alleged conduct will be substantiated. Any such application must be made on notice to the person or entity against whom charges have been filed (“Respondent”) at least 48 hours in advance of the hearing.

24. Upon completion of an investigation, the Inspector General shall prepare a written investigation report detailing charges and recommendations concerning the discipline of the District Council officers, members, employees, agents, or representatives that were the subject(s) of the investigation.

25. Charges for Major Violations shall be referred to the Independent Hearing Officer. All other matters shall be referred to the Trial Committee or equivalent body, as set forth in the District Council Bylaws.

26. Major violations (“Major Violations”) shall include: bribery; extortion; embezzlement; use of threats of force or violence against members to interfere with or extort their rights under the UBC Constitution or their union democracy rights under applicable law, including their rights to assemble, express their views, vote, seek election to office, support the candidates of their choice,

and participate in the affairs of the District Council; acceptance of money or other things of value from any employer or agent of an employer, in violation of applicable law; any act of racketeering activity, as defined in applicable law; aiding and abetting any act of racketeering; domination, control, or influence over any District Council affiliate, officer, member, employee, or representative by any Organized Criminal Group; knowing association with any member of an Organized Criminal Group or any other person enjoined from participating in Union affairs; significant violations of the Job Referral Rules; violations of the Final Order; failure to cooperate fully with the IDS Officers in any investigation or proceeding; and failure to comply with a disciplinary decision.

**2. DIRECTOR OF OPERATIONS**

27. In addition to the Director of Operations' general duties and responsibilities, the DOO shall have the duty, responsibility, and authority to:

a. Assist the District Council in complying with the requirements of the Final Order and other orders entered in this action;

b. Assist the Chief Compliance Officer in ensuring that the District Council has in place and administers programs and policies to ensure compliance with the Final Order; develops, implements, and enforces an effective compliance and ethics program; and identifies risks and vulnerabilities to corruption, misconduct, and unethical conduct;

c. Ensure the District Council's compliance with the Job Referral Rules;

d. Conduct all District Council elections and ensure operational compliance with the Rules for the Nomination and Election of Officers of the District Council ("Election Rules");

e. Ensure the District Council maintains reasonable and appropriate funding, resources, and staffing for the Office of Inspector General, the Compliance Program, the IHO,

and the IIO;

f. Ensure District Council expenditures comply with the terms and objectives of this Final Order, the District Council Compliance Program, District Council Bylaws, the UBC Constitution, and applicable law;

g. Ensure the implementation of decisions issued by the Inspector General, IHO, or IIO;

h. Serve as the main point of contact between the Executive Committee and the Office of Inspector General or Compliance Department.

**3. CHIEF COMPLIANCE OFFICER**

28. The District Council has established, and shall continue to maintain in full force and effect, a compliance program. The Chief Compliance Officer shall be the senior executive official for the compliance program and shall have overall responsibility for the daily operations of the compliance department. In addition to the Chief Compliance Officer, the District Council shall employ a Deputy Chief Compliance Officer.

29. The Chief Compliance Officer is responsible for ensuring that the District Council develops, implements, and operates an effective compliance and ethics program within the meaning of Chapter 8 of the United States Sentencing Guidelines.

30. The Chief Compliance Officer or the CCO's designee shall sit on any committee of the District Council or constituent entity with voice but no vote. The Chief Compliance Officer or the CCO's designee shall attend all meetings of the Delegate Body to observe the proceedings and a confidential audio recording of the proceedings shall be made and kept in the custody of the Inspector General. Said recordings are subject to the District Council Records Retention Policy.

31. The Chief Compliance Officer shall review with the Inspector General on a periodic basis, as appropriate and necessary, and at a minimum annually, the District Council's records to determine that job referrals are being conducted fairly and properly, in accordance with the Job

Referral Rules.

