**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

Plaintiff,

- against -

DISTRICT COUNCIL OF NEW YORK CITY AND VICINITY OF THE UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al.,

Defendants.

**90-CV-5722 (VM)**

**DECISION AND ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/13/26

**VICTOR MARRERO, United States District Judge.**

## I. INTRODUCTION

Given the over thirty-year-long history of this case, the Court assumes familiarity with the factual background and lengthy procedural developments in this litigation and, for the purpose of ruling on the matter now before the Court, addresses only briefly the relevant background below.

The Government brought this case in 1990 seeking relief against the District Council of New York City and Vicinity of United Brotherhood of Carpenters and Joiners of America (the "District Council") and certain individual defendants (collectively, the "Defendants") pursuant to the civil remedies provisions of the Racketeer Influenced and Corrupt

Organizations ("RICO") Act, 18 U.S.C. §§ 1961 *et seq.*, alleging that the District Council and its constituent local unions had been controlled and influenced by organized crime.

On March 4, 1994, the Court approved a consent decree that resolved the Government's claims against the District Council and the individual defendants. (Dkt. No. 410 (the "Consent Decree").) The Consent Decree enjoined certain activities at the District Council and introduced institutional reforms of the District Council's disciplinary, electoral, and job referral practices.

Over the following three decades, the Court entered various stipulations and orders that modified provisions of the Consent Decree to address changing conditions at the District Council and ensure continued good governance.

The Government and the District Council (collectively, the "Parties") have now filed a Joint Motion to Approve a Final Agreement and Order, (Dkt. No. 1937 (the "Motion")). The Motion would end this case, subject to certain ongoing injunctive provisions that the Parties agree will ensure the continued good governance of the District Council. Under those terms, the Parties agree to, among other things: dismiss the case, continue all permanent injunctions in the Consent

Decree, allow the District Council to continue its independent disciplinary system, maintain election reforms at the District Council, and retain a non-exclusive and non-discriminatory job referral system.

The Parties filed a proposed Final Order (Dkt. No. 1937-1 (the "Final Order")) and a Memorandum of Law in Support of the Motion (Dkt. No. 1938 ("Mem.").) The Parties also filed an objection to the Final Order, submitted by District Council member Brian Brennan (Dkt. No. 1941-1 (the "Objection")), and the District Council's Response. (See Dkt. No. 1941 (the "Resp.").)

For the reasons stated below, the Court will **GRANT** the Motion and enter the Final Order as proposed.

## II. LEGAL STANDARD

"[A] consent decree is a final judgment that may be reopened only to the extent that equity requires." Rufo v. Inmates of Suffolk Cnty. Jail, 502 U.S. 367, 391 (1992). "Like other judgments and decrees, a consent judgment is subject to" Federal Rule of Civil Procedure 60 ("Rule 60"). Barcia v. Sitkin, 367 F.3d 87, 98 (2d Cir. 2004). Rule 60(b)(5) allows parties to obtain relief from a court order when "it is no longer equitable that the judgment should have prospective

application." Id.; see also Rule 60(b)(5) (allowing relief from final judgment where "applying it prospectively is no longer equitable"). Ultimately, the "power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible." Rufo, 502 U.S. at 381 n.6. The Court further "retains the authority, and the responsibility, to make further amendments to [an] existing order or any modified decree it may enter as warranted by the exercise of its sound discretion[.]" Brown v. Plata, 563 U.S. 493, 542 (2011).

"When moving the court to modify a consent decree pursuant to Rule 60(b), the 'party seeking an alteration bears the initial burden of establishing that a significant change in circumstances warrants the modification.'" Id. (quoting United States v. Sec'y of Hous. & Urban Dev., 239 F.3d 211, 217 (2d Cir. 2001)). A change in circumstances encompasses "'a significant change either in factual conditions or in law.'" Id. (quoting Sec'y of Hous. & Urban Dev., 239 F.3d at 217). Once the party (or, as here, the Parties) meets that burden, the Court must analyze "whether the proposed modification is tailored to resolve the problems created by

the change in circumstances" and "should do no more[.]" Rufo, 502 U.S. at 391.

Where, as here, the Parties seek to enter an order modifying a consent decree involving an enforcement agency that contains ongoing injunctive provisions, the Court must undertake two inquiries in addition to its analysis under Rule 60(b).