32. The Chief Compliance Officer may also receive complaints regarding misconduct involving the District Council.

33. The Chief Compliance Officer shall report on a regular basis to the EST and Director of Operations with respect to the efforts of the Chief Compliance Officer in fulfilling the mission of the position, the effectiveness of the compliance and ethics program in general, and the fulfillment of the Chief Compliance Officer's responsibilities. The Chief Compliance Officer shall also report quarterly to the District Council Delegate Body and may report more frequently upon request of either the District Council Delegate Body or at the Chief Compliance Officer's own discretion. When circumstances warrant, and in the discretion of the Chief Compliance Officer, reports may be made directly to the Eastern District Vice President or General President of the UBC.

### 4. INDEPENDENT HEARING OFFICER

34. Disciplinary matters that are referred to the Independent Hearing Officer shall be handled in accordance with the Independent Hearing Officer Procedures. *See* United States v. District Council, et al., 90 Civ. 5722 (Dkt. No.1884, May 16, 2023).

35. In the event of ongoing misconduct, and upon the application of the Inspector General, the Independent Hearing Officer may grant emergency relief as provided in paragraph 23.

36. Any proposed settlement of a charge referred by the Inspector General to the Independent Hearing Officer is subject to approval by the Independent Hearing Officer. The Inspector General, the individual or District Council entity charged, and the District Council shall have the right to be heard by the Independent Hearing Officer in connection with the decision of whether to approve a proposed settlement. Settlements shall have a reasonable basis and be consistent with the terms and objectives of this Final Order.

37. Decisions of the Independent Hearing Officer shall be in writing and the Inspector General

shall make them available on the District Council website.

38. A party to a matter conducted pursuant to the Independent Hearing Officer procedures may appeal a decision issued by the Independent Hearing Officer to the Independent Integrity Officer. If a timely appeal, as set forth in the Independent Hearing Officer Procedures, is not filed, the decision of the Independent Hearing Officer (including any related or incorporated rulings) shall be final, except as provided in paragraph 78 of this Final Order.

39. If no timely appeal is filed, the appropriate District Council entity shall take all action which is necessary to implement the Independent Hearing Officer's decision, consistent with the UBC Constitution, District Council Bylaws, and applicable laws.

**5. INDEPENDENT INTEGRITY OFFICER**

40. The Independent Integrity Officer shall have the duty, responsibility, and authority to:

a. Hear and determine appeals taken from decisions issued by the IHO;

b. Hear and determine appeals taken from decisions issued by the Election Supervisor, except as provided in Paragraph 61 herein;

c. Work with the Inspector General to procure subpoenas or other legal process to assist the Inspector General in conducting investigations;

d. Review recommendations for appointments of IDS Officers and approve such appointments absent a reasonable basis for disapproval;

e. Review the District Council's proposed substantive changes to the Independent Disciplinary System, Election Rules, and related District Council Bylaws. Within 30 days of receiving the District Council's proposed changes, the IIO shall determine whether the proposed changes violate or undermine the terms or objectives of the Final Order. Absent such a finding or other reasonable basis for disapproval, the IIO shall approve the proposed changes; and

f. Hear and resolve disputes relating to the Final Order, including issuing determinations regarding the construction and interpretation of provisions of the Final Order and determinations regarding the jurisdiction and authority of IDS Officers;

g. Consult with the EST, IDS Officers, or other District Council officers as appropriate and necessary.

41. An appeal to the Independent Integrity Officer from decisions issued by the Independent Hearing Officer shall be based upon the full record before the IHO; however, the Independent Integrity Officer may, at his or her discretion, accept new evidence or hold a hearing. The Independent Integrity Officer's review shall be to determine whether the findings and decisions issued by the Independent Hearing Officer are supported by a preponderance of reliable evidence and the applicable law.

42. Decisions of the Independent Integrity Officer are final and binding and shall not be subject to further review under the UBC Constitution or to judicial review by any court, except as provided in paragraph 78 of this Final Order.

43. Decisions of the Independent Integrity Officer pursuant to Sections 40(a), (b), (e), and (f) shall be in writing, setting forth the basis for the determination, and made available on the District Council website.