First, the Court must determine whether the proposed modification is "fair and reasonable[.]" U.S. S.E.C. v. Citigroup Glob. Markets, Inc., 752 F.3d 285, 294 (2d Cir. 2014). The Court must assess four considerations to judge fairness and reasonableness: (1) "the basic legality of the decree"; (2) "whether the terms of the decree, including its enforcement mechanism, are clear"; (3) "whether the consent decree reflects a resolution of the actual claims in the complaint"; and (4) "whether the consent decree is tainted by improper collusion or corruption of some kind." Id. at 294-95 (citations omitted).

Second, the Court must determine whether the modification containing ongoing injunctive provisions is in the public interest. Id. at 296. "The job of determining whether the proposed [Department of Justice] consent decree

best serves the public interest, however, rests squarely with the [Department of Justice], and its decision merits significant deference." Id. The public has a "compelling interest in eliminating the public evils of crime, corruption, and racketeering in union activity." United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292, 1297 (2d Cir. 1991) (cleaned up).

## III. DISCUSSION

First, the Court reviews whether there has been sufficient change in circumstances to warrant modification of the Consent Decree under Rule 60(b). Second, the Court analyzes whether the Final Order is fair and reasonable under the Citigroup considerations. Third, the Court discusses whether the Final Order is in the public interest.

### A. Change In Circumstances Under Rule 60(b)

The Parties, as joint movants, bear the burden of demonstrating that there has been a significant change in circumstances warranting modification of the consent decree. See Rufo, 502 U.S. at 383. The Parties can meet that burden by, among other methods, showing that "enforcement of the decree without modification would be detrimental to the public interest." Id. at 384.

The Court finds that "qualitative . . . changes" and a "substantially changed . . . environment" at the District Council "renders continued compliance with the [Consent] Decree in this context detrimental to the public interest." Escalera v. New York Hous. Auth., 924 F. Supp. 1323, 1340-41 (S.D.N.Y. 1996). As the Parties detail, and as this Court has discussed at length in prior Decisions and Orders, decades of this Court's supervision, combined with enforcement by the Government, have effected numerous changes at the District Council promoting good governance and helping eradicate the influence of organized crime. (See Mem. at 1-3.)

The Court finds particularly persuasive that the District Council has made "numerous reforms" because of oversight by a Review Officer and an Independent Monitor over the last sixteen years. (Id. at 2.) Further, the "District Council's Delegate Body approved the terms of the proposed Final Order," which was then "fully approved by the District Council," demonstrating full constituent support.[1] The Court

[1] The Court has reviewed the lone objection to the Final Order, filed by a single constituent, and finds it to be meritless for the reasons stated in the District Council's Response. (See Obj.; Resp.) The Court agrees with the District Council that the entire membership had full and meaningful opportunity to review the Final Order, which provides significant oversight and substantive provisions to ensure continued good governance. (See Resp. at 1.) The Court retains jurisdiction under the

agrees that the "District Council has made substantial and sustained progress in eliminating organized crime and corruption from its operations." (Mem. at 3.) Those "[s]tructural and management reforms in [the District Council] constitute [a] relevant change in circumstances" warranting modification of the Consent Decree by entering the Final Order. Horne v. Flores, 557 U.S. 443, 465 (2009).

Continuing the Consent Decree (as modified by subsequent stipulations and orders) would disserve the public interest given those changed circumstances. See Rufo, 502 U.S. at 384; Escalera, 924 F. Supp. at 1340-41. That is especially the case because, as discussed in further detail below, "'a government agency committed to the protection of the public interest' has participated in and endorsed the agreement." City of New York v. Exxon Corp., 697 F. Supp. 677, 692 (S.D.N.Y. 1988) (quoting Wellman v. Dickinson, 497 F. Supp. 824, 830 (S.D.N.Y. 1980)).

---

All Writs Act pursuant to the Final Order, (see Final Order at 9), so constituents will still have access to the Court to seek remedies for any violations of the Final Order. (See Resp. at 1.) Further, the Final Order's funding provisions are consistent with past stipulations and orders regarding funding approved by this Court. (See id. at 2.)

In sum, the Court holds that the Parties have met their burden of demonstrating that there has been a significant change in circumstances warranting modification of the Consent Decree. See Rule 60(b)(5); Rufo, 502 U.S. at 383.

B. Fairness and Reasonableness

The Court holds, guided by the four Citigroup considerations, that the Final Order is fair and reasonable. Citigroup, 752 F.3d at 294-95. In other words, the "proposed modification is tailored" to "the change in circumstances." Rufo, 502 U.S. at 391.