44. The appropriate District Council entity shall take all action necessary to implement the Independent Integrity Officer's decision, consistent with the UBC Constitution, District Council Bylaws, and applicable laws.

**B. REPORTS**

45. The Inspector General shall be responsible for preparing and distributing to the membership annual reports of the work of the IDS Officers, which reports shall include descriptions of the disciplinary, compliance, and other actions taken by the IDS Officers during

the preceding year, including a summary of the number and types of charges referred by the Inspector General and the disposition of those charges.

### C. ADEQUATE FUNDING AND INDEMNIFICATION FOR THE INDEPENDENT DISCIPLINARY SYSTEM

46. The District Council shall ensure adequate funding for the Independent Disciplinary System so that it is maintained in full force and effect. The compensation and expenses of the Independent Hearing Officer and the Independent Integrity Officer and the persons hired under their respective authority must be paid by the District Council.

47. The District Council must indemnify out of its own funds the IDS Officers (and any costs incurred to defend against any claim of liability) for any of their actions reasonably taken pursuant to and in accordance with this Final Order. Alternatively, the District Council may purchase a policy of insurance or bonds in an appropriate amount to provide the same indemnification.

## V. DISTRICT COUNCIL ELECTIONS

### A. ELECTION PROCEDURES

48. The District Council will permanently retain the structural electoral reforms of the Consent Decree and subsequent Stipulations and Orders relating to the election of District Council officers. Those officers consist of a President, Vice President, Executive Secretary-Treasurer, Warden, Conductor, and three Trustees (collectively, the "District Council Officers"). The nomination, election and installation of the District Council Officers shall be governed by this Final Order, the UBC Constitution, and the Bylaws of the District Council.

49. Candidates for President, Vice President, and Executive Secretary-Treasurer shall be elected by secret ballot vote of the membership directly. Candidates for Warden, Conductor, and the three trustees shall be elected by the Delegate Body.

50. Every District Council Officers election occurring after the effective date of this Final

Order shall be conducted in accordance with, and pursuant to, rules and procedures designed to ensure fair, free, and democratic elections.

51. To be eligible for office, candidates must comply with the eligibility criteria established by the Election Rules and the UBC Constitution, and must:

a. Submit a declaration under Section 504 of the LMRDA to the Election Supervisor;

b. Submit a declaration to the Election Supervisor affirming that the candidate is not a member or associate of any Organized Criminal Group, or associated with any person lawfully barred or prohibited from participating in labor organization affairs.

52. Additionally, to be eligible for office, a candidate must not have been convicted of a crime that would make him or her ineligible to hold union office under applicable federal labor law. Crimes that make one ineligible to hold union office include: extortion, embezzlement, bribery, grand larceny, robbery, burglary, arson, violations of narcotics laws, murder, rape, assault with intent to kill, assault that inflicts grievous bodily injury, any felony involving the abuse or misuse of a position or employment in a labor organization or an employee benefit plan in order to seek or obtain an illegal gain at the expense of the members of the labor organization or the beneficiaries of the employee benefit plan, violations of title II or title III of the LMRDA, or conspiracy involving any such crimes, or a crime in which any of the foregoing crimes is an element. An individual convicted of such crimes may be prohibited from holding union office for up to a period of thirteen years after such conviction or after the end of such imprisonment, whichever is later. (Additional information regarding these restrictions may be found in the provisions of 29 U.S.C. § 504 and 29 C.F.R. §§ 452.9, 452.34).

53. All local union elections within the District Council shall be conducted pursuant to the UBC Constitution, the District Council Bylaws, and the bylaws of the local union holding the local union election.