First, the Court has undertaken an independent review of "the basic legality of the decree" and finds the terms of the Final Order are legal. Citigroup, 752 F.3d at 294. Under the Final Order, the Parties agree to, among other things: dismiss the case, continue all permanent injunctions in the Consent Decree, allow the District Council to continue its independent disciplinary system, maintain election reforms at the District Council, and retain a non-exclusive and non-discriminatory job referral system. (See generally Final Order; Mem. at 5-9.). The legality of the Consent Decree and its terms have already been extensively litigated and confirmed over the past thirty-six years. And the discipline,

election, and job referral provisions of the Final Order comply with established legal principles of fair governance of unions. See generally Int'l Bhd. of Teamsters, 941 F.2d at 1295-98 (affirming anti-corruption and anti-racketeering changes at union as constitutional).

Second, "the terms of the decree, including its enforcement mechanism, are clear." Citigroup, 752 F.3d at 295. The thirty-one-page Final Order exhaustively details the nature and purpose of the enforcement mechanisms. The Final Order's terms and enforcement mechanisms are clear, warranting the changes detailed in the Final Order. For example, the Final Order contains thirteen pages laying out clear guidelines for the structure and operation of an "Independent Disciplinary System" and five pages promulgating detailed rules for "Election Procedures." (See Final Order at 9-25.) The Court finds these provisions, and the other "terms of the decree" to be sufficiently "clear" to warrant entering the Final Order. Citigroup, 752 F.3d at 295.

Third, "the consent decree reflects a resolution of the actual claims in the complaint." Id. The Complaint in this case alleged that the District Council "had engaged in a variety of forms of labor racketeering . . . the operations

of the Union had been infected by a criminal element, specifically, La Cosa Nostra, and that the existence of this criminal influence had resulted in the Union being maintained and run in a corrupt and undemocratic manner." United States v. Dist. Council of New York City, 880 F. Supp. 1051, 1056 (S.D.N.Y. 1995) (recounting history of case). The Final Order ensures that the labor racketeering, influence of organized crime, and undemocratic operation of the union have been, and will continue to be, policed with rigor, thus "reflect[ing] a resolution of the actual claims in the complaint." Citigroup, 752 F.3d at 295.

Fourth, the Court finds that the Final Order is not "tainted by improper collusion or corruption of some kind." Id. There is no evidence in the record that the Final Order was the product of corrupt influences, such as the racketeering and organized crime that had influenced the District Council at the beginning of this case. Further, the Final Order was approved by the constituents and Delegate Body of the District Council and extensively negotiated in good faith with the United States Attorney's Office. (See Mem. at 3, 12.)

The Court therefore holds that the Final Order and its ongoing injunctive provisions are fair, reasonable, and tailored to the change in circumstances, all of which strongly counsel in favor of this Court approving the Final Order. Citigroup, 752 F.3d at 294; Rufo, 502 U.S. at 391.

C. Public Interest

The Court must next determine whether the Final Order, which contains ongoing injunctive provisions, is in the public interest. Citigroup, 752 F.3d at 296. The Court holds that it is.

The Government, as a joint movant, has determined that the Final Order is in the public interest. (See Mem. at 9-12.) "The job of determining whether the proposed [Department of Justice] consent decree best serves the public interest, however, rests squarely with the [Department of Justice], and its decision merits significant deference." Citigroup, 752 F.3d at 296. The Court agrees with the Government and finds further that the Final Order serves the public's "compelling interest in eliminating the public evils of crime, corruption, and racketeering in union activity." Int'l Bhd. of Teamsters, 941 F.2d at 1297 (cleaned up).

The long history of this litigation and the agreement between the District Council and the Government demonstrate that the District Council has undergone significant changes over the last thirty-six years, greatly improving its governance and rooting out racketeering, organized crime, and corruption. (See generally Mem.) The Court holds that the Final Order will ensure those changes endure, serving the public interest.

## IV. ORDER

For the reasons detailed above, it is hereby

**ORDERED** that the Joint Motion to Approve Final Agreement and Order of the Government and the District Council of New York City and Vicinity of United Brotherhood of Carpenters and Joiners of America (the "District Council") (collectively, the "Parties") (Dkt. No. 1937) is **GRANTED.**

The Court will separately enter the Final Order as proposed. (Dkt. No. 1937-1.)

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: 13 October 2026
New York, New York

Victor Marrero
U.S.D.J.