**B. INDEPENDENT ELECTION SUPERVISION**

54. Every District Council Officers election occurring after the effective date of this Final Order shall be supervised by an Election Supervisor. The Inspector General shall serve as the Election Supervisor unless an independent election supervisor is retained by the District Council, the appointment of whom shall be subject to IIO review and approval. Any Election Supervisor must have knowledge of and experience with the mechanisms and procedures used in union elections, investigations, Title IV of the LMRDA, and the District Council's data and personnel systems. The Election Supervisor shall be empowered to employ such staff and other assistants as reasonable, necessary, and appropriate to effectively execute the Election Supervisor's duties and responsibilities.

55. The Election Supervisor shall ensure a commitment to transparency and fairness in the election process.

56. No individual serving as the Election Supervisor may be a member of the District Council or the Delegate Body, or be a candidate for District Council Officer. Members and employees of the District Council may serve on the Election Supervisor's staff, provided however that no such member or employee may: (i) be a candidate for District Council office; (ii) be affiliated with any campaign for District Council office; or (iii) hold any officer position of the District Council, whether elected or appointed.

**C. ELECTION RULES**

57. The Election Rules and procedures shall permanently ensure that each election will be conducted by secret ballot and that every eligible member shall have the right to vote for or otherwise support the candidate or candidates of his or her choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by the Union or any member thereof.

58. Upon recommendation by the EST, the President of the District Council shall appoint an

Election Committee, composed of eligible rank and file members, to make recommendations to the Executive Committee and the Delegate Body to adopt amendments or modifications to the Election Rules. The Election Supervisor, IG, DOO, and CCO shall serve as advisors to the Election Committee and also have authority to recommend amendments or modifications to the Election Rules for consideration. The Election Committee shall also consult with the UBC regarding any proposed amendments or modifications to the Election Rules.

59. Sixty days prior to holding a vote on proposed changes to the Election Rules, the District Council shall notify the District Council membership of the proposed changes by posting the proposed modifications on the homepage of the District Council's website and provide members with thirty days to submit comments on the proposed modification.

60. The authority to interpret and enforce the Election Rules shall rest with the Election Supervisor who shall endeavor to consult with all interested parties, including the Election Committee and the UBC, before interpreting or enforcing the Election Rules.

**D. ELECTION APPEALS**

61. Appeals of the Election Supervisor's determinations regarding the collection or inspection of ballots, ballot secrecy, interference with the exercise of a member's political rights, retaliation, misuse of union or employer resources for campaign purposes, improper campaign contributions, or other campaign misconduct including voter fraud, forgery, ballot tampering, the misuse of membership lists, perjury, or the failure to submit or submission of false or misleading declarations, or any matter regarding criminal convictions or association with an Organized Criminal Group or other prohibited persons shall be heard by the IIO pursuant to the protest procedures set forth in the Election Rules.

62. All other appeals of the Election Supervisor's determinations, including but not limited to, the eligibility and nomination of candidates shall be heard by the UBC pursuant to the appeal

process established by the UBC Constitution.

### E. ELECTION REPORTS

63. Following certification of the results of each District Council Officers election conducted after the effective date of this Final Order, the District Council shall make available to the membership a report by the Election Supervisor, to be published on the District Council's website, which shall report on the results of the election (including the statistics reflecting voter turnout), assess the successes and shortcomings of the election process, determine any positive and negative trends in comparison to prior election cycles, and recommend changes to the Election Rules to address any negative trends and enhance the democratic process.

64. The Election Supervisor shall have the right to communicate with the membership concerning the District Council Officers election, including, for example, posting to the District Council's website the Election Rules, any decisions on disputed matters, protests, election results, and logistical information.

## VI. JOB REFERRAL RULES

65. The District Council shall maintain a non-exclusive and non-discriminatory referral system ("Job Referral System") for individuals seeking work with signatory contractors or contractors otherwise bound to a collective bargaining agreement with the District Council.

66. The Job Referral System shall be maintained in accordance with the Job Referral Rules. Substantive changes to the Job Referral Rules shall be reviewed by the Independent Integrity Officer. Any proposed substantive change shall be effective upon adoption and implementation by the District Council.

67. The IIO shall have seventy-two hours, exclusive of weekends and legal holidays, from the IIO's receipt of the substantive change, to determine whether the substantive change violates the fair and equitable operation of the Job Referral System or otherwise undermines the terms or

objectives of the Final Order. Any such finding shall be in writing setting forth the basis for the determination.

68. The Inspector General may investigate alleged violations of the Job Referral Rules and recommend remedies and disciplinary charges as appropriate. Disciplinary charges for significant violations of the Job Referral Rules shall be considered a Major Violation and heard by the Independent Hearing Officer.

## VII. SUSPENSION OF INDICTED OFFICERS AND MEMBERS

69. In the event any officer, member, agent, appointee, representative, or employee of the District Council or any of its constituent entities is criminally charged in any federal or state court with any act of racketeering, as that term is defined in 18 U.S.C. § 1961, or any felony relating to the conduct of the affairs of any labor organization or employee benefit or pension plan, upon being informed about such charge, the District Council must immediately place the accused individual on temporary leave of absence without pay, suspend the individual from the District Council, preclude such individual from holding any paid or non-paid position with the District Council or any of its constituent entities, and refer the matter to the Inspector General for investigation and such other actions as he or she deems appropriate consistent with this Final Order.

## VIII. IMPLEMENTATION OF THIS FINAL ORDER

70. The District Council agrees to take all actions to ensure its ability to lawfully comply with its obligations and commitments under this Final Order. The District Council shall not adopt any procedure, resolution, code of conduct, or other internal rule that is inconsistent with, or has the purpose or effect of undermining, the terms or objectives of this Final Order.

71. In the event of any conflict between, or inconsistency with, the terms of this Final Order and the terms of any prior Stipulation and Order entered in this matter, or any UBC Constitutional

Provision, District Council Bylaw, or District Council policy, the terms of this Final Order shall control.

## IX. FURTHER EQUITABLE RELIEF

72. Except as otherwise expressly provided in this Final Order, the Government shall have no further role in the affairs of the District Council, provided, however, that the Government may apply to the Court, on notice to the District Council, for an order seeking further equitable relief against the District Council. On any such application, the Government shall bear the burden of establishing, by a preponderance of the evidence, that: (a) the District Council has violated or failed to fully and effectively implement the terms of this Final Order; (b) the District Council's Independent Disciplinary System has ceased to function or is functioning ineffectively or without adequate independence; (c) the District Council's electoral system has ceased to function or is functioning ineffectively or without adequate independence; (d) the District Council's Job Referral System has ceased to function or is functioning ineffectively or unfairly; or (e) there exists systemic corruption or organized crime influence in the District Council. Any of the preceding showings by the Government shall constitute evidence of an obstacle to the objectives of this Final Order and a significant change in the facts upon which this Final Order was entered and shall justify and warrant revision of this Final Order.

73. The District Council may apply to the Court, on notice to the Government, for an order to revise or modify the terms of this Final Order. On any such application, the District Council shall bear the burden of establishing, by clear and convincing evidence, good cause for the requested revision or modification and that continuing to operate under the terms of this Final Order without the requested revision or modification is prejudicial to the interest of the District Council. Five years from the effective date of this Final Order, and anytime thereafter, the District Council may apply to the Court, on notice to the Government, for an order seeking further equitable relief for

the termination of this Final Order. On any such application, the District Council shall bear the burden of establishing, by clear and convincing evidence, that: (a) the District Council has fully and effectively implemented the terms of this Final Order; (b) the District Council's Independent Disciplinary System is functioning effectively and with adequate independence; (c) the District Council's electoral system is functioning effectively and with adequate independence; (d) the District Council's Job Referral System is functioning effectively and fairly; and (e) there is no systemic corruption or organized crime influence in the District Council. However, notwithstanding this paragraph, Sections I and II of this Final Order shall not be subject to revision or modification and shall remain in effect.

74. The Court may modify this Final Order or award such equitable relief as the Court deems lawful and appropriate to ensure the obligations under this Final Order are being met or to achieve the objectives of this Final Order. A decision by the Court on such an application may be appealed to the United States Court of Appeals for the Second Circuit.

## X. CONTINUED VIABILITY OF CONSENT DECREE PRECEDENT

75. All matters of construction and interpretation of the Consent Decree, Stipulations and Orders, and obligations imposed upon the District Council and its constituent entities and members shall continue to be governed by the decisional law issued by the Court in this action. Disciplinary decisions and interpretations of the Election Rules shall continue to be informed by the previous decisions by the Independent Administrator, Monitors, and the Independent Hearing Officer, as they were made under the Consent Decree and Stipulations and Orders. The District Council shall make all precedents established under the Consent Decree and thereafter available to the District Council membership through the District Council website or other means designed to afford similar access to the membership.

## XI. LIMITATIONS

76. Nothing in this Final Order shall: (a) prevent the United States or any of its agencies or individual agents from investigating the District Council or any person having any relation to this matter; or (b) prevent the United States from instituting a civil or criminal action against any person or entity in the future and, in doing so, relying on any evidence or materials utilized in preparation for this action, or re-alleging any of the allegations made in this action.

77. Nothing in this Final Order shall affect the validity or operation of any existing decrees or orders entered against the District Council or any of its entities in any action in any other court.

78. Nothing in this Final Order shall limit the right of any interested person or entity adversely affected by a final disciplinary determination pursuant to this Final Order to seek review under the LMRDA or petition the Court for further relief. The UBC shall have the right to petition the Court for further relief from any final determination issued pursuant to the Final Order. In any such action, the IDS Officers and the Election Supervisor are authorized, but are not required, to file papers in support of the final determination.

## XII. NOTICE

79. The District Council shall provide notice to the membership of the entry of this Final Order by publishing a copy of this Final Order on the District Council's website and printing the text of this Order in the next issue of the District Council Magazine, "The Carpenter," published after entry of this Final Order.

80. Contemporaneous with any appointment of an IDS Officer in accordance with this Final Order, the District Council shall announce such appointment in the District Council Magazine and on the home page of the District Council website. The announcement of such appointments shall provide sufficient information about the appointee to demonstrate that the appointee meets the qualifications for experience and independence set forth in the UBC Constitution, District Council

Bylaws, and this Final Order.

**XIII. 1994 CONSENT DECREE**

81. Upon the effective date of this Final Order, and except as provided in this Final Order, this Final Order shall supersede the 1994 Consent Decree and subsequent Stipulations and Orders.

**XIV. EFFECTIVE DATE**

82. The effective date of this Final Order shall be the date on which it is so ordered by the Court, and thereupon, this action shall be dismissed, subject to the provisions of this Final Order.

CONSENTED AND AGREED TO:

Dated: New York, New York
September 23, 2026

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York

By: ______________________________
BENJAMIN H. TORRANCE
Assistant United States Attorney
86 Chambers Street
New York, New York 10007
Phone: 212.637.2703
Fax: 212.637.2702
E-mail: benjamin.torrance@usdoj.gov

Dated: New York, New York
September 23, 2026

BRACEWELL LLP
Attorneys for the District Council
of New York City and Vicinity of the
United Brotherhood of Carpenters and
Joiners of America

By: [signature]

BARBARA S. JONES
THOMAS F. KOKALAS
RACHEL B. GOLDMAN
31 West 52nd Street
New York, New York 10019-6118
Phone: 212.508.6105
Fax: 212.938.3804
E-mail: barbara.jones@bracewell.com

Dated: New York, New York
September 23, 2026

DISTRICT COUNCIL OF NEW YORK
CITY AND VICINITY OF THE UNITED
BROTHERHOOD OF CARPENTERS
AND JOINERS OF AMERICA

By: [signature]

PAUL CAPURSO
Executive Secretary-Treasurer

SO ORDERED.

[signature]

VICTOR MARRERO, U.S.D.J.

October 13, 2